**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**KURDISTAN VICTIMS FUND,**
**A NON-PROFIT 501(C)(3) FOUNDATION,**
*et al.*,

                    *Plaintiffs,*

            -v.-

**KURDISTAN REGIONAL GOVERNMENT**
**("KRG")**, *et al.*,

                    *Defendants.*

---

Civ. Action No. 1:24-cv-00278-RDM

## DEFENDANT BAZ KARIM AL-BARZANJI'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND....................................................................................2

ARGUMENT .......................................................................................................5

I.    SEVERAL PLAINTIFFS LACK STANDING AND SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(1)...........................................................................5

    A.    Kurdistan Victims Fund Lacks Organizational Standing ........................6

        1.    Kurdistan Victims Fund Cannot Plead Standing Through Members Because It Has No Members...................................................7

        2.    Kurdistan Victims Fund Lacks Standing In Its Own Right Because It Suffered No Injury ..............................................................8

    B.    Plaintiff Shakhwan Abdulrahman Lacks Standing To Assert Claims On Behalf Of His Sister ............................................................................9

II.    THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER MR. KARIM PURSUANT TO RULE 12(B)(2).............................................................................................................9

    A.    The Amended Complaint Fails To Allege Suit-Related Contacts Between Mr. Karim And The United States ...........................................................11

    B.    Other Defendants' Alleged Actions In The United States Do Not Support Personal Jurisdiction Over Mr. Karim ...................................................12

        1.    There Is No Basis To Attribute Other Defendants' Actions To Mr. Karim ............................................................................................12

    C.    Exercising Jurisdiction Would Offend Notions Of Fair Play And Substantial Justice ..............................................................................13

    D.    The D.C. Long-Arm Statute Does Not Apply ......................................14

III.    THE COMPLAINT SHOULD BE DISMISSED FOR PLAINTIFFS' FAILURE TO ACCOMPLISH SERVICE PURSUANT TO RULE 12(B)(5)...................................16

IV.    THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 8 FOR FAILURE TO PLEAD A PLAIN AND SHORT STATEMENT ....................................17

V.    PERMITTING PLAINTIFFS' COUNSEL TO PROCEED ON BEHALF OF THE DOE PLAINTIFFS WOULD BE IMPROPER .........................................................20

VI.    PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW AND MUST BE DISMISSED PURSUANT TO RULE 12(B)(6)..............................................................22

    A.    Counts I And IV Fail Because Merely Providing Funds Is Insufficient To Find Liability Under The TVPA...........................................................23

        1.      Plaintiffs Fail To Plead That Mr. Karim Conspired To Torture Or Kill Anyone......................................................................................24

    B.      The Amended Complaint Fails To State A Claim For Conspiracy To Violate Civil Rights Pursuant To 42 U.S.C. § 1985 (Count II) Against Mr. Karim ........................................................................................................27

        1.      Section 1985(3) Does Not Apply To A Private Conspiracy To Violate First Amendment Rights, Which Are Protected Only Against State Encroachment. ....................................................27

        2.      Plaintiffs Failed To Allege The Existence Of A Conspiracy To Violate Their Civil Rights.........................................................28

    C.      Count III Fails Because Plaintiffs Fail To Plead That Mr. Karim Knowingly Provided Substantial Assistance To An Act Of International Terrorism.................................................................................................30

VII.    CONCLUSION ........................................................................................31

# TABLE OF AUTHORITIES

**Page**

*Abbas v. Foreign Pol'y Grp., LLC*,
  783 F. 3d 1328 (D.C. Cir. 2015) ................................................................22

*Abdelfattah v. DHS*,
  787 F. 3d 524 (D.C. Cir. 2015) ..................................................................22

*Abhe & Svoboda, Inc. v. Chao*,
  508 F.3d 1052 (D.C. Cir. 2007) .................................................................23

*AGS Intern. Servs. S.A. v. Newmont USA Ltd.*,
  346 F. Supp. 2d 64 (D.D.C. 2004) ...............................................................9

*Ali Shafi v. Palestinean Authority*,
  686 F. Supp. 2d 23 (D.D.C. 2010) .............................................................26

*In re Aluminum Warehousing Antitrust Litig.*,
  90 F. Supp. 3d 219 (S.D.N.Y. 2015) ..........................................................13

*American Legal Fund v. Federal Communications Commission*,
  808 F.2d 84 (D.C. Cir. 1987) ..................................................................7, 8

*Arias v. Dyncorp*,
  517 F. Supp. 2d 221 (D.D.C. 2007) ...........................................................26

*Asahi Metal Indus. Co. v. Superior Ct. of Calif.*,
  480 U.S. 102 (1987) ...............................................................................13, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................22, 24

*Atchley v. Astrazeneca UK Limited*,
  22 F.4th 204 (D.C. Cir. 2022) ...................................................................29

*Atlantigas Corp. v. Nisource, Inc.*,
  290 F. Supp. 2d 34 (D.D.C. 2003), *aff'd*, 2017 WL 7736939 (D.C. Cir. Apr.
  18, 2017) .....................................................................................................12

*Bell Atl. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................22, 24

*Beranek v. Klassen*,
  1975 WL 166110 (D.C. Cir. 1975) .............................................................18

*Bey v. Deutsche Bank Nat'l Trust Co.*,
  2019 WL 2327748 (D.D.C. May 31, 2019) ................................................15

*Bozgoz v. Blackwell*,
    2021 WL 1518337 (D.D.C. Apr. 16, 2021) ......................................................................18

*Bray v. Alexandria Women's Health Clinic*,
    506 U.S. 263 (1993) ...................................................................................................27

*Bristol-Myers Squibb Co. v. Super Ct. of California*,
    582 U.S. 255 (2017) ...................................................................................................10

*Brown v. Califano*,
    75 F.R.D. 497 (D.D.C. 1977) .............................................................................18, 19

*Bush v. Butler*,
    521 F. Supp. 2d 63 (D.D.C. 2007) ......................................................................28, 29

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) ...................................................................................................30

*Chen Gang v. Zhao Zhizhen*,
    2018 WL 4693949 (D. Conn. Sept. 30, 2018) ..........................................................25

*Ciralsky v. CIA*,
    355 F. 3d 661 (D.C. Cir. 2004) .................................................................................18

*City of S. Miami v. Governor*,
    65 F. 4th 631 (11th Cir. 2023) ................................................................................6, 8

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .....................................................................................................8

*Conley v. Gibson*,
    355 U.S. 41 (1957) .....................................................................................................24

*Covad Commc'ns Co. v. Bell Atl. Corp.*,
    407 F.3d 1220 (D.C. Cir. 2005) ................................................................................23

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) .............................................................................................10, 13

*Diba v. Islamic Rep. of Iran*,
    2022 WL 971086 (D.D.C. Mar. 31, 2022) ...............................................................15

*Doe 1 v. Buratai*,
    792 F. App'x 6 (D.C. Cir. 2019) ...............................................................................11

*Doe v. Islamic Salvation Front (FIS)*,
    993 F. Supp. 3 (D.D.C. 1998) ...................................................................................24

*Doe v. Smith*,
    429 F. 3d 706 (7th Cir. 2010) ............................................................21

*Duarte v. Nolan*,
    190 F. Supp. 3d 8 (D.D.C. 2016) .......................................................12

*First Chicago Int'l v. United Exch. Co., Ltd.*,
    836 F.2d 1375 (D.C. Cir. 1988) .........................................................12

*Friends of Tilden Park, Inc. v. District of Columbia*,
    806 A.2d 1201 (D.C. 2002) .............................................................6, 7

*Gregorio v. Gordon*,
    215 F. Supp. 3d 1 (D.D.C. 2015) .......................................................12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) .........................................................................16

*Hobson v. Wilson*,
    737 F.2d 1 (D.C. Cir. 1984) ..............................................................27

*IMAPizza, LLC v. At Pizza Ltd.*,
    334 F. Supp. 3d 95 (D.D.C. 2018) .....................................................13

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ...........................................................................9

*Jangjoo v. Broad. Bd. of Governors*,
    244 F. Supp. 3d 160 (D.D.C. 2017) ...................................................19

*Jiggetts v. District of Columbia*,
    319 F.R.D. 408 (D.D.C. 2017)..............................................17, 18, 22

*Kabbaj v. Obama*,
    568 Fed. App'x 875 (11th Cir. 2014) ................................................18

*Khatib v. Alliance Bankshares Corp.*,
    846 F. Supp. 2d 18 (D.D.C. 2012).....................................................12

*Kiobel v. Royal Dutch Petroleum Co.*,
    569 U.S. 108 (2013)..........................................................................24

*Estate of Klieman v. Palestinian Auth.*,
    923 F. 3d 1115 (D.C. Cir. 2019)...................................................10, 11

*Kurd v. Republic of Turkey*,
    374 F. Supp. 3d 37 (D.D.C. 2019) .....................................................27

*Lemon v. Kramer*,
    270 F. Supp. 3d 125 (D. D. C. 2017) ...............................................................1, 24

*Levi v. Brown & Williamson Tobacco Corp.*,
    851 F. Supp. 2d 8 (D.D.C. 2012) ...........................................................................9

*Livnat v. Palestinian Auth.*,
    851 F. 3d 45 (D.C. Cir. 2017) ...................................................................9, 10, 11

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................5

*Malloy v. Gray*,
    79 F. Supp. 3d 53 (D.D.C. 2015) .........................................................................30

*McCreary v. Heath*,
    2005 WL 3276257 (D.D.C. Sept. 26, 2005) .......................................................28

*McManus v. Dist. of Columbia*,
    530 F. Supp. 2d 46 (D.D.C. 2007) ......................................................................28

*Mohamad v. Palestinian Authority*,
    566 U.S. 449 (2012) ............................................................................................25

