# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| Kurdistan Victims Fund, *et al.*, | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
|  | ) |
| Kurdistan Regional Government, *et al*, | ) |
|  | ) |
| Defendants. | ) |

Civil Action No. 1:24-cv-00278-RDM
Judge Randolph Moss

_____

## DEFENDANT TREEFA AZIZ'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO EFFECT ALTERNATIVE SERVICE

Dominic E. Draye (DC Bar No. 1008820)
Joe R. Reeder (DC Bar No. 279786)
Greenberg Traurig, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
Tel. (202) 331-3100
Fax (202) 331-3101
drayed@gtlaw.com
reederj@gtlaw.com

*Attorneys for Treefa Aziz*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ii

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................... 1

ARGUMENT ................................................................................................................ 4

    I.    Plaintiffs Must Strictly Comply with the Foreign Sovereign
          Immunities Act.......................................................................................... 4

    II.   Plaintiffs' Proposed Alternative Service Is Improper ........................... 10

CONCLUSION........................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Buzz Photos v. People's Republic of China,*
    3:20-CV-656-K-BN, 2020 WL 6889016 (N.D. Tex. Nov. 24, 2020) ........................ 9

*De Souza v. Embassy of Republic of Angola,*
    229 F. Supp. 3d 23 (D.D.C. 2017) ............................................................ 4

*Freedom Watch, Inc. v. OPEC,*
    107 F. Supp. 3d 134 (D.D.C. 2015) .......................................................... 8

*Freedom Watch, Inc. v. OPEC,*
    766 F.3d 74 (D.C. Cir. 2014) ................................................................. 10

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945) ........................................................................... 15

*Ministry of Oil of Republic of Iraq v. 1,032,212 Barrels of Crude Oil*
    *Aboard United Kalavrvta,*
    No. CV G-14-249, 2015 WL 93900 (S.D. Tex. Jan. 7, 2015).................................. 6

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela,*
    863 F.3d 96 (2d Cir. 2017)..................................................................... 5

*Mohammadi v. Islamic Republic of Iran,*
    947 F. Supp. 2d 48 (D.D.C. 2013), *aff'd* 782 F.3d 9 (D.C. Cir. 2015)..................... 9

*Mullane v. Central Hanover Bank & Tr. Co.,*
    339 U.S. 306 (1950) ........................................................................... 14

*Mwani v. Bin Laden,*
    417 F. 3d 1 (D.C. Cir. 2005) .................................................................. 14

*Odhiambo v. Republic of Kenya,*
    930 F. Supp. 2d 17 (D.D.C. 2013), *aff'd* 764 F.3d 31 (D.C. Cir. 2014)................... 9

*Przewozman v. Islamic Republic of Iran,*
    628 F. Supp. 3d 307 (D.D.C. 2022) (Moss, J.)............................................... 4

*Roeder v. Islamic Republic of Iran,*
    333 F.3d 228 (D.C. Cir. 2003) ................................................................ 6

*Samantar v. Yousuf,*
    560 U.S. 305 (2010) ............................................................................ 8

*Stallard v. Goldman Sachs Grp.*,
   No. 20-2703 (RBW), 2022 WL 59395 (D.D.C. Jan. 6, 2022) .................................. 11

*Strange v. Islamic Republic of Iran*,
   No. CV 14-435 (CKK), 2016 WL 10770678 (D.D.C. May 6, 2016) ......................... 9

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
   30 F.3d 148 (D.C. Cir. 1994) .................................................................................. 1, 4

**Statutes**

28 U.S.C. 1608(a) ............................................................................................... *passim*

28 U.S.C. § 1350 ............................................................................................................. 9

28 U.S.C. § 1608(a)(3) ............................................................................................... 2, 14

28 U.S.C. § 1608(a)(4) .................................................................................................... 14

28 U.S. C. § 1608(b) ..................................................................................................... 4, 6

Internal Revenue Code Section 501(c)(4) ........................................................................ 7

**Other Authorities**

Fed. R. Civ. P. 4(c) .......................................................................................................... 8

Fed. R. Civ. P. 4(f)(1) ..................................................................................................... 11

Fed. R. Civ. P. 4(f)(2)(A) ............................................................................................... 11

Fed. R. Civ. P. 4(f)(2)(B) ............................................................................................... 11

Fed. R. Civ. P. 4(f)(2)(C) ............................................................................................... 11