*Mohamad v. Rajoub*,
    634 F. 3d 604 (D.C. Cir. 2011) ...........................................................................23

*Morris v. U.S. Prob. Servs.*,
    723 F. Supp. 2d 225 (D.D.C. 2010) ....................................................................15

*Nat'l Taxpayer Union, Inc. v. United States*,
    68 F. 3d 1428 (D.C. Cir. 1995) .............................................................................8

*National Ass'n of Home Builders v. EPA*,
    667 F.3d 6 (D.C. Cir. 2011) ...................................................................................8

*Oil, Chemical & Atomic Workers Intern. Union, AFL-CIO v. Pena*,
    18 F. Supp. 2d 6 (D.D.C. 1998) ..........................................................................10

*Price v. Socialist People's Libyan Arab Jamahiriya*,
    294 F.3d 82 (D.C. Cir. 2002) ..............................................................................11

*S. Nevada Confed. of Clubs, Inc. v. Las Vegas Metro Police Dep't.*,
    2013 WL 3893216 (D. Nev. July 26, 2013) ......................................................7, 8

*Satterlee v. Comm'r of Internal Revenue*,
    195 F. Supp. 3d 327 (D.D.C. 2016) ..............................................................17, 18

*In re Sealed Case,*
    931 F. 3d 92 (D.C. Cir. 2019) ..................................................................20

*Second Amend. Found. v. U.S. Conference of Mayors,*
    274 F.3d 521 (D.C. Cir. 2001) .................................................................12

*Shatsky v. Palestine Liberation Org.,*
    955 F.3d 1016 (D.C. Cir. 2020) ...............................................................11

*Simpson v. Fed. Bureau of Prisons,*
    496 F. Supp. 2d 187 (D.D.C. 2007) .........................................................15

*Strother v. District of Columbia,*
    372 A.2d 1291 (D.C. 1977) ........................................................................9

*T.M. v. District of Columbia,*
    961 F. Supp. 2d 169 (D.D.C. 2013) .........................................................19

*Tolton v. Day,*
    No. 19-cv-945, 2019 WL 4305789 (D.D.C. Sept. 11, 2019)....................20

*Twitter, Inc. v. Taamneh,*
    598 U.S. 471 (2023)..................................................................................30

*In re U.S. Off. of Pers. Mgm't Data Sec. Breach Litig.,*
    928 F. 3d 42 (D.C. Cir. 2019) ..................................................................21

*U.S. v. Microsoft Corp.,*
    56 F. 3d 1448 (D.C. Cir. 1995) ................................................................21

*Unfoldment, Inc. v. District of Columbia,*
    2007 WL 3125236 (D.D.C. Oct. 24, 2007) .........................................19, 20

*United Bd. of Carpenters and Joiners of Am. Local 610 v. Scott,*
    463 U.S. 825 (1983)..................................................................................27

*United States v. Ziegler Bolt & Parts Co.,*
    111 F.3d 878 (Fed. Cir. 1997)..................................................................16

*Valle v. Karagounis,*
    2020 WL 4039306 (D.D.C. July 16, 2020)...............................................21

*Walden v. Fiore,*
    571 U.S. 277 (2014).......................................................................10, 11, 15

*Webb v. Goord,*
    340 F. 3d 105 (2d Cir. 2003).....................................................................25

*Wheeler v. Panini America, Inc.*,
  2022 WL 17039208 (D.D.C. Nov. 17, 2022) ............................................................5

*Whitehead v. Carroll & Graf Publishers, Inc.*,
  No. CIV.A.98-0202 (PLF), 1999 WL 33409937 (D.D.C. Dec. 8, 1999) .............................17

*Wiggins v. Philip Morris, Inc.*,
  853 F. Supp. 458 (D.D.C. 1994) ......................................................................27

*Youkelsone v. FDIC*,
  910 F. Supp. 2d 213 (D.D.C. 2012), *aff'd*, 560 F. App'x 4 (D.C. Cir. 2014).....................23

## Statutes

18 U.S.C. § 2333.......................................................................................5, 30

28 U.S.C. § 1350................................................................................5, 23, 25, 26

42 U.S.C. § 1985...........................................................................................26

D.C. Code §§ 16-2702, 12-101..............................................................................9

## Rules/Other Authorities

1 Moore's Federal Practice §4.93 .........................................................................16

Ali A. Nabhan & Matt Bradley, *Iraqi Kurds Advance Against Islamic State in
  Sinjar*, Wall Street Journal (Dec. 21, 2014)............................................................3

*Fight ISIS*, U.S. Dep't of Def. (Sept. 27, 2022),
  https://www.defense.gov/News/News-Stories/Article/Article/3171097/dod-
  kurdish-peshmerga-continue-partnership-to-fight-isis/ .................................................3

Isabel Coles, *Kurdish Forces Seize Iraq's Sinjar Town from Islamic State*, Reuters
  (Nov. 13, 2015)..........................................................................................3

*The White House* (Feb. 29, 2024), https://www.whitehouse.gov/briefing-
  room/statements-releases/2024/02/29/readout-of-national-security-advisor-
  jake-sullivans-meeting-with-the-prime-minister-of-iraqs-kurdistan-regional-
  government-krg-masrour-barzani/ .......................................................................2

*Sinjar*, New Yorker (Dec. 19, 2014), https://www.newyorker.com/news/news-
  desk/early-success-kurds-sinjar ........................................................................3

Rule 4 ..........................................................................................13, 16, 17

Rule 8 ................................................................................1, 17, 18, 19, 20

Rule12 ....................................................................................................................1, 5, 9, 16, 22

Rule 23 ..........................................................................................................................2, 21

Defendant Baz Karim al-Barzanji hereby respectfully moves to dismiss the Amended Complaint (ECF No. 20) with prejudice under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and Rule 8.

## INTRODUCTION

The Plaintiffs' Amended Complaint is glaringly defective from root to branch. Even if the Amended Complaint had some shred of merit, however, Defendant Baz Karim al-Barzanji ("Mr. Karim") would have no place in it. The pleading splashes sensational (if often unintelligible) allegations of torture, murder, and other atrocities, without offering anything concrete to connect Mr. Karim, let alone establish that he was personally complicit in the alleged misdeeds. Across 417 pages of rambling allegations, Mr. Karim appears in a mere 4 paragraphs (one of which simply describes who he is). Such meager, glancing, cryptic allegations fall far short of stating a valid claim against him.

Multiple legal defects doom the Amended Complaint: First, various plaintiffs lack standing to bring their stated claims. Second, the pleading offers nothing to establish jurisdiction over Mr. Karim, whose concurrently-filed affidavit affirmatively establishes the absence of personal jurisdiction over him. Third, because plaintiffs have not even attempted to serve Mr. Karim, the Court lacks jurisdiction over him. Fourth, the Amended Complaint constitutes an improper shotgun pleading, failing to specify which defendants allegedly committed which acts and impermissibly lumping a mass of defendants together, willy-nilly.[1] Fifth, plaintiffs' counsel

---

[1] By raising other 12(b) arguments in this pleading, Sheikh Baz does not waive his right to challenge the Court's jurisdiction over him. *See* Fed. R. Civ. P. 12(b) ("[n]o defense or objection," including lack of personal jurisdiction or failure to affect service, "is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion."); *see also*, *Lemon v. Kramer*, 270 F. Supp. 3d 125, 138 (D.D.C. 2017) (holding that defendants did not waive their right to contest personal jurisdiction by "appearing before the Court to file a motion to dismiss.").

cannot unilaterally purport to represent somewhere between one and five thousand unidentified Doe plaintiffs whose identities are ostensibly unknown; if anything, class certification would be a prerequisite to such an approach, yet Rule 23 has not been invoked, much less satisfied.  Sixth, the claims brought by plaintiffs fail as a matter of law as to Mr. Karim.

This matter should be dismissed in its entirety.  At a minimum, the Court should dismiss the claims as they pertain to Mr. Karim, because the Court lacks jurisdiction over him and the claims against him are legally unsustainable.

## FACTUAL BACKGROUND

Iraqi Kurdistan is a semi-autonomous region of the Republic of Iraq.  (ECF No. 20 at 10, FAC ¶ 7).[2]  The region is governed by the Kurdistan Regional Government ("KRG"), an "autonomous regional government" whose leaders are not appointed by Iraq and "do not report to the Republic of Iraq."  (ECF No. 20 at 10, FAC ¶¶ 8, 124).

*__Defendants__*:  The Amended Complaint attempts to allege claims against 64 (sixty-four) different defendants—some of whom are only identified by purported nicknames, while others are identified as only "U.S. Public Official."  The dizzying, implausible story it sketches is to the effect that the KRG—a longstanding U.S. ally—is actually a transnational criminal organization that has supported the likes of ISIS and Iran.  These alleged "facts" fly in the face of KRG's well-chronicled heroism in eradicating ISIS.[3]

---

[2]   The background facts, which are taken as true only for purposes of this Motion and otherwise expressly denied, come either from the Amended Complaint filed in this matter, ECF No. 20, or from the jurisdictional affidavit of Defendant Baz Karim al-Barzanji, Affidavit of Baz Karim, attached as Exhibit 1.

[3]   *See, e.g.*, *Readout of National Security Advisor Jake Sullivan's Meeting with the Prime Minister of Iraq's Kurdistan Regional Government (KRG) Masrour Barzani,* The White House (Feb. 29, 2024),    https://www.whitehouse.gov/briefing-room/statements-releases/2024/02/29/readout-of-national-security-advisor-jake-sullivans-meeting-with-the-prime-minister-of-iraqs-kurdistan-regional-government-krg-masrour-barzani/ (expressing the U.S. government's appreciation for the

The defendants include the current and former leaders of the KRG, or their family, or successful business-people (like Mr. Karim) who work and live in the capital of Kurdistan, Erbil, Iraq but otherwise have no apparent connection to the KRG or its officials.  While scattering references to dozens of different defendants, the Amended Complaint fails to connect dots as to most of them.  Instead, it lumps all of the defendants together en masse without differentiating them over 417 meandering pages that zig and zag through case law, statutes, and international treaties.  To paint virtually all the defendants with the same brush, the Amended Complaint describes them as "Barzani family members and family members by marriage." *See* ECF No. 20 at 68, FAC ¶ 173.  Yet, Mr. Karim is not related to the Barzani Family by either blood or marriage. Aff. of Baz Karim, Ex. 1 at ¶ 8.