Fed. R. Civ. P. 4(f)(3) ........................................................................................... *passim*

Fed. R. Civ. P. 12(b)(5) .................................................................................................. 15

## **INTRODUCTION**

In the eight months since filing their lawsuit, Plaintiffs have failed to serve all but a handful of the 63 defendants named in their Amended Complaint. As both their Status Report (Dkt. 49) and Motion for Leave to Effect Alternative Service (Dkt. 50, the "Motion") make clear, Plaintiffs have not undertaken any effort to serve any foreign defendant in accordance with applicable service rules. Instead, feigning confusion over whether the Kurdistan Regional Government (KRG) is a government, they seek to shift their burden to the defendants and this Court. But both the Motion and Amended Complaint recognize that the KRG "is a political subdivision of the Republic of Iraq," meaning that it "must be served as prescribed in 28 U.S.C. § 1608(a)." (Dkt. 20 at 390 (Am. Compl. ¶ 820); Dkt. 50 at 1). That provision, part of the Foreign Sovereign Immunities Act (FSIA), extends to *all* defendants—the KRG, its Prime Minister, and others sued in their official capacities or for whom the KRG is the real party in interest. And the D.C. Circuit requires "strict adherence" to the FSIA's terms because the FSIA reflects Congress's judgment regarding the treatment of foreign states. *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994). Even if the Court had discretion to grant the relief requested, Plaintiffs' efforts to force Ms. Treefa Aziz and her lawyers to effect service for them are deficient. The Motion should be denied.

## **BACKGROUND**

Plaintiffs filed this suit in January and persist in refusing to comply with the service rules. The Status Report is an insult. Setting aside Plaintiffs' whole-cloth

conspiracy theories (*see*, *e.g.*, Dkt. 49 at 3 (Stat. Rpt. ¶ 6) ("a dangerous secret KRG prison")), the most recent service it reports occurred on July 10, 2024—nearly two months before they filed their Status Report.  (*Id.* at 5 (Stat. Rpt. ¶ 13)).  Plaintiffs do not report a single concrete step they have taken toward effecting service since then.  Although they claim to have read the Court's handbook for serving foreign defendants, they noticeably do ***not*** state that they have done what it says.  They do not, for example, identify any foreign defendants whom Plaintiffs attempted to serve, or say when and by what means they made the attempt, or even whether they have prepared the required translation of their Amended Complaint into one of Iraq's official languages.  *See* 28 U.S.C. § 1608(a)(3).  Plaintiffs are not shy about including detail when it suits them; had they done any of these things, the Court should expect to read all about it in the Status Report.

Their "update" on service in Iraqi Kurdistan consists instead of a few generic paragraphs noting that Iraq is not party to the Hague Convention, and that the KRG has not joined the Universal Postal Convention.  (Dkt. 49 at 1–2 (Stat. Rpt. ¶ 2)).  None of that matters.  The very provision Plaintiffs identify on the first page of the Motion sets forth a method of service in foreign jurisdictions that are not party to an international agreement.  28 U.S.C. § 1608(a)(3).  Their "update" is therefore neither news nor relevant.

Of the 63 defendants named in the Amended Complaint, Plaintiffs list nine defendants they claim to have served or who have waived service (one of whom, Afan/Arfan Saleh Omar Sherwani, appears twice) and two more they are trying to

serve domestically.  (Dkt. 49 at 5–6 (Stat. Rpt. ¶ 13)).  Eight months in, Plaintiffs express confidence that all domestic defendants will someday be served. (*Id.* at 6 (Stat. Rpt. ¶ 14)).

Plaintiffs' motion seeks alternative service as to 51 defendants, one of whom (Afan Saleh Omar Sherwani) also appears on their list of the nine served defendants. (*Id.* at 5 (Stat. Rpt. ¶ 13); Dkt. 50 at 20–21).  Plaintiffs propose that Ms. Aziz or her lawyers transmit the complaint to 40 of these defendants and that the Court authorize service by publication for the balance.  As detailed below, the FSIA forecloses this proposal.