**_Baz Karim al-Barzanji_**.  Mr. Karim is a prominent, successful businessman in Kurdistan who owns and operates the KAR Group and KAR refinery in Erbil, Iraq.  (ECF No. 20 at 32, FAC ¶¶ 64, 238(c).)  Mr. Karim—through KAR Group—receives government contracts from the KRG. (ECF No. 20 at 112-113, FAC ¶¶ 228, 229).

---

"longstanding partnership between Kurdistan and the United States" and making special reference to the role of the courageous Kurdish Peshmerga in the fight against ISIS over the last decade); Jim Garamone, *DOD, Kurdish Peshmerga Continue Partnership to Fight ISIS*, U.S. Dep't of Def. (Sept. 27, 2022), https://www.defense.gov/News/News-Stories/Article/Article/3171097/dod-kurdish-peshmerga-continue-partnership-to-fight-isis/ (underscoring importance of U.S.–KRG partnership in the "defeat-ISIS mission" and expressing the U.S. government's "deep appreciation and respect for the tremendous sacrifices made by members of the Peshmerga who gave their lives in the fight to defeat ISIS," adding that "we are honored to be your partners—on and off the battlefield"); Isabel Coles, *Kurdish Forces Seize Iraq's Sinjar Town from Islamic State*, Reuters (Nov. 13, 2015), https://www.reuters.com/article/idUSKCN0T10AL (describing role of Kurdish fighters in liberating Sinjar's Yazidi population from ISIS); Ali A. Nabhan & Matt Bradley, *Iraqi Kurds Advance Against Islamic State in Sinjar*, Wall Street Journal (Dec. 21, 2014), https://www.wsj.com/articles/iraqi-kurds-push-into-sinjar-after-islamic-state-occupation-1419165717 (same); Dexter Filkins, *An Early Success for the Kurds in Sinjar*, New Yorker (Dec. 19, 2014), https://www.newyorker.com/news/news-desk/early-success-kurds-sinjar (same).

As explained in Mr. Karim's affidavit, he lives in Erbil, Iraq, and has limited, if any, ties to the United States. Aff. of Baz Karim, Ex. 1 at ¶ 2. In fact, Mr. Karim has not traveled to the United States since September 2018. Aff. of Baz Karim, Ex. 1 at ¶ 4. He does not do business in the United States. Aff. of Baz Karim, Ex. 1 at ¶ 6. Nor does Mr. Karim own property in the United States. Aff. of Baz Karim, Ex. 1 at ¶ 5.

*__Plaintiffs.__* Plaintiff Maki Revend is an online personality and political opponent of the KRG. (ECF No. 20 at 92, FAC ¶ 190.) He is a citizen and resident of Germany who has no U.S. citizenry or residence. (ECF No. 20 at 25, FAC ¶ 38.) Although he was formerly an Iraqi citizen, he has renounced his Iraqi citizenship. (ECF No. 20 at 41, FAC ¶ 109.) He purports to be a "disseminator of information to the public in Iraqi Kurdistan and the Kurdish worldwide diaspora." (ECF No. 20 at 93, FAC ¶ 190.) Revend claims that his thoughts, ideas, and words carry "great significance" to millions of Kurds around the world. (ECF No. 20 at 93, FAC ¶ 190.) He purports to derive his income from his "journalism." (ECF No. 20 at 95, FAC ¶ 192.)

Plaintiff Kurdistan Victims Fund is a recently created not-for-profit 501(c)(3) incorporated in the United States for the purported benefit of "Kurdish victims." (ECF No. 20 at 25, 388-89, FAC ¶ 35, 816.) That is the full extent of what has been pleaded regarding the Kurdistan Victims Fund. The Amended Complaint says nothing about who the Fund's members are; where they are domiciled; or what occasions their alleged victimhood. Nor does the Amended Complaint specify who the Kurdistan Victims Fund's board of directors or representatives are.

Plaintiff Shakhwan Abdulrahman sues on his own behalf and on behalf of his deceased sister, Jihan Taha Abdulrahman. Mr. Abdulrahman is a citizen and resident of the United States—of which city or state, the Amended Complaint does not say. (ECF No. 20 at 25, FAC ¶ 36.) On February 29, 2024, he travelled to Washington, D.C., to protest the Prime Minister of the KRG's

scheduled visit.  (ECF No. 20 at 235, FAC ¶ 491.)  During this protest, there was an alleged scuffle between members of the Prime Minister's security detail and Mr. Abdulrahman, purportedly resulting in injuries to Mr. Abdulrahman.  (ECF No. 20 at 238-40, FAC ¶¶ 498-99.).

Plaintiff Jihan Taha Abdulrahman was a teacher living in Erbil, Iraq and a critic of the Barzani regime.  (ECF No. 20 at 233, FAC ¶ 487.)  On October 26, 2023, Ms. Abdulrahman's body was found in the burnt remains of her vehicle in Erbil, Iraq.  (ECF No. 20 at 233, FAC ¶ 487.)  The authorities in Barzan attributed her death to an accident.  (ECF No. 20 at 234, FAC ¶ 489.)  According to plaintiffs, however, her death must have been the result of torture and murder. (ECF No. 20 at 234-35, FAC ¶ 489.)

***Plaintiffs' Allegations***.  Plaintiffs have brought claims for violations of the Torture Victims Protection Act, 28 U.S.C. § 1350 (Count I and IV); for deprivation of constitutional rights, hate crimes, and assault and battery (Count II); for violations of the Anti-Terrorism Act, 18 U.S.C. § 2333 (Count III); for defamation and libel against Mr. Reeder (Count V); and for assault and battery and infliction of emotional distress (Count VI).  As explained below, it is unclear which if any of these claims are brought against Mr. Karim because each count—except for the defamation claim, which is expressly between Plaintiff Revend and Defendant Reeder, and the assault and battery claim, which is between Plaintiff Shakhwan and the Prime Minister's body guards—states only that one or more plaintiffs seek an award in plaintiffs' favor and against defendants, without distinction.

## ARGUMENT

## I.   SEVERAL PLAINTIFFS LACK STANDING AND SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(1)

The claims of several plaintiffs must be dismissed at the threshold under Federal Rule Civil Procedure 12(b)(1) for lack of standing.  Article III standing is a fundamental aspect of subject-

matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Therefore, where a party lacks standing, "dismissal is mandatory." *Wheeler v. Panini America, Inc.*, 2022 WL 17039208, at *3 (D.D.C. Nov. 17, 2022).

### A.   Kurdistan Victims Fund Lacks Organizational Standing

Plaintiff Kurdistan Victims Fund[4] needs to establish "organizational standing" but has failed to do so. An organization can establish Article III standing either "through its members [or] . . . through its own injury in fact." *City of S. Miami v. Governor*, 65 F. 4th 631, 637 (11th Cir. 2023) (alteration in original) (citation omitted). Yet Kurdistan Victims Fund has not established either. Because standing is a constitutional prerequisite to exercising jurisdiction and considering the merits, the Court should dismiss Plaintiff Kurdistan Victims Fund. *Friends of Tilden Park, Inc. v. District of Columbia*, 806 A.2d 1201, 1209 (D.C. 2002) ("It is no small matter for an organization to assert the right to sue, not on behalf of itself, but on behalf of others.").

The scant paragraphs describing the Kurdistan Victims Fund state: "The Kurdistan Victims Fund is a not-for-profit 501(c)(3) charitable foundation incorporated in the United States for the benefit of Kurdish victims." (ECF No. 20 at 25, FAC ¶ 35.) Seven-hundred-and-eighty-one paragraphs then ensue before the Amended Complaint next mentions the Kurdish Victims Fund, stating that it has been incorporated to hold an interest in property under federal and state law to compensate the "John Doe victims and their families . . . ." (ECF No. 20 at 388-89, FAC ¶ 816-817). The Amended Complaint does not plead: (i) who the members of the Kurdistan Victims

---

[4] The Plaintiffs in some instances refer to the "Kurdistan Victims Fund" while elsewhere referring to the "Kurdish Victims Fund." The IRS Tax Exempt Lookup Search returns *zero* results for either organization. Because the "Kurdistan Victims Fund" appears to be an entity organized under the laws of Wyoming, according to the Wyoming Secretary of State, this Motion uses that name.

Fund are; (ii) what constitutes a "Kurdish victim;" or (iii) the interests the Kurdistan Victims Fund seeks to protect.

### 1.    Kurdistan Victims Fund Cannot Plead Standing Through Members Because It Has No Members

The Kurdistan Victims Fund has not established standing through its members because the Amended Complaint fails to allege it *has* any members.  Instead, plaintiffs plead that "Plaintiffs have established and incorporated a United States non-profit 501(c)(3) charitable foundation." (ECF No. 20 at 389, FAC ¶ 817.)  Additionally, the Amended Complaint states that the entity is "permitted to hold an interest in property under federal and state law, to compensate from any recovery in the instant case John Doe victims and their families." (*Id.*)  But this is insufficient to establish any definite membership. *See, e.g.*, *S. Nevada Confed. of Clubs, Inc. v. Las Vegas Metro Police Dep't.*, 2013 WL 3893216, at *3 (D. Nev. July 26, 2013) (dismissing claims where complaint failed to plead allegations concerning non-profit's "identity, mission, membership, or other details from which the court could determine the non-profit's relationship to the action."). Indeed, the Articles of Incorporation filed with the Wyoming Secretary of State says that the Kurdistan Victims Fund has no members.  (*See* Art. of Inc., Ex. 2 at ¶ 6); *see also Friends of Tilden Park, Inc*, 806 A. 2d at 1209-1210 (vacating trial court's entry of summary judgment and remanding with directions to dismiss complaint for want of standing where association (1) had no members and (2) pleaded no facts indicating traditional membership).