The Status Report and Motion leave four defendants entirely unaddressed. Two are domestic: Hayman Quassi and Hamza Salim, both alleged to be in "Washington, D.C." (Dkt. 20 at 4 (Am. Compl. at 4)).  The final two, the improbably named "U.S. Public Official #1" and "U.S. Public Official #2," supposedly reside in Kurdistan, although Plaintiffs' failure to account for them calls into doubt whether even Plaintiffs believe they exist.  (*Id.* at 38 (Am. Compl. ¶¶ 101–02)).[1]

---

[1] Instead of trying to serve the complaint, Plaintiffs have spent considerable effort trafficking their salacious allegations through social media and other media outlets, underscoring this lawsuit is little more than a political charade in the lead-up to Kurdistan's upcoming October election.  *See, e.g.*, Amedi, Maki Revend. "مەکی رەڤەند ناميێدی Maki Revend Amedi." *Facebook*, www.facebook.com/profile. php?id=61555317803806 (republishing almost weekly "reports" about Plaintiffs' lawsuit).

**ARGUMENT**

I.   **Plaintiffs Must Strictly Comply with the Foreign Sovereign Immunities Act.**

The Court should reject Plaintiffs' request that the Court reassign their job to Ms. Aziz.  (Dkt. 49 at 6–7 (Stat. Rpt. ¶ 14); Dkt. 50 at 21–23).  Service on the foreign defendants in this case is governed by the Foreign Sovereign Immunities Act (FSIA), which codifies mandatory procedures for service of foreign governments and their political subdivisions, 18 U.S.C. § 1608(a), and a separate set of rules for service on the agencies and instrumentalities of foreign states, *id.* § 1608(b).  For the reasons explained below, service here is wholly governed by Section 1608(a).

Section 1608(a) prescribes "four hierarchical methods of service, which are to be followed in descending order," such that "a plaintiff 'must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on.'"  *De Souza v. Embassy of Angola*, 229 F. Supp. 3d 23, 26 (D.D.C. 2017) (quoting *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 773 (D.C. Cir. 2012)).  "[A] plaintiff 'may not opt to serve a foreign defendant *out of order*, *i.e.*, by pursuing a *less* preferred method first, in contravention of the express language of the statute.'"  *Przewozman v. Islamic Republic of Iran*, 628 F. Supp. 3d 307, 313 (D.D.C. 2022) (Moss, J.) (quoting *Azadeh v. Gov't of the Islamic Rep. of Iran*, 318 F. Supp. 3d 90, 100 (D.D.C. 2018)). As the D.C. Circuit has made clear, "strict adherence to the terms of § 1608(a) is required" and "'neither substantial compliance, nor actual notice' suffices." *Id.* at 314 (quoting *Transaero,* 30 F.3d at 154; *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015)).

4

"The FSIA's procedural requirements regarding notice and venue serve Congress's stated goals of promoting comity with other sovereigns and ensuring the United States' consistency of approach with respect to federal courts' interactions with foreign sovereigns." *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100 (2d Cir. 2017) (dismissing for failure to comply with FSIA service requirements). Thus, far from being an "'empty formality,' in 'cases with sensitive diplomatic implications,' such as FSIA suits, 'the rule of law demands adherence to strict requirements even when the equities of a particular case may seem to point in the opposite direction.'" *Przewozman*, 628 F. Supp. 3d at 314 (quoting *Republic of Sudan v. Harrison*, 587 U.S. 1, 19 (2019)).

The rules in Section 1608(a) apply to all foreign defendants in this case. Starting with the KRG, there can be no serious dispute that it is either a foreign government or a political subdivision of Iraq. Plaintiffs have conceded as much in a dozen ways. The ***first page*** of the Motion states: "Plaintiffs acknowledge Defendant Kurdistan Regional Government is a political subdivision of the Republic of Iraq." (Dkt. 50 at 1). Just a few pages later, Plaintiffs say: "Because the KRG is itself, in some government registrations, a 'governmental' entity, it is properly 'considered the foreign state itself,' and not merely an 'instrumentality of the foreign state.'" (*Id.* at 7 (quoting *Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 76 n.12 (D.D.C. 2018))). These concessions are bolstered by numerous others in the Amended Complaint. Plaintiffs allege that the United States provides direct aid to the KRG. (Dkt. 20 at 365 (Am. Compl. ¶ 756)). They reference Ms. Aziz's role in the direct