In *American Legal Fund v. Federal Communications Commission*, 808 F.2d 84 (D.C. Cir. 1987), the D.C. Circuit rejected a claim of organizational standing because ALF's relationship to its "supporters" bore "none of the indicia of a traditional membership organization." *Id.* at 90. The court there explained that ALF "serve[d] no discrete, stable group of persons with a definable set of common interests;" its "constituency of supporters [was] completely open-ended." *Id.*  Nor

did ALF's supporters "play any role in selecting ALF's leadership, guiding ALF's activities, or financing these activities." *Id*. Importantly, the court perceived "no linkage between ALF's interest in the outcome" of the litigation and the interest of its supporters. *Id.*

The absence of standing is even clearer here than in *American Legal Fund* because Kurdistan Victims Fund does not attempt to plead any details of its membership or their interests. There is no indication who "Kurdistan Victim Funds" members or supporters are. Although the Fund is allegedly a 501(c)(3), Plaintiffs do not allege the identity of its leadership, how the leadership is selected, or who guides its activities or finances these activities. Nor is there any indication what the Fund would do were it to recover in this case besides "compensate from any recovery . . . victims and their families," the identity of whom is indeterminate. (ECF No. 20 at 389, FAC ¶ 817.) Accordingly, the Court should dismiss all claims brought by Kurdistan Victims Fund on behalf of its apparently nonexistent members for lack of standing.

### 2. Kurdistan Victims Fund Lacks Standing In Its Own Right Because It Suffered No Injury

Nor does Kurdistan Victims Fund allege that it has been injured in its own right. *See, e.g.*, *City of S. Miami*, 65 F.4th at 638. To do so, it would need to establish (just as an individual would) that it has suffered harm, is suffering harm, or faces imminent harm. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). No organization can properly claim standing based on a mere "setback to [its] abstract social interests." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 11 (D.C. Cir. 2011) (quoting *Nat'l Taxpayer Union, Inc. v. United States*, 68 F. 3d 1428, 1433 (D.C. Cir. 1995)). Here, Kurdistan Victims Fund is not alleging any actual injury to itself. Instead, it at most claims to represent the interests of the purported John Doe Victims and their families. That does not equate with injury in its own right and cannot compensate for the failure of standing noted above. *See S. Nevada Confed. of Clubs*, 2013 WL 3893216, at *3.

### B.  Plaintiff Shakhwan Abdulrahman Lacks Standing To Assert Claims On Behalf Of His Sister

Plaintiff Shakhwan Abdulrahman sues on behalf of his deceased sister, Jihan Taha Abdulrahman.  Although he proclaims himself to be a "representative" of Jihan Taha Abdulrahman, he does not allege that he is the personal representative of her estate or that he is authorized to sue on her behalf.  Under District of Columbia statutory law, claims such as these must be brought by a legal representative of the decedent's estate.  *See* D.C. Code §§ 16-2702, 12-101.  The status of any "legal representative" must derive from a testamentary act or rule of law enabling an individual to stand in the place of the decedent.  *Strother v. District of Columbia*, 372 A.2d 1291, 1296-97 (D.C. 1977).  Plaintiff Shakhwan nowhere pleads that he has been authorized, either by a testamentary act or by operation of law, to bring any claims on behalf of his sister.  *See Levi v. Brown & Williamson Tobacco Corp.*, 851 F. Supp. 2d 8, 9 n.1 (D.D.C. 2012) (finding plaintiff could not bring claims on behalf of his deceased mother's estate or his sisters because he failed to plead that he was authorized to bring the claims).

## II.  THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER MR. KARIM PURSUANT TO RULE 12(b)(2)

The Amended Complaint fails to establish personal jurisdiction over Mr. Karim.  Taken as true, the concrete allegations as to Mr. Karim do not establish that he has the minimum contacts required by due process.  "Due process requires" that, "before a defendant outside a forum's borders may be subject to suit, the defendant must have certain minimum contacts with the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Livnat v. Palestinian Auth.*, 851 F. 3d 45, 48 (D.C. Cir. 2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up)).

Plaintiffs bear the burden of making a *prima facie* showing of personal jurisdiction. *See AGS Intern. Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 81 (D.D.C. 2004). To do that, they must plead sufficient facts "without relying on bare allegations or conclusory statements." *Oil, Chem. & Atomic Workers Intern. Union, AFL-CIO v. Pena*, 18 F. Supp. 2d 6, 17 (D.D.C. 1998). There are two different types of personal jurisdiction: general and specific. General jurisdiction "'permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit,'" *Livnat*, 851 F.3d at 56 (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)), but is limited to "'only a limited set of affiliations with a forum,' all analogous to an individual's domicile," *id*. (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Because the Complaint alleges that Mr. Karim resides in Iraq, Dubai, and Turkey (ECF No. 20, 32, FAC ¶ 64), not the United States or this District, general jurisdiction is out of play.

That leaves only the question of whether specific jurisdiction exists over Mr. Karim. For a forum "to exercise specific jurisdiction, 'the suit' must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Super Ct. of California*, 582 U.S. 255, 262 (2017) (cleaned up). In other words, "the defendant's *suit-related* conduct must create *substantial connection* with the forum." *Estate of Klieman by and through Kesner v. Palestinian Auth.*, 923 F. 3d 1115, 1120 (D.C. Cir. 2019) (quoting *Walden*, 571 U.S. at 284) (internal marks omitted), *vacated and remanded on other grounds*, 140 S. Ct. 2713 (2020). In this connection, it does not matter whether the plaintiff has contacts with the forum, or whether the defendant has contacts with other persons residing in the forum. *See Walden*, 571 U.S. at 284-85. The operative question is whether a defendant's conduct at issue in the suit bears a requisite relationship with the forum. As to Mr. Karim, the obvious answer is no.

**A.      The Amended Complaint Fails To Allege Suit-Related Contacts Between Mr. Karim And The United States**

This is a lawsuit brought by a German citizen and resident of Germany, by a Wyoming Charitable Organization with no members, by one to five-thousand unnamed individuals of unknown citizenship, nationality, or origin, and by a single American citizen residing somewhere in the United States.   The allegations are directed at a vast, global conspiracy supposedly responsible for heinous crimes, including extrajudicial killing and torture, all allegedly carried out in Erbil, Iraq.  None of the alleged extrajudicial killing or torture occurred in the United States.

The D.C. Circuit has repeatedly rejected personal jurisdiction over foreign individuals and organizations for claims arising out of alleged attacks occurring on foreign soil.  *See, e.g.*, *Livnat*, 851 F.3d at 56-58 (no personal jurisdiction over legal claims by alleged victims of attacks by Palestinian governmental organizations against American citizens in West Bank); *Klieman*, 923 F. 3d at 1124-26 (same); *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1037 (D.C. Cir. 2020) (same); *Doe 1 v. Buratai*, 792 F. App'x 6, 9-10 (D.C. Cir. 2019) (per curiam) (no personal jurisdiction over legal claims by Nigerian citizens of alleged attacks by Nigerian officials on Nigerian soil).  Any purported basis for personal jurisdiction is even weaker here, where Mr. Karim has not allegedly conducted any attacks, extrajudicial killings, or torture. *See e.g.*, ECF No. 20 at 32, 112, 113, 121, FAC ¶¶ 64, 228, 229, 238(c) (all paragraphs naming Mr. Karim and none alleging he conducted attacks, extrajudicial killings, or torture).  Tellingly, Plaintiffs do not even attempt to plead contacts between Mr. Karim and the United States other than to say that he employs "multiple U.S. persons including a former U.S. Government Official," (ECF No. 20 at 32, FAC ¶ 64) which is patently irrelevant and insufficient. *See, e.g.*, *Walden*, 571 U.S. at 284-85.

**B.      Other Defendants' Alleged Actions In The United States Do Not Support Personal Jurisdiction Over Mr. Karim**

While the Amended Complaint contains allegations to the effect that the KRG and other defendants have laundered money through the United States, no such allegations are made as to Mr. Karim, nor do the allegations establish that any of the named Defendants acted as agents of Mr. Karim.  Therefore, any alleged money laundering cannot supply a valid path to establishing personal jurisdiction over Mr. Karim.

**1.      There Is No Basis To Attribute Other Defendants' Actions To Mr. Karim**

There is no basis for imputing other defendants' contacts to Mr. Karim for purposes of personal jurisdiction.  Plaintiffs allege only that other individuals, not Mr. Karim, took actions in the United States or own property in the United States.  But "a plaintiff 'cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant.'"  *Duarte v. Nolan*, 190 F. Supp. 3d 8, 11 (D.D.C. 2016) (citation omitted) *aff'd*, 2017 WL 7736939 (D.C. Cir. Apr. 18, 2017) (per curiam)).  Such contacts cannot support jurisdiction over Mr. Karim unless "an agency relationship" existed between Mr. Karim and those third parties or an overarching conspiracy has been concretely and plausibly pleaded (which is not the case here).  *Gregorio v. Gordon*, 215 F. Supp. 3d 1, 6 (D.D.C. 2015).  Although plaintiffs refer to the named third parties as part of a "Continuing Criminal Enterprise," *see e.g.* FAC ¶ 64, a "bare allegation of agency" or participation in a conspiracy is insufficient to establish personal jurisdiction.  *Khatib v. Alliance Bankshares Corp.*, 846 F. Supp. 2d 18, 33 (D.D.C. 2012); *First Chicago Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375 (D.C. Cir. 1988) (finding that plaintiff's "bare allegation of conspiracy or agency" is insufficient to establish personal jurisdiction) (citation omitted); *accord Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) ("[T]he bare allegation of conspiracy or agency is insufficient to establish personal

jurisdiction") (citation omitted).[5]  Further, as Mr. Karim's affidavit shows, he is not and has never been part of a "Continuing Criminal Enterprise." Aff. of Mr. Karim, Ex. 1 at ¶ 7.