diplomatic relationship between the KRG and the Unites States.   (*Id.* at 30 (Am. Compl. ¶ 57)); *see also* Anthony J. Blinken, Remarks (Feb. 27, 2024) *available at* https://www.state.gov/secretary-antony-j-blinken-and-kurdistan-regional-govern ment-prime-minister-masrour-barzani-before-their-meeting/ (noting America's long diplomatic relationship and coordinated military operations with the KRG). Plaintiffs also recognize that under Iraq's "constitutional arrangement, the federal state discharges minimal to no practical governmental function; nor does the federal state exercise control over the Defendant Iraqi Kurdistan Regional Government's operations." (Dkt. 20 at 50 (Am. Compl. ¶ 124)).   The KRG's officials do not report to officials in Iraq.   (*Id.*).   And the KRG maintains an independent military. (*Id.* at 109–10 (Am. Compl. ¶ 219)).   Given KRG's distinctly governmental qualities, it is no surprise that the single court to consider the question has held that "Kurdistan is a political subdivision of Iraq."   *Ministry of Oil of Republic of Iraq v. 1,032,212 Barrels of Crude Oil Aboard United Kalavrvta*, No. CV G-14-249, 2015 WL 93900, at *12 (S.D. Tex. Jan. 7, 2015).

The only other conceivable alternative—which Plaintiffs do not even allege—is that the KRG is an "instrumentality" subject to service under § 1608(b).   The D.C. Circuit has explained the difference between a state and an instrumentality thus: "if the core functions of the entity are governmental, it is considered the foreign state itself; if commercial, the entity is an agency or instrumentality of the foreign state." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003).   The KRG's

functions are so plainly governmental (not commercial)—both in reality and as alleged in the Amended Complaint—that § 1608(a) controls.

In seeking to avoid the requirements of Section 1608(a), Plaintiffs feign confusion as to whether the KRG is a government protected by the FSIA or a corporation that is not.  This argument is frivolous.  Beyond their repeated concessions to the contrary, Plaintiffs' "corporation" argument mainly rests on irrelevant facts about the KRG's office in Washington, DC.  For example, the KRG's Washington office registered with the Department of Justice under the Foreign Agents Registration Act ("FARA") and checked several boxes indicating its connection to the foreign principal—"supervised," "owned," "directed," "controlled," "financed," and "subsidized."  (Dkt. 50 at 12; *id.* at 14 (noting same disclosure in a newsletter)).  Nothing about that is inconsistent with the KRG being a foreign government or political subdivision.  Just the opposite.  Elsewhere, Plaintiffs point out that the KRG's Washington office lists three "beneficial owners" in its corporate registration with the District of Columbia.  (*Id.* at 13).  Here, again, the entity in question is not the KRG but a corporation it established to lease an office, hire staff, and conduct business in the United States.  But having a corporation in the District of Columbia says nothing about the KRG itself.  The same is true for registration under Section 501(c)(4) of the Internal Revenue Code, which, contrary to Plaintiffs' suggestions, (*id.* at 14), is precisely the section governing "social welfare" organizations that advocate on public policy issues, subject to various restrictions around electioneering.  Finally, the KRG has never represented itself to be a political party, (*id.* at 15), as the

Amended Complaint recognized in distinguishing the KRG from the "complementary parallel Kurdistan Democratic Party (KDP), led by the Barzani family since its establishment in 1946," (Dkt. 20 at 108 (Am. Compl. ¶ 216); *see also id.* at 65 (Am. Compl. ¶ 170) (noting the KDP's separate office in Fairfax, Virginia)). Ultimately, each of Plaintiffs' pretexts for requiring assistance with service is paper-thin. For most of them, the Amended Complaint itself pierces the veil of feigned confusion.

Plaintiffs' claims of confusion are a pretext for asking the Court to do their job. Rather than even attempt service as prescribed in Section 1608(a), Plaintiffs pretend that the Court's involvement is necessary to (a) give them the answer on how to serve the KRG (*see*, *e.g.*, Dkt. 50 at 10) and a host of individuals and (b) ultimately shift their obligation to Ms. Aziz. But it is not the Court's job to "devise some method of service" for Plaintiffs. *Freedom Watch, Inc. v. OPEC*, 107 F. Supp. 3d 134, 136 n.4 (D.D.C. 2015). It is the Plaintiffs who are "responsible for having the summons and complaint served." Fed. R. Civ. P. 4(c). Here, the procedures for service on the KRG are clearly spelled out in the FSIA, and Plaintiffs must strictly comply with them.