C.    **Exercising Jurisdiction Would Offend Notions Of Fair Play And Substantial Justice**

There is a separate impediment to exercising jurisdiction over Mr. Karim—namely, such exercise would not comport with fair play and substantial justice.  *See Mwani*, 417 F. 3d at 14.  In conducting this analysis, courts consider "'the burden on the defendant, the interests of the forum State, the plaintiff's interest in obtaining relief in the forum State, and the interests of other sovereigns in resolving the dispute.'"  *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 115-16 (D.D.C. 2018) (quoting *Daimler*, 571 U.S. at 145 (Sotomayor, J. concurring in the judgment)). All those factors weigh heavily against exercising jurisdiction here and present a "compelling case" that jurisdiction is "unreasonable."  *Id*. at 116.

*First*, the burden on Mr. Karim would be "severe" if he were required to "submit [this] dispute . . . to a foreign nation's judicial system."  *Asahi Metal Indus. Co. v. Superior Ct. of Calif.*, 480 U.S. 102, 114 (1987); *see also id*. ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").  As the Amended Complaint establishes, Mr. Karim is not a United States resident and has taken no actions in the United States. (ECF No. 20 at 32, FAC ¶ 64 (alleging that Mr. Karim resides in Erbil, Iraq, Dubai,

---

[5]    Although not invoked, Rule 4(k)(2) could not confer personal jurisdiction over Mr. Karim because there are no allegations of contacts between him and the United States.  As this District has observed, "as far as [this] Court is aware, no court to have considered the question has permitted the assertion of conspiracy jurisdiction under Rule 4(k)(2)."  *Ofisi v Al Shamal Islamic Bank*, 2019 WL 1255096, at *5 n.8 (D.D.C. Mar. 19, 2019) (citing *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 226-227 (S.D.N.Y. 2015)).

and Turkey).)   Moreover, defending himself in this forum would require considerable and expensive travel to and from Iraq to the United States.  Aff. of Mr. Karim, Ex. 1 at ¶ 9.

*Second*, the interests of the forum—the United States—are minimal because the alleged conduct giving rise to the Amended Complaint (but for the allegations related to Mr. Abdulrahman, which are wholly divorced from Mr. Karim) all occurred in Iraqi Kurdistan.  Notably, the dispute involves a foreign sovereign and governing officials.

*Third*, no plaintiff has any interest in obtaining relief in the District of Columbia.  None of the plaintiffs is alleged to reside in the District of Columbia. (ECF No. 20 at 25, FAC ¶¶ 35-39.)

*Finally*, both Kurdistan and Iraq have a dramatically stronger connection to this case than the United States.  The entire premise of the Amended Complaint is that a vast number of plaintiffs were allegedly harmed by a government within the four corners of Iraq.  All the key witnesses and evidence will be found in Iraq, including Iraqi Kurdistan.

It follows that asserting jurisdiction over Mr. Karim would violate due process and that the claims against him should be dismissed for lack of jurisdiction.  *See id*. at 115 (emphasizing that courts should be "unwilling[] to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State.").

### D.   The D.C. Long-Arm Statute Does Not Apply

Nor is Mr. Karim subject to specific personal jurisdiction in Washington, D.C.  To exercise personal jurisdiction over a non-resident, the Court must "determine whether jurisdiction may be exercised under the District's long-arm statute" and then "must determine whether the exercise of personal jurisdiction satisfied due process."  *Simpson v. Fed. Bureau of Prisons*, 496 F. Supp. 2d 187, 191-92 (D.D.C. 2007).  As noted above, there is no prospect of satisfying due process as to Mr. Karim on these facts.  In addition, however, D.C.'s long-arm statute cannot be satisfied.  To fall within the statute, plaintiffs would need to demonstrate that each defendant "(1) transacts

business in the District, (2) causes tortious injury in the District by an act or omission in the District, or (3) causes tortious injury in the District by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." *Id.* at 192 (citations omitted); *see also Morris v. U.S. Prob. Servs.*, 723 F. Supp. 2d 225, 228-29 (D.D.C. 2010).

Here, the Amended Complaint makes no allegations tying Mr. Karim to the District of Columbia. Rather, the only four paragraphs that mention Mr. Karim all point solely to Iraq. *See* FAC ¶¶ 64 (stating that Mr. Karim owns an oil company and refinery in Iraq and resides in Iraq); 228 (alleging that Mr. Karim conspired to corrupt the economy of Iraq); 229 (again alleging that Mr. Karim operates an oil company in Iraq); and 238(c) (alleging that Mr. Karim acted in conspiracy with Masrour Barzani to commit unspecified crimes).

Such allegations cannot confer personal jurisdiction over Mr. Karim. *See Bey v. Deutsche Bank Nat'l Trust Co.*, 2019 WL 2327748, at *4 (D.D.C. May 31, 2019) (dismissing complaint against foreign defendants because there was "no connection to the District of Columbia"); s*ee also Diba v. Islamic Rep. of Iran*, 2022 WL 971086, at *8 (D.D.C. Mar. 31, 2022) (finding conclusory allegations that individuals living abroad harmed citizens of the District of Columbia insufficient to confer personal jurisdiction); *Walden*, 571 U.S. at 284 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."). For this reason, too, the Court should dismiss the Amended Complaint as to Mr. Karim.

III.    **THE COMPLAINT SHOULD BE DISMISSED FOR PLAINTIFFS' FAILURE TO ACCOMPLISH SERVICE PURSUANT TO RULE 12(B)(5)**

Service has not been perfected over Mr. Karim in the months that have passed since this case was initiated and it may never be perfected, as it must be, because service is a predicate to jurisdiction.  Plaintiffs improperly attempted to serve Mr. Karim through a co-defendant, Treefa Aziz,[6] whom Plaintiffs unilaterally (and incorrectly) deemed to be Mr. Karim's "agent."  *See* Return of Service Aff., ECF No. 9 at 73.  In actuality, Ms. Aziz is not Mr. Karim's agent for any purpose, and she certainly is not his agent for purposes of accepting service of process.  *See* 1 Moore's Federal Practice §4.93 (2024) (Agent "must be specifically appointed for the purpose of accepting service . . . in order for service to be valid.").

A party cannot "fabricate such implied authority" to accept service "from whole cloth to cure a deficient service. . . ."  *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997).  Instead, plaintiffs should have proceeded under the appropriate rules.

By all indications, no such methods have been attempted.  Because Plaintiffs have neither served Mr. Karim nor shown that they intend ever to serve him properly, the Court should dismiss the Complaint.  *See Whitehead v. Carroll & Graf Publishers, Inc.*, No. CIV.A.98-0202 (PLF), 1999 WL 33409937, at *1 (D.D.C. Dec. 8, 1999) (granting defendant's motion to dismiss because plaintiff failed to serve the summons and complaint and provided no reason for failure to provide service).

---

[6]  Plaintiffs also did not serve Ms. Aziz properly even under U.S. standards, instead purportedly leaving a copy of the summons with Ms. Aziz's "mother" at her home.  Return of Service Aff., ECF No. 9 at 6.  The affidavit of service does not describe Ms. Aziz's mother or any of her characteristics, calling into question if the service actually in fact occurred.  *Id.*

**IV.     THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 8 FOR FAILURE TO PLEAD A PLAIN AND SHORT STATEMENT**

The Amended Complaint lumps all defendants together, without attempting to provide a "plain and short statement" as required by Rule 8. Because it lards 417 pages with quotes from a "multitude of statutes, regulations, and documents, providing little by way of context or explanation," it is defective in its entirety. *Satterlee v. Comm'r of Internal Revenue*, 195 F. Supp. 3d 327, 334 (D.D.C. 2016). Such "shotgun pleadings" are improper and due to be dismissed. *See Jiggetts v. District of Columbia*, 319 F.R.D. 408, 417 (D.D.C. 2017) ("And it is clear beyond cavil that a 'shotgun pleading'—one in which 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief'—does not comply with the standards of Rule 8." (quoting *Kabbaj v. Obama*, 568 Fed. App'x 875, 879 (11th Cir. 2014) (cleaned up)).

In setting a minimum standard, Rule 8 ensures that defendants will have fair notice of the claim being asserted against them so they can respond and defend themselves appropriately. *Umude v. Am. Sec. Programs, Inc.*, 107 F. Supp. 3d 52, 55 (D.D.C. 2015). Towards that end, subsection (d)(1) prescribes that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Taken together, [those provisions] underscore the emphasis placed on clarity and brevity by the federal pleading rules." *Ciralsky v. CIA*, 355 F. 3d 661, 669 (D.C. Cir. 2004) (citation omitted); *see also Bozgoz v. Blackwell*, 2021 WL 1518337, at *2 (D.D.C. Apr. 16, 2021) (same); *Satterlee v. Comm'r of Internal Revenue*, 195 F. Supp. 3d 327, 334 (D.D.C. 2016) (same).