Just as the KRG must be served in accordance with Section 1608(a), so too must the individual defendants. Although the FSIA does not generally extend to individual defendants, the Supreme Court has explained, "some actions against an official in his official capacity should be treated as actions against the foreign state itself, as the state is the real party in interest." *Samantar v. Yousuf*, 560 U.S. 305, 322 (2010). And this Court and the D.C. Circuit have so ruled in suits against individual defendants which were deemed actions against the foreign state. *See, e.g.*,

*Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 34–35 (D.D.C. 2013), *aff'd* 764 F.3d 31 (D.C. Cir. 2014); *Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 72 (D.D.C. 2013), *aff'd*, 782 F.3d 9 (D.C. Cir. 2015). Whenever the state is the real party in interest, the service rules of Section 1608(a) apply. *See Strange v. Islamic Republic of Iran*, No. CV 14-435 (CKK), 2016 WL 10770678, at *5, *7 (D.D.C. May 6, 2016).

The allegations against the KRG defendants, including Ms. Aziz, concern actions taken in their official capacities or for which the KRG is the real party in interest. The Amended Complaint expressly refers to them as "agents or officials of subdivisions of a foreign government," (Dkt. 20 at 98, 303 (Am. Compl. ¶¶ 195, 635)), as does the instant Motion, (Dkt. 50 at 20). Indeed, the Motion expressly asserts that the KRG is an "alter-ego" for the alleged "Criminal Enterprise" among the defendants. (*Id.* at 7). The Amended Complaint contests the manner in which Prime Minister Barzani and other officials conduct military operations, (Dkt. 20 at 157 (Am. Compl. ¶ 318)), and administer the courts, (*id.* at 194 (Am. Compl. ¶ 412)). None of those are activities undertaken in a personal capacity. Plaintiffs even advance a claim under the Torture Victims Protection Act, which *requires* Defendants to be acting in their official capacities. (Dkt. 20 at 184, 391–95 (Am. Compl. ¶¶ 382, 821–31)); *see* 28 U.S.C. § 1350 (note) (creating a cause of action against an individual "who, under actual or apparent authority, or color of law, of any foreign nation" commits certain acts). Because the KRG is the real party in interest, the FSIA's requirements apply to the individual defendants as well, including Ms. Aziz. *See, e.g.*, *Buzz Photos*

*v. People's Republic of China*, No. 3:20-CV-656-K-BN, 2020 WL 6889016, at *7 (N.D. Tex. Nov. 24, 2020) (denying Plaintiffs' motion for alternative service, finding that individual defendant employees of a Chinese laboratory must be served under Section 1608(a) because "the claims against the individual defendants should be treated as claims against [China] itself").

Plaintiffs recognize that strict adherence to Section 1608(a) is required (Dkt. 50 at 8), but they nonetheless seek an exception to the rules under Federal Rule of Civil Procedure 4(f)(3), which generally permits the court to order alternative service for individuals in foreign countries.  *See* Fed. R. Civ. P. 4(f)(3).  But Rule 4(f) applies "[u]nless federal law provides otherwise."  And here, the FSIA is a mandatory federal statute requiring service through prescribed means.  The Court therefore lacks authority to order alternative service.  There is no doubt that it would make Plaintiffs' task cheaper and faster if they could dispense with translating their behemoth complaint and serving it through diplomatic channels.  But strict adherence means that no exceptions are allowed.  Plaintiffs must follow the rules, and the Motion must be denied.

## II.    Plaintiffs' Proposed Alternative Service Is Improper.

To reiterate, the FSIA forecloses alternative service.  But even assuming *arguendo* that the FSIA does not apply to some individuals and that alternative service is at least possible, the motion requires dismissal.  "[W]hether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court."  *Freedom Watch, Inc. v. OPEC*, 766 F.3d 74, 81 (D.C. Cir. 2014) (quoting *Brockmeyer v. May*, 383 F.3d 798, 805 (9th Cir. 2004)).  Plaintiffs

have a two-part proposal to ease the service process they have yet to attempt: (1) require Ms. Aziz or lawyers at Greenberg Traurig LLP ("Greenberg") to find addresses for and then transmit the untranslated complaint to most defendants, and (2) publish a link to a website containing the complaint in an Iraqi newspaper to serve the remaining 11 individuals.  This unwieldy proposal falls so far short of minimum standards of due process as to require that Plaintiffs' motion be denied.