Courts regularly dismiss complaints, like this one, that feature hazy, prolix, confusing allegations en route to claiming a grab-bag of constitutional and statutory violations. *See, e.g.*, *Beranek v. Klassen*, 1975 WL 166110, at *1 (D.C. Cir. 1975) (per curiam) (affirming dismissal of "twenty-five page complaint contain[ing] vague and ambiguous allegations of a variety of constitutional and statutory violations" for failure to comply with Rule 8(a)(2) "short and plain

statement" requirement). Dismissal is especially proper where a complaint (1) is unnecessarily detailed and lengthy, (2) contains irrelevant and confusing material, and (3) lacks sufficient clarity to give fair notice of the claims raised and their basis. *See Jiggetts*, 319 F.R.D. at 413. And where an *amended* complaint serves only *to frustrate* clarity, dismissal without leave to further amend may be especially appropriate. *See id.* at 414. Here, the Amended Complaint is sorely deficient in all respects and is even worse than its precursor.

*First*, the Amended Complaint is gratuitously convoluted and lengthy. As noted above, the Amended Complaint is 417 pages and 890 paragraphs long. *See Jangjoo v. Broad. Bd. of Governors*, 244 F. Supp. 3d 160, 164 n.1 (D.D.C. 2017) (observing that the 185-paragraph complaint is "unnecessarily detailed and lengthy, and that it bears little resemblance to the 'short and plain statement of the claim called for by Federal Rule of Civil Procedure 8.'"). A "complaint that is excessively long, rambling, disjointed, incoherent, or full of irrelevant and confusing material does not meet the Rule's liberal pleading requirement." *T.M. v. District of Columbia*, 961 F. Supp. 2d 169, 174 (D.D.C. 2013).

*Second*, the Amended Complaint contains extraneous and confusing allegations, while detouring[7] into harangues and aspersions. To take just one telling example plaintiffs take the

---

[7] In one of Plaintiffs' myriad, irrelevant detours, Plaintiffs claim that: "The objective of the terrorist organization is the forcible acquisition of territory for the stated goal of creating an Islamic State without recognizing any national boundaries. ISIL seeks to accomplish its goals through the commission of various criminal acts and acts of terror against the United States and world community. The criminal acts committed by members of the organization include murder, kidnapping, hostage taking, enslavement of women, sex trafficking, and more. On or about September 22, 2014, the chief spokesman for ISIL, Abu Mohammad Al Adnani, referenced the United States of America and other opponents of lSIL and stated that the organization intended to 'enslave your women.'" This non-sequitur was plagiarized, verbatim, (with the exception of substituting the word "territory" for "land") from an affidavit in the criminal matter of *U.S. v. Nisreen Assad Ibrahim Bahar, a/k/a "Umm Sayyaf"*. *See*, Affidavit in Support of Criminal Complaint and Arrest Warrant, ¶ 6, located at https://www.justice.gov/opa/file/822211/dl?inline.

opportunity to smear Defendant Reeder thusly:  "The severe criminality and extreme menace posed by Defendants' conduct is grievously and treacherously contrary to the self-characterization by Defendant Reeder in the instant case describing his client as a 'strong and long standing ally' of the United States."  (ECF No. 20 at 328, FAC ¶ 662.)  Yet Rule 8 does not invite an "untidy assortment of claims that are neither plainly or concisely stated, nor meaningfully distinguished from bold conclusions, sharp harangues, and personal comments."  *Brown*, 75 F.R.D. at 499 (finding dismissal with prejudice appropriate where plaintiff was "no stranger" to the court system).

*Third*, the Amended Complaint lacks sufficient clarity to afford fair notice of the claims raised and their basis.  *See Unfoldment, Inc. v. District of Columbia*, 2007 WL 3125236, at *2 (D.D.C. Oct. 24, 2007) (dismissing complaint for failure to comply with Rule 8).  In *Unfoldment*, a group home sued the District of Columbia for failure to abide by a contract between the parties.  *Id*. at *1.  The complaint at issue there was 368 paragraphs and 61 pages—in other words, seven-times shorter than the Amended Complaint at issue here.  As here, the complaint in *Unfoldment* also meandered into completely irrelevant topics and "discourses about principles of law and court rulings that plaintiffs believe[d] would come into play in adjudicating the dispute."  *Id*.  Plaintiffs, here, have filed a 417 page manifesto that reads more like a *pro se* litigant's attempt at argument than a sober lawyer's complaint.  Without differentiating which individuals or groups allegedly took which actions triggering which liability, the Amended Complaint lumps dozens of defendants together as though they were one.  For example, the Amended Complaint repeatedly states that actions were taken "by Defendants Masoud Barzani, Masrour Barzani, and Waysi Barzani, and their agents and representatives, including Barzani family members and family members by marriage . . . ."  *See, e.g.*, FAC ¶¶ 200, 236, 301, 306, 321, etc.  No attempt is made to specify who

19

the relevant family members (or family members by marriage) are.  Moreover, to make the overlong pleading still longer, the Amended Complaint cites to approximately **200 cases** and **130 statutes**.

In sum, the Court should dismiss the Amended Complaint for violating Rule 8.

## V.   PERMITTING PLAINTIFFS' COUNSEL TO PROCEED ON BEHALF OF THE DOE PLAINTIFFS WOULD BE IMPROPER

Plaintiffs' counsel attempts to bring claims on behalf of either one, five-thousand, or any number in between of "John Doe" Plaintiffs.  It is unclear from the Amended Complaint if these John Does are actual people.  If they are real persons, 1-5000 John Doe Plaintiffs have not moved to proceed anonymously, nor is there any indication that plaintiffs' counsel has their consent to represent them.  Because the alleged-Doe Plaintiffs have not even attempted to satisfy the D.C. Circuit's "clear guidance as to when [plaintiffs] may proceed anonymously," they are not properly part of this case. *Tolton v. Day*, 2019 WL 4305789, at *1 (D.D.C. Sept. 11, 2019) (Moss, J.) (quoting *In re Sealed Case*, 931 F. 3d 92, 96 (D.C. Cir. 2019)).

Indeed, courts have concluded that they lack subject matter jurisdiction to entertain claims from unapproved anonymous plaintiffs, at least where, as here, the court and the parties lacked sufficient information to evaluate whether they are proper parties with proper claims. For example, in *Klayman v. Obama*, a single named plaintiff and seven anonymous plaintiffs brought claims against numerous federal officials and other defendants arising out of violence in a foreign country. 125 F. Supp. 3d 67, 72 (D.D.C. 2015). When the defendants moved to dismiss for lack of subject matter jurisdiction, the anonymous plaintiffs protested that proceeding in their real names would create a "serious threat of harm." *Id.* at 89 (internal quotation marks omitted). The court observed that although plaintiffs' concerns "may well be true," *id.*, it nonetheless could not hear their claims because it lacked sufficient information to evaluate several key questions, including "whether the

anonymous plaintiffs have standing to bring claims as personal representatives of their decedents, have standing to bring claims under RICO, or whether permitting them to proceed anonymously will unduly prejudice the Defendants." *Id.* at 90. These concerns are even graver in this case, where up to 5,000 completely anonymous plaintiffs are asserting an array of complex claims. As the Court and Mr. Karim—indeed, all defendants—have no way to evaluate whether the 5,000 anonymous plaintiffs are proper parties with properly assertable claims, their claims must be dismissed.

More generally, John Doe pleading is disfavored: "Under the customary and constitutionally-embedded presumption of openness that inheres in the nature of Anglo-American trial, those who invoke the state's coercive apparatus must do so openly, i.e. under their real names." *In re U.S. Off. of Pers. Mgm't Data Sec. Breach Litig.*, 928 F. 3d 42, 82 (D.C. Cir. 2019) (Williams, J. concurring in part) (cleaned up) (quoting *U.S. v. Microsoft Corp.*, 56 F. 3d 1448, 1464 (D.C. Cir. 1995). Basic fairness commends that defendants know who is suing them. *Id.* "A case brought anonymously can let a winning plaintiff inflict a 'disgrace' on a defendant and can let a losing plaintiff launch defamatory charges 'without shame or liability.'" *Id.* (quoting *Doe v. Smith*, 429 F. 3d 706, 710 (7th Cir. 2010)). Here, Plaintiffs and their counsel have filed gravely serious (indeed, scathing) accusations against a smattering of political opponents and Iraqi businessmen. Yet they have done so in scattershot, overwrought fashion, without attempting to maintain precision or even coherence commensurate with the gravity of the allegations.

Given the haphazard nature of the pleadings, it is unclear if plaintiffs' counsel even knows the identities of any of the five-thousand individuals they claim to represent. If counsel does not know the names of the John Doe Plaintiffs, they could not have sought their consent to bring claims on their behalf. *See Valle v. Karagounis*, 2020 WL 4039306, at *2-3 (D.D.C. July 16, 2020)

(rejecting use of pseudonyms where plaintiffs made no motion for leave to file anonymously).  Nor have plaintiffs or their counsel made any attempt to satisfy the strictures of Rule 23, including procedural and substantive requirements that would need to be satisfied before this Court could make the all-important decision whether to certify a class pursuant to an approved definition and process.  By proposing to proceed as they are, plaintiffs are brazenly attempting an end-run around the on-point rule and caselaw that govern and constrain class actions.  Accordingly, permitting plaintiffs' counsel to proceed on behalf of the Doe Plaintiffs would be fundamentally improper.

## VI.   PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW AND MUST BE DISMISSED PURSUANT TO RULE 12(b)(6)

For the avoidance of any doubt, Mr. Karim strenuously denies the false and scurrilous allegations against him.  For present purposes, however, it suffices to note that these meritless claims all fail as a matter of law.   The Amended Complaint pleads six claims against "Defendants."[8] None of those claims actually names Mr. Karim and any attempt to lump him with other defendants via a shotgun pleading is improper and unavailing, as noted above.  *See Jiggetts*, 319 F.R.D. at 417.  But even assuming arguendo that Plaintiffs might be permitted to proceed via a shotgun pleading, the claims still fail as a matter of law and should be dismissed pursuant to Rule 12(b)(6).