*First*, Plaintiffs have made no meaningful effort to serve foreign individuals through the default procedures set forth under Rule 4(f).  Like the FSIA, Rule 4(f) begins with provisions for service according to the Hague Convention or other international agreements.  Fed. R. Civ. P. 4(f)(1).  Absent such an agreement, it prescribes service according to the foreign state's domestic laws, expressed either through ordinary service procedures, Fed. R. Civ. P. 4(f)(2)(A), or as expressed by the foreign government in response to a written request, Fed. R. Civ. P. 4(f)(2)(B).  Alternatively, and relevant here, service may be achieved by "(i) delivering a copy of the summons and of the complaint to the individual personally; or (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt."  Fed. R. Civ. P. 4(f)(2)(C).

"Here, unlike in other cases where service on a foreign defendant's United States counsel has been ordered under Rule 4(f)(3), there is no evidence that the [Plaintiffs] ha[ve] made any attempt at service in a manner that complies with Rule 4(f)" before moving for alternative service.  *Stallard v. Goldman Sachs Grp.*, No. 20-2703 (RBW), 2022 WL 59395, at *8 (D.D.C. Jan. 6, 2022).  A simple Google search

reveals several process servers that operate in Iraq, including in Kurdistan. Plaintiffs have not even attempted to comply with these options before declaring that doing so is too hard. That is not enough to warrant a departure from the Rules. Notably, the manual Plaintiffs claim to have reviewed includes step-by-step instructions for effecting service overseas. (Dkt. 49 at 1 (Stat. Rpt. ¶ 1)). While focusing on general facts like participation in the Hague Convention or the Universal Postal Convention, (*id.* at 1–2 (Stat. Rpt. ¶ 2)), Plaintiffs' Status Report nowhere avers any attempt to send even one summons as the manual prescribes.

Even their generic statements about the KRG's postal system do not address all of the defendants for whom Plaintiffs request alternative service. Laaween Pedawi, for example, lives in Dubai. (Dkt. 20 at 28 (Am. Compl. ¶ 49)). Ahmad Kurdu Nori lives in Germany. (*Id.* at 253 (Am. Compl. ¶ 526)). And at least three defendants for whom Plaintiffs assert that service is impossible are persons Plaintiffs previously claimed had already been served: Ms. Aziz, Hikmat Bamarni, and Afan Saleh Omar Sherwani. (Dkt. 28 at 1). As with the failure to effect service under the FSIA, Plaintiffs' disregard for the requirements of Rule 4(f) is a combination of laziness and imprecision, which hardly justifies alternative service under Rule 4(f)(3).

*Second*, Plaintiffs' proposal would put Ms. Aziz or her lawyers in the position of trying to locate the same individuals Plaintiffs profess to be unfindable. Contrary to Plaintiffs' assertions (*see* Dkt. 50 at 21), whether Ms. Aziz or Greenberg is registered under FARA is irrelevant to the question of service. Plaintiffs are confusing a registered agent for service of process, with a registered agent under

FARA, a federal statute that requires persons undertaking certain specified activities on behalf of "foreign principals . . . to make periodic public disclosure of their relationship with the foreign principal." U.S. Department of Justice, Foreign Agents Registration Act, https://www.justice.gov/nsd-fara. Nothing in FARA authorizes serving process on a foreign principal through a FARA-registered agent. The same is true for an attorney-client relationship. The fact that an attorney has represented a client in one matter does not make the attorney an agent for accepting service of process. *Stallard*, 2022 WL 59395 at *5 (quoting *Schwarz v. Thomas*, 222 F.2d 305, 308 (D.C. Cir. 1955) ("[A]ny agent who accepts service must be shown to have been authorized to bind his [or her] principal by the acceptance of process." (Alterations in original))).

In addition, there is no non-conclusory allegation that Ms. Aziz or anyone at Greenberg knows or has any connection to any of the defendants in the Amended Complaint. Indeed, Ms. Aziz herself barely appears in the complaint; Greenberg never appears, except in connection with Plaintiffs' unconscionable claims against Joe Reeder as opposing counsel. Furthermore, neither Ms. Aziz nor her lawyers have any addresses for most of those individuals whom Plaintiffs want "served" on their behalf. They therefore have no way of accomplishing what Plaintiffs demand.