"Dismissal under Rule 12(b)(6) is proper when a plaintiff has failed to plead 'enough facts to state a claim to relief that is plausible on its face' and to nudge his claims 'across the line from conceivable to plausible.'" *Abbas v. Foreign Pol'y Grp., LLC*, 783 F. 3d 1328, 1338 (D.C. Cir.

---

[8]   Two claims appear to not be pleaded against Mr. Karim:  Count V (Libel and Defamation of Character of Plaintiff Maki Revend) which is only plead against Defendant Joe Reeder, and Count VI (Assault and Battery and Infliction of Emotional Distress), which is only plead against Defendants Arfan Salih Omer Sherwani, Hamza Salim, Hikmet Bamerni, Hayman Quassi, and Dasko Shirwani. Accordingly, Mr. Karim takes no position as to these two counts—other than to note that the Amended Complaint as a whole should be dismissed for its pleading failures.

2015) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted)).  Conclusory

labels do not suffice, for plaintiff must concretely allege "sufficient facts." *Abdelfattah v. Dep't of*

*Homeland Sec.*, 787 F. 3d 524, 538 (D.C. Cir. 2015).  A bare "assertion of an unlawful agreement"

between defendants is no more than a "legal conclusion and as such, is not entitled to an

assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (cleaned up).

In determining the plausibility of a claim, courts "consider the facts alleged in the complaint,

documents attached thereto or incorporated therein, and matters of which it may take judicial notice,"

including records from other judicial proceedings. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059

(D.C. Cir. 2007); *see, e.g.*, *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir.

2005) (taking judicial notice of records from prior proceeding on motion to dismiss); *Youkelsone v.*

*FDIC*, 910 F. Supp. 2d 213, 224 (D.D.C. 2012) (same), *aff'd*, 560 F. App'x 4 (D.C. Cir. 2014).

## A.    Counts I And IV Fail Because Merely Providing Funds Is Insufficient To Find Liability Under The TVPA

Counts I and IV are purportedly grounded in the Torture Victims Protection Act ("TVPA"),

28 U.S.C. § 1350 note (a)(1), but ultimately fail because all that Mr. Karim is alleged to have done

is sell oil to Iran in contravention of American sanctions and work to corrupt the economy of Iraqi

Kurdistan through an illicit kickback scheme, neither of which gives rise to a cognizable claim

under the TVPA.  It bears emphasizing that Mr. Karim is nowhere alleged to have taken part in

any extrajudicial killing or torture.  At most, he is alleged to have sold—through his company

KAR Group—oil to support the vaguely-alleged criminal enterprise, thereby allegedly "corruptly

inflat[ing] the prices for the goods and services . . . ."  (ECF No. 20 at 113, FAC ¶ 228.)  Those

attenuated theories fall short for at least two reasons:  First, at best, plaintiffs are relying on the

premise that Mr. Karim was part of a conspiracy to violate the TVPA, but without even purporting

to establish the elements of a conspiracy specifically with respect to Mr. Karim.  Second, all

allegations regarding Mr. Karim's participation in the alleged conspiracy are attributed to his company, KAR Group, which, because it is a business rather than a natural person, cannot be held liable under the TVPA. (ECF No. 20 at 32, 113, FAC ¶¶ 64 (alleging Mr. Karim operates KAR Group and KAR Refinery to conduct illegal oil trading); 229 (noting that Mr. Karim operates the KAR Group Refinery and oversees and manages smuggling oil to Iran); *see Mohamad v. Rajoub*, 634 F. 3d 604, 608-609 (D.C. Cir. 2011) (affirming dismissal of complaint alleging violation of TVPA by organization and finding TVPA liability is limited to natural persons).

1.    **Plaintiffs Fail To Plead That Mr. Karim Conspired To Torture Or Kill Anyone**

To state a valid claim under the TVPA a plaintiff must establish that: an individual, acting under color of law, subjected another to torture or extrajudicial killing. *Doe v. Islamic Salvation Front (FIS)*, 993 F. Supp. 3, 9 (D.D.C. 1998).[9]   Plaintiffs do not plead that Mr. Karim ever subjected another person to torture or extrajudicial killing. At best, they would be alleging that he conspired to commit a violation of the TVPA by selling oil through KAR Group, thereby corrupting the economy of Iraqi Kurdistan in exchange for kickbacks. (ECF No. 20, at 113, FAC ¶ 229.) But that falls categorically short of situating Mr. Karim within any stated conspiracy to violate the TVPA.

To plead a valid conspiracy claim against Mr. Karim, plaintiffs must allege—concretely and plausibly[10]—(1) an agreement between two or more persons; (2) to participate in an unlawful

---

[9]   To the extent plaintiffs' claims arise under the Alien Tort Statute, such claims are completely foreclosed by binding Supreme Court precedent. *See Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013) ("We therefore conclude that the presumption against extraterritoriality applies to claims under the ATS, and that nothing in the statute rebuts that presumption.").

[10]   *Iqbal* and *Twombly* foreclose plaintiffs' attempts to plead conclusory allegations as fact. *Iqbal*, 556 U.S. at 680-81. Instead, plaintiffs had to plead *facts* that give rise to a plausible claim and those facts, must be specific to Mr. Karim. Bare assertions that Mr. Baz worked in concert with other defendants, "much like the pleading of conspiracy in *Twombly*, amount to nothing more than

act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Burnett v. Sharma*, 511 F. Supp. 2d 136, 143 (D.D.C. 2007) (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)). But there is no allegation here that Mr. Karim participated in, or was affiliated with any torture or extrajudicial killings—or that he agreed to support such torture or killing.  This failure to plead a meeting of the minds dooms plaintiffs' conspiracy claims.  *See Webb v. Goord*, 340 F. 3d 105, 110 (2d Cir. 2003) (finding conclusory allegations of conspiracy insufficient to support claim); *Burnett*, 511 F. Supp. 2d at 143 ("Plaintiff's claim under § 1985 must fail at the outset, then, because the allegations of the amended complaint as to the existence of a conspiracy are conclusory at best.").  Notably, the TVPA lacks any aiding-and-abetting provision, instead limiting liability to individuals who engage in torture or extrajudicial killing "under actual or apparent authority, or color of law, of any foreign nation." 28 U.S.C. § 1350 note, sec. 2(a).  To be clear, even according to the Amended Complaint, Mr. Karim never participated in any torture or extrajudicial killing or agreed to participate or support such acts.  The allegations to the effect that he provided funds do not specify that Mr. Karim was providing them in support of killing or torture, instead, they claim he did for his own personal financial gain.  (ECF No. 20 at 112, FAC ¶ 228.)  This is insufficient.

---

a 'formulaic recitation of the elements'" of plaintiffs' claims.  *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555); *see also Lemon v. Kramer*, 270 F. Supp. 3d 125, 142–43 (D.D.C. 2017) ("[T]he mere repetition of a conclusory statement that a conspiracy exists and that all the alleged events occurred as a result of a conspiracy are insufficient as a matter of law." (citation omitted)). Indeed, these nonspecific allegations fail to provide even "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Beyond that, the allegations of the Amended Complaint fail for three additional reasons:

*First*, the only allegations against Mr. Karim are that he sold oil through KAR Group to corrupt the economy of Iraqi Kurdistan and received kickbacks for such sales.  Mr. Karim is not alleged personally to have sold oil to Iran—only to have operated KAR and overseen its supply of oil to Iran.  FAC ¶¶ 228, 229.  Thus, plaintiffs are attempting to circumvent the TVPA, which does not permit suit against corporations, different from natural persons.  *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 461 (2012).  That is, because KAR cannot be held responsible under the TVPA, plaintiffs are attempting to substitute Mr. Karim in its stead. But Mr. Karim cannot be personally liable for the actions of a corporation without some form of veil piercing—which plaintiffs have not even attempted to justify.

*Second*, the TVPA restricts liability to "individuals."  Yet the only allegations that Mr. Karim engaged in any of the heinous acts alleged in the Complaint—which he denies—are through a "criminal enterprise."  Again, the TVPA does not apply against non-natural persons.  *See Ali Shafi v. Palestinian Auth.*, 686 F. Supp. 2d 23, 28 (D.D.C. 2010) (holding that TVPA precludes suit against non-natural persons).  The Complaint generally alleges that Mr. Karim was part of a criminal enterprise.  FAC ¶ 64.  That is different from alleging that he himself perpetrated, or aided and abetted, torture.

*Third*, the TVPA requires that the suit be brought against an individual acting "under actual or apparent authority, or color of law, of any foreign nation," without authorizing suits against individuals who are not acting for a foreign nation.  *See* 28 U.S.C. § 1350 note (a)(1).  But Mr. Karim is not alleged to have any actual or apparent legal authority, or to have acted under the color

of any law; to the contrary, Mr. Karim is a private citizen. Under the plain terms of the statute, therefore, there can be no liability.

Finally, there are no allegations that anyone who was tortured or murdered was ever under Mr. Karim's control. That supplies another, independent reason to dismiss the complaint. *See Arias v. Dyncorp*, 517 F. Supp. 2d 221, 226-27 (D.D.C. 2007) (noting the TVPA defines torture as "any act, directed against an individual in the offender's custody or physical control . . . .").

**B.    The Amended Complaint Fails To State A Claim For Conspiracy To Violate Civil Rights Pursuant To 42 U.S.C. § 1985 (Count II) Against Mr. Karim**

Count II is directed against Prime Minister Masrour Barzani's security guards and "all other Defendants who comprise the Barzani Continuing Criminal Enterprise . . ." (ECF No. 20 at 395, FAC ¶ 832.) Although Mr. Karim is never explicitly named as a member of the Barzani Continuing Criminal Enterprise, the Amended Complaint tries to paper over the omission by alleging, in conclusory fashion, that all Defendants together "conducted the affairs of the Barzani Continuing Criminal Enterprise." (ECF No. 20 at 9, FAC ¶ 5.) To the extent that includes Mr. Karim, the claims against him must fail because as a matter of law, Section 1985(3) does not apply to conspiracies among purely private actors, *sans* governmental involvement. Nor do plaintiffs allege facts establishing a conspiratorial agreement specifically to violate their civil rights.