*Third*, Plaintiffs' proposal is improper because it contemplates serving defendants in Iraqi Kurdistan with an English language complaint.[2] Recognizing the

---

[2] Although most defendants allegedly reside in Iraqi Kurdistan, one resides in Germany and the whereabouts of a number of others are not stated. (*See, e.g.*, Dkt. 20 at 32, 36–38 (Am. Compl. ¶¶ 65, 87, 94, 95, 100)).

sensitivities inherent in serving foreign governments, Congress directed in the FSIA that a complaint must be translated in the official language of the foreign state. *See* 28 U.S.C. § 1608(a)(3), (4). Although Rule 4(f)(3) does not contain a parallel provision, basic fairness requires that the complaint be professionally translated into the native languages of the defendants before service. The 400-page complaint is not an easy read even to native English speakers trained in the law. The single paragraph with a substantive allegation against Ms. Aziz, for example, contains a 371-word, two-page sentence that would test any English speaker's comprehension. (Dkt. 20 at 65–67 (Am. Compl. ¶ 170)). The Amended Complaint would be unreadable for lay defendants for whom English is not their first language.

*Fourth*, Plaintiffs do not meet the high bar for service by publication.[3] The Supreme Court has approved publication "where it is not reasonably possible or practicable to give more adequate warning." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 317 (1950). The D.C. Circuit upheld such service for Osama bin Laden, whose "address," the court noted, "is not known, nor is it easily ascertainable." *Mwani v. Bin Laden*, 417 F. 3d 1, 8 (D.C. Cir. 2005). Even then, the notice was placed in a newspaper that the defendant himself had published in, making it reasonable to conclude he might receive notice of the lawsuit. *Id.*

There is no basis for service by publication here. Plaintiffs do not allege that the defendants in this case are in hiding. They simply assume a right to serve these

---

[3] Ms. Aziz has no responsibility for the 11 individuals whom Plaintiffs seek to serve by placing an advertisement in an Iraqi newspaper. Moreover, she disputes the legality of such "service."

11 defendants by publication and go on to describe their plans for publication. (Dkt. 50 at 28–29). Not only does their pleading lack justification for the attenuated service by publication, but the newspaper in which they propose to run their advertisement is an Iraqi, as opposed to Kurdish, newspaper, based in Baghdad. (*Id.* at 28). They provide no indication that such advertisement would ever reach the intended parties. Service by publication is not designed to facilitate dragnet complaints like this one. Plaintiffs' request should be denied.

Plaintiffs' proposed methods of service, in short, fall far short of the minimum "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted). To the contrary, they are recipes for woeful due process violations. and motions to dismiss for ineffective service under Rule 12(b)(5). That is particularly true where, as here, neither the Defendants nor even the Court is aware of the identities of the purported "5000" John Doe plaintiffs (assuming they even exist) seeking alternative service. Thus, even if alternative service under Rule 4(f) were permissible (and it is not), Plaintiffs' proposal should be denied.

## CONCLUSION

Plaintiffs do not identify any concrete steps they have taken to discharge their service obligations since July 10, 2024. Indeed, other than filing a groundless suit against opposing counsel, Plaintiffs have done next to nothing to serve any of the foreign defendants. Yet they burden this Court and Ms. Aziz with a motion asking that the form of service congressionally mandated in the FSIA be ignored. Their basis for doing so—feigned uncertainty over whether the KRG is the government that the

Amended Complaint and subsequent submissions recognize it is—falls so far short of plausibility that sanctions are in order.  The Court should deny Plaintiff's Motion, award Ms. Aziz the costs of preparing this Opposition, and set a deadline of 60 days in which Plaintiffs either serve defendants in accordance with the applicable rules or dismiss them with prejudice.


Dated:   September 17, 2024                    Respectfully submitted,

                                               /s/ Dominic E. Draye
                                               Dominic E. Draye (DC Bar No. 1008820)
                                               Joe R. Reeder (DC Bar No. 279786)
                                               Greenberg Traurig, LLP
                                               2101 L Street, NW
                                               Suite 1000
                                               Washington, DC 20037
                                               Tel. (202) 331-3100
                                               Fax (202) 331-3101
                                               drayed@gtlaw.com
                                               reederj@gtlaw.com

                                               *Attorneys for Treefa Aziz*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 17, 2024, I caused a true and accurate copy of the foregoing to be served via ECF.

_/s/ Dominic E. Draye_
Dominic E. Draye