**1.    Section 1985(3) Does Not Apply To A Private Conspiracy To Violate First Amendment Rights, Which Are Protected Only Against State Encroachment.**

Plaintiffs cannot hold Mr. Karim liable for violating constitutional rights even assuming he could be lumped together, *ipse dixit*, with the Barzani Continuing Criminal Enterprise. Although, "It is by now well-established that [Section 1985(3)] encompasses private conspiracies, and not just actions taken under color of state law," *Hobson v. Wilson*, 737 F.2d 1, 14 (D.C. Cir. 1984), it is equally established that Section 1985(3) is purely remedial and provides no substantive rights

on its own.  *See United Bd. of Carpenters and Joiners of Am. Local 610 v. Scott*, 463 U.S. 825,

833 (1983).  "Absent the violation of a substantive federal right that prohibits purely private

conduct there can be no cause of action under [Section 1985(3)]" for a purely private conspiracy.

*Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 458, 467 (D.D.C. 1994) (citation omitted).

The First Amendment right to freedom of speech protects only against government, not

private, action.  *See Carpenters*, 463 U.S. at 833; *Bray v. Alexandria Women's Health Clinic*, 506

U.S. 263, 278 (1993).  As such, a private conspiracy to shut down free expression does not violate

Section 1985(3) "unless it is proved that the state is involved in the conspiracy or that the aim of

the conspiracy is to influence the activity of the state."  *Carpenters*, 463 U.S. at 830.  Apart from

conclusory allegations, plaintiffs here do not allege any requisite government involvement.  *See*

*Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 60 (D.D.C. 2019) ("[A] private conspiracy to

deprive Plaintiffs of their First Amendment rights is not a violation of § 1985(3) unless there is

some state action alleged.").

## 2.    Plaintiffs Failed To Allege The Existence Of A Conspiracy To Violate Their Civil Rights

Even assuming that a purely private conspiracy could violate Plaintiff Shakhwan's First

Amendment rights, Count II still fails because plaintiffs failed to plead the existence of a

conspiratorial agreement specifically to violate his civil rights.  Section 1985(3) requires a plaintiff

to allege:  "(1) a conspiracy, that is, an agreement, among two or more persons; (2) for the purpose

of depriving any person of the equal protection of the laws, or of equal privileges and immunities

under the laws; (3) an overt act by a conspirator in furtherance of the object of the conspiracy; and

(4) a resulting injury to one's person or property, or deprivation of rights or privileges."  *Mazloum*

*v. Dist. of Columbia*, 442 F. Supp. 2d 1, 10 (D.D.C. 2006); *see also Bush v. Butler*, 521 F. Supp.

2d 63, 68 (D.D.C. 2007) (setting forth the elements of a civil conspiracy in the context of Section

1985(3)); *McManus v. Dist. of Columbia*, 530 F. Supp. 2d 46, 74 (D.D.C. 2007) (stating that the "principal" element of a civil conspiracy is an "agreement between the parties to inflict a wrong against or injury upon another").

An essential element of plaintiffs' claim, then, is an agreement to violate Mr. Shakhwan's civil rights. And Plaintiff Shahkwan cannot accomplish such solely via conclusory allegations that there was a conspiracy to interfere with his First Amendment rights. *See McManus*, 530 F. Supp. 2d at 74. Rather, Plaintiff Shahkwan must allege "the existence of any events, conversations, or documents" indicating that there was "an agreement or meeting of the minds" among the alleged conspirators to violate his civil rights. *Id.* at 75 (dismissing Section 1985(3) claim for failing to allege any facts showing an agreement to violate plaintiffs' due process rights or any other civil or constitutional rights); *see also McCreary v. Heath*, 2005 WL 3276257, at *5-6 (D.D.C. Sept. 26, 2005) (dismissing Section 1985(3) claim for failing to allege that defendants conspired to deprive plaintiffs of any constitutional rights or civil rights statutes).

Even assuming the Amended Complaint did sufficiently plead a conspiracy to violate Mr. Shakhwan's First Amendment rights, there are no allegations to suggest Mr. Karim himself was part of such conspiracy. The Amended Complaint fails to plead that Mr. Karim knew any of the Prime Minister's bodyguards or agreed with them to do anything, let alone agreed specifically for the purpose of interfering with Mr. Shakhwan's First Amendment rights. Plaintiffs simply plead that there must have been a conspiracy because an alleged assault occurred while Plaintiff Shakhwan was protesting. But Plaintiffs do not identify any events, conversations, or documents going to the members of the alleged conspiracy, the nature of it, or what steps were taken to form and further it. *See Bush*, 521 F. Supp. 2d at 68-69 (dismissing Section 1985(3) claim for failing to allege what particular acts were taken to form the alleged conspiracy). Such concrete factual

allegations would be necessary to survive a motion to dismiss because the "mere repetition of a conclusory statement that a conspiracy exists and that all the alleged events occurred as a result of a conspiracy are insufficient as a matter of law." *Id.* at 69.

**C.     Count III Fails Because Plaintiffs Fail To Plead That Mr. Karim Knowingly Provided Substantial Assistance To An Act Of International Terrorism**

Plaintiffs claim against Mr. Karim for aiding-and-abetting violations of the Anti-Terrorism Act ("ATA") fail because they have not pleaded—other than in vague, conclusory terms—that Mr. Karim ever knew about, contributed to, or even condoned any acts of international terrorism.

As a preliminary matter, only a "national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue" under the ATA.  18 U.S.C. § 2333(a).  While the Amended Complaint asserts that Shakhwan Abdulrahman is a U.S. citizen, FAC ¶ 36, it makes no similar allegation regarding his sister.  As a result, even assuming that Shakhwan Abdulrahman can bring claims on behalf of the estate, the estate is excluded from the ATA.  Maki Revend is likewise not a U.S. national. (ECF No. 20 at X, FAC ¶ 38.)  That leaves only Shakhwan Abdulrahman's claims related to his scuffle with Prime Minister Barzani's security detail, which is certainly not "an act of international terrorism," as the ATA requires.

Count III requires a plaintiff to prove three statutory elements:  "(1) an injury arising from an act of international terrorism; (2) that the act was committed, planned, or authorized by a designated Foreign Terrorist Organization; and (3) that defendants aided or abetted an act of international terrorism by knowingly providing substantial assistance." *Atchley v. Astrazeneca UK Limited*, 22 F.4th 204, 216 (D.C. Cir. 2022), *abrogated on other grounds by* --- S. Ct. ---, 2024 WL 3089470 (2024).  There are three additional elements that spell out the aiding and abetting prong—wrongful acts, general awareness, and substantial assistance.  *Id*.

Count III alleges a claim for aiding and abetting violations of the ATA.  Secondary liability for aiding and abetting "reaches persons who do not engage in the proscribed activities at all, but who give a degree of aid to those who do."  *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176 (1994).  Under the ATA, a plaintiff must show that a person "knowingly provid[ed] substantial assistance" to "an act of international terrorism."  18 U.S.C. § 2333(d)(2).

The Supreme Court recently explained aiding and abetting under the ATA, stating that the Act, "refers to a conscious, voluntary, and culpable participation" in an act of international terrorism.  *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 493 (2023).  Here, as there, plaintiffs "point to no act of encouraging, soliciting, or advising the commission" of any terrorist attack or extrajudicial killing by Mr. Karim.  *Id.* at 500.

Additionally, other than conclusory allegations, Plaintiffs do not allege that Mr. Karim knew that providing oil to Iran or enriching himself through an alleged kickback scheme somehow assisted an act of international terrorism.  Although the plaintiffs sprinkle in generalized allegations that all of the defendants "knew" that their "criminal enterprise . . . [was] supplying resources to al-Qaeda, al-Qaeda-in-Iraq, and Islamic State terrorist," FAC ¶ 260, such bare conclusions deserve no credit and cannot compensate for the complete absence of any concrete facts indicating that Mr. Karim was consciously supporting terrorism.  *See Malloy v. Gray*, 79 F. Supp. 3d 53, 56 (D.D.C. 2015) ("In deciding a motion to dismiss, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations.").

Accordingly, the Court should dismiss Count III.

## VII.   CONCLUSION

Accordingly, the Court should dismiss the Complaint as to Mr. Karim with prejudice.

Dated:  August 2, 2024                    Respectfully submitted,

                                          */s/ Derek L. Shaffer*
                                          Derek L. Shaffer (DC State Bar No. 478775)
                                          derekshaffer@quinnemanuel.com
                                          Stephen M. Hauss (DC State Bar No. 1009019)
                                          stephenhauss@quinnemanuel.com
                                          QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
                                          1300 I Street NW, Suite 900
                                          Washington, District of Columbia 20005-3314
                                          (202) 538-8000

                                          Daniel Humphrey (FL Bar No. 1024695)
                                          *Pro hac vice* application forthcoming
                                          danielhumphrey@quinnemanuel.com
                                          QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
                                          2601 S. Bayshore Drive, Suite 1550
                                          Miami, Florida 33133-5417
                                          (305) 402-4880

                                          *Attorneys for Defendant,*
                                          *Baz Karim al-Barzanji*

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2024, the foregoing motion was served via ECF to all counsel of record.

                                          */s/ Derek L. Shaffer*

                                          Derek L. Shaffer
                                          Counsel for Baz Karim al-Barzanji