# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISRICT OF COLUMBIA

| | |
|---|---|
| Kurdistan Victims Fund, *et al.*,      ) | |
|      ) | |
| Plaintiffs,      ) | |
|      ) | |
| v.      ) | Civil Action No. 1:24-cv-00278-RDM |
|      ) | Judge Randolph Moss |
| Masrour Barzani, *et al.*,      ) | |
|      ) | |
| Defendants.      ) | |
|      ) | |

## MOTION TO INCORPORATE JOHN DOE PLAINTIFFS
## WITH ASSOCIATION PLAINTIFF, KURDISTAN VICTIMS FUND

## TABLE OF AUTHORITIES

**Cases**

*Allinejad v. The Islamic Republic of Iran*, 19-cv-3599 (GMH) (D.D.C. Jul. 6, 2023) ................. 5
*BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 525, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002) ........ 8
*Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d
   277 (1983) .............................................................................................................. 8
*Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011) ................................................. 8
*Breen v. Chao*, No. CV 05-0654 (PLF), 2018 WL 1509077 (D.D.C. Mar. 27, 2018) ................ 17
*Brereton v. Communications Satellite Corp.*, 116 F.R.D. 162, 164 (D.D.C. 1987) ................ 14
*Buckley v. Valeo*, 424 U.S. 1, 64, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) ...................................... 19
*Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001) .......................................... 5
*California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 513, 92 S.Ct. 609, 30
   L.Ed.2d 642 (1972) ................................................................................................. 8
*Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 342 (D.D.C. 2011) ............ 14
*Chavez v. Illinois State Police*, 251 F.3d 612, 632 (7th Cir.2001) .............................................. 13
*Christie v. Callahan*, 75 U.S.App.D.C. 133, 135, 136, 147, 124 F.2d 825, 827, 828
   (D.C.Cir.)(1941) ...................................................................................................... 12
*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401, 415 n.5 (2013) ............................................ 7
*Clayton v. District of Columbia*, 36 F. Supp. 3d 91, 93 (D.D.C. 2014) ...................................... 15
*Council on Am.–islamic Relations Action Network Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 323
   (D.D.C. 2011) ......................................................................................................... 13
*Davidson v. District of Columbia*, 736 F. Supp. 2d 115, 119 (D.D.C. 2010) .............................. 14
*De La Fuente v. DNC Servs. Corp.*, 2019 WL 1778948, at *7 (D.D.C. Apr. 23, 2019) ............. 10
*Di Santo v. Pennsylvania*, 273 U.S. 34, 43, 47 S.Ct. 267, 71 L.Ed. 524 (1927) ........................ 12
*Doe v. Chutkan*, Civil Action 24-3470 (JEB), 3 (D.D.C. Dec. 17, 2024) ..................................... 6
*Edwards v. South Carolina*, 372 U.S. 229, 235). ....................................................................... 8
*Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 580 (2005) .................................. 1
*Food & Water Watch, Inc. v. Vilsack*, 808 F.3d at 914 .............................................................. 7
*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 .... 16, 17
*Fritz*, 320 F.Supp.3d at 82 ......................................................................................................... 12
*Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 176 (D.C. Cir. 2012)............................................... 7
*Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044 (D.C.Cir 2014) ...... 5, 11, 12
Hanson v. District of Columbia, 257 F.R.D. 19, 21 (D.D.C.2009) ............................................ 10
*Homan v. Goyal*, 711 A.2d 812, 818 (D.C.1998) ........................................................................ 5
*Horne v. Flores*, 557 U.S. 433, ——, 129 S.Ct. 2579, 2591–2592, 174 L.Ed.2d 406 (2009) ....... 8
Hunt v. Washington State Apple Advertising Comm'n, 432 U. S. 333, 343 (1977) ............... 16
*In re Navy Chaplaincy*, 697 F.3d 1171 (D.C. Cir. 2012) ........................................................... 16
*In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020) ............................................................... 6
In re Vitamins Antitrust Litig., 2000 WL 1475705, at *17 (D.D.C. 2000) ................................ 14
*James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 530 (1991) ......................................... 15
*Jennings v. Rodriguez*, 583 U.S. 281, 314 (2018) ...................................................................... 13
*Jonas v. Conrath*, 149 F.R.D. 520, 523 (S.D. W.Va. 1993) ....................................................... 14
*Jurek* v. *Texas*, 428 U.S. 262, 275 (1976). ................................................................................. 7
*Lane v. Tschetter*, No. 05-1414, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007) .................... 14
*Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1224 (11th Cir. 2019) ............................. 10
*Lucke v. Solsvig*, 912 F.3d 1084, 1087 (8th Cir. 2019) ............................................................... 10

*Middlebrooks v. Godwin Corp.*, 279 F.R.D. 8, 12 (D.D.C. 2011) ................................................. 10

*Mine Workers* v. *Gibbs*, 383 U. S. 715, 725 (1966) ......................................................................... 1

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) ................................................. 8

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ............................................................................. 13

*Murthy v. Missouri,* 219 L.Ed.2d at 617 .......................................................................................... 6

*NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)) .... 19

*NAACP v. Alabama,* 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) ........................ 16

*Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Kerry, 168 F. Supp. 3d 268 (D.D.C. 2016)* ................................................................. 1

*O'Shea v. Littleton*, 414 U. S. 488, at 495-496 ................................................................................. 6

*Ortberg v. Goldman Sachs Group*, 64 A.3d 158 (D.C. Cir. 2013) ................................................... 5

*Owens v. Republic of Sudan*, 864 F.3d at 787 (D.C.Cir. 2017) ...................................................... 11

*Pampered Chef v. Alecanian*, 804 F.Supp. 2d 765. 807 n.30 (N.D. Ill. 2011) ............................... 12

*Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.,* 489 F.3d at 1295 ............................ 7

*Sierra Club v. Morton*, 405 U.S. 727 (1972) ................................................................................... 17

*Skipper v. South Carolina*, 476 U.S. 1, 5 (1986) .............................................................................. 7

*Sosa v. Alvarez-Machain*, 542 U.S. 692, 124 S. Ct. 2739, 159 L. Ed. 2d 718 (2004) ................. 10

*Spaeth v. Michigan State University College of Law,* 845 F.Supp.2d 48, 53 (D.D.C. 2012) .. 13, 14

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) ................................................... 6

*Steele v. Taylor*, 684 F.2d 1193, 1202 (6th Cir. 1982) .................................................................... 12

*Sure–Tan, Inc. v. NLRB,* 467 U.S. 883, 896–897, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984) ........... 8

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) .................................................... 6, 7

*U.S. v. White*, 116 F.3d 903, 911 (D.C. Cir. 1997) ......................................................................... 12

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ................................................. 14

*United States v. Aguiar*, 975 F.2d 45, 47 (2d Cir. 1992) ................................................................ 12

*United States v. Balano*, 618 F.2d 624, 628 (10th Cir. 1979) ........................................................ 12

*United States v. Carlson*, 547 F.2d 1346, 1360 (8th Cir. 1976) ..................................................... 12

*United States* v. *Estate of Donnelly*, 397 U.S., at 296 (Harlan, J., concurring) ............................ 15

*United States v. Houlihan*, 92 F.3d 1271, 1279 (1st Cir. 1996) ..................................................... 12

*United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985) .......................................................... 12

*United States v. Thevis*, 665 F.2d 616, 630 (5th Cir. Unit B 1982) ................................................ 12

*Wood v. Neuman,* 979 A.2d 64, 77 (D.C. 2009) ............................................................................... 5

**Table of Contents**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................ 1

I.    JOHN DOE PLAINTIFFS ...................................................................... 1

    A.   This Court has Previously Addressed Pseudonymity for John Doe Plaintiffs .............. 1

    B.   John Doe Plaintiffs Face Coercive Intimidation and Reprisal from Defendants ........... 3

    C.   John Doe Plaintiffs Reasonably Expect to Suffer Harm from Defendants ................... 5

ARGUMENT ...................................................................................................... 8

II.   John Doe Plaintiffs Are Entitled to Redress ......................................... 8

    A.   John Doe Plaintiffs are Deprived of Avenue to Seek Redress ...................................... 8

    B.   The Reasonable Danger of Retribution Requires Shielding John Doe Plaintiffs' Identity ..................................................................................................... 9

    C.   John Doe Plaintiffs are Similarly Situated as Kurdistan Victims Fund ...................... 10

    D.   Defendants Denial of John Doe Plaintiffs Existence .................................................. 11

THE LAW ......................................................................................................... 11

III.   PERMISSIBLE PROTECTIONS ARE WARRANTED ........................... 11

    A.   This Court Recognizes Unique Circumstances ......................................................... 11

    B.   FRCP Rule 20 Permits Consolidation of Existing Plaintiffs ...................................... 13

    C.   This Court Liberally Construes Permissive Joinder .................................................. 14

MOTION FOR JOINDER ................................................................................. 15

IV.   Plaintiff Seeks Court's Leave for An Alternative to Preserve John Does' Interests at Stake  15

    A.   Similarly Situated Defendants Merit Similar Treatment ............................................ 15

    B.   Plaintiffs Seek Court's Authority to Join Multiple Similarly Situated Plaintiffs ......... 15

    C.   John Doe Plaintiffs Seek to Join as Part of Existing Plaintiff Kurdistan Victims Fund 17

    D.   Defendants are Not Prejudiced by the Joinder of John Doe Plaintiffs into Plaintiff Kurdistan Victims Fund ........................................................................................ 18

    E.   John Doe Plaintiffs' Motion For Joinder Is Timely, Will Not Cause Delay, and Serves the Interests of Justice ............................................................................................. 18

    F.   John Doe Plaintiffs as Part of Plaintiff Kurdistan Victims Fund Preserves John Doe Plaintiffs' Anonymity and Reasonable Safety ......................................................... 18

CONCLUSION ................................................................................................ 19

**INTRODUCTION**

Plaintiffs respectfully respond herein to this Court's Minute Order concerning the John Doe Plaintiffs.  Since this Court's denial of Plaintiff's pseudonymity motion and entry of its minute order on February 27, 2025, for reasons of extreme fear, terror, and apprehension of harm explained herein, Plaintiffs have been unable to persuade John Doe Plaintiffs to reveal their names, even under seal.  Plaintffs therefore seek to include the John Doe Plaintffs within the umbrella of the Plaintiff, Kurdistan Victims Fund.

The U.S. Supreme Court observed, "'[T]here is *power* in federal courts to hear the whole,' the Court said, when the … claims 'derive from a common nucleus of operative fact' and are so linked that the plaintiff[s] 'would ordinarily be expected to try them all in one judicial proceeding.'" *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 580 (2005)(citing *Mine Workers* v. *Gibbs*, 383 U. S. 715, 725 (1966).

**BACKGROUND**

I.    **JOHN DOE PLAINTIFFS**

**A.  This Court has Previously Addressed Pseudonymity for John Doe Plaintiffs**

"Because of the ongoing risk of reprisal they face," this court granted plaintiffs leave to proceed by pseudonym in *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Kerry, 168 F. Supp. 3d 268 (D.D.C. 2016).*

In the instant case, this court denied pseudonymity and hence the individual John Doe plaintiffs' injuries, and who continue to suffer injuries in fact and lack all protected rights, are not presently redressable through the relief sought by the John Doe plaintiffs.  Defendants exploit Iraq and Kurdistan legal systems to their advantage (See Second Amended Complaint,

1

including but not limited to, ¶12 p. 9, ¶89 p. 44, ¶219 p. 82,  ¶231 p. 86, ¶302 p. 110, ¶551 p.

194-198 , ¶605 p. 219, ¶607 p. 220, ¶624 p. 226, ¶626 p. 226, and  ¶881 p. 367), brazenly

mislead U.S. Government and United Nations monitoring, and blatantly disregard societal

norms.

The factual basis and sweeping nature of Defendants' repeated and thoroughly

demonstrated retaliatory (and often preemptive) conduct, inflicting irreparable injury, including

death and enforced disappearance, and monetary damages, makes each John Doe Plaintiff, if

named, a plausible target of retaliation and retributive injury or death.  As extensively

particularized throughout the Second Amended Complaint, Defendants repeatedly and

thoroughly demonstrate violent and cruel retaliatory conduct.

For purposes of brevity herein, just one such example is the brutal torture and murder-by-

incineration of Plaintiff, Shakhwan Abdulrahman's sister, Jihan Taha Abdulrahman, by agents of

Defendant Mustafa "Babo" Barzani, the designated official head of the Barzan region acting

under the command and direction of Defendant Masrour Barzani.  Jihan Taha Abdulrahman was

a harmless, innocuous school teacher in Erbil, Kurdistan, and was a vocal but peaceful critic of

the criminality and human and civil rights deprivation of the Barzani regime led by Defendant

Masrour Barzani – having appeared as a representative of teachers three times on Kurdistan

television criticizing the Barzani-controlled Ministry of Education.  As part of the Barzani

family's effort to maintain unrestrained political and commercial power in Kurdistan and instill

oppressive fear in its citizens, and consistent with its U.S. Department of State-documented

pattern of silencing viewpoint expression and political dissent, the Barzani Criminal Enterprise

decided to silence Jihan – by murder.  (See Second Amended Complaint ¶454-457 p. 156-158,

¶569 p. 205, ¶726 p. 334.)

2

John Doe Plaintiffs, and unnumbered others, live in constant and often debilitating fear that they (or a family member) may be arrested or disappeared by officers of the government and/or political party controlled by Defendants, with no lawful basis, as a result of their speech or becoming an identified Plaintiff, and are not safe from intimidation, suppression, coercion, torture, and murder.

The Defendants act with malice and/or reckless indifference to law. John Doe Plaintiffs are victims and survivors and family members of victims who have been killed or injured by the Barzani Criminal Enterprise's internationally recognized campaign of lethal terror, genocide. atrocities including extrajudicial killing, enforced disappearances, mass rape of women and daughters, torture, being forced to watch the murder and rape of their family members, circumvention of sanctions, and multitudinous tortious criminal acts including crimes against humanity and human rights abuses. These are the natural and direct causes of John Doe Plaintiffs' injuries, which suffering includes traumatic injuries and profound mental and emotional and economic harm, incouding a substantial loss of earnings and/or earning capacity, and chills access to lawful free speech.

 This is incontestably the proximate cause of John Doe Plaintiffs' present and future fears, terror, and trepidation, and is undertaken by Defendants with the intention of preventing potential witnesses from testifying at trial. Defendants should not profit in a court of law by reason of their miscreancy.

**B.  John Doe Plaintiffs Face Coercive Intimidation and Reprisal from Defendants**

The instant case is set in a background history by Defendants of violence, menacing, and aggravated intimidation and repression, characterized by assassination, attempts to suppress

information, sufficiently severe and pervasive to engender a state of intense or overwhelming fear and overcome by terror.

While this Court has not made findings as to the danger Plaintiffs face from Defendants, the Defendants' individual histories, prior record, nature and pattern of violence, and heinous crimes against humanity are extensively particularized in the Second Amended Complaint and well and adequately documented by agencies of the U.S. Government, the United Nations, and the Federal Republic of Germany, are probative of dangerousness, and will be proffered at trial.

This acute dangerousness exacerbates the difficulty in naming John Doe plaintiffs. Treatment amounts to torture under the rigorous definition of that term adopted in the FSIA, to be proven at trial with a preponderance of admissible evidence satisfactory to the court which implicates the terrorism exceptions.

No foreign sovereign or instrumentality of any foreign sovereign is a defendant in the instant case, and Defendants, as natural person individuals, are not run-of-the-mill foreign private defendants. Defendants commit crime and support crime as a way of life, and make a constant attempt to avoid accountability.

Under the command and control and leadership of Defendant Masrour Barzani, Defendants are widely known to intimidate, harm, force disappearances, and even murder those who speak against them – maltreatment that is purposeful and particularly harsh.  Identities of individuals who have supplied information concerning Kurdistan and Barzani matters are kept confidential to ensure their safety from potential retribution against them by the Defendants and associates.

The Circuit Court of the District of Columbia in another case used phraseology which accurately characterizes conduct accumulating over a period of time of Defendants in the instant

case: Defendants' "conduct [was] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *See Ortberg v. Goldman Sachs Group*, 64 A.3d 158 (D.C. Cir. 2013); *Homan v. Goyal,* 711 A.2d 812, 818 (D.C.1998); *accord Wood v. Neuman,* 979 A.2d 64, 77 (D.C. 2009).

As this court held in another case unrelated to the Defendants, but with similar circumstances, "[T]hrough terror and intimidation [Defendants] prevent any information about those crimes from escaping to the outside world." *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044 (D.C.Cir 2014). Defendants, like Kim Jong Un of the Democratic Republic of North Korea, have "evade[d] liability simply because they have effectively hidden their misdeeds from public view." *Allinejad v. The Islamic Republic of Iran*, 19-cv-3599 (GMH) (D.D.C. Jul. 6, 2023) citing *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1048 (D.C.Cir 2014) ("*Han Kim II*").

## C.  John Doe Plaintiffs Reasonably Expect to Suffer Harm from Defendants

If their names are disclosed, John Doe Plaintiffs reasonably expect to be killed or disappeared. Defendants' well documented tortious acts are criminal conduct "most likely to rise to the conscience-shocking level." *Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001).

This danger to John Doe Plaintiffs is beyond the control of individuals or organizations to forsee or prevent, and requires special actions or responses to address them.

John Doe Plaintiffs have a legitimate fear that disclosure of identification will result in retribution by Defendants, and poses "a risk of retaliatory physical or mental harm." *Doe v.*

*Chutkan*, Civil Action 24-3470 (JEB), 3 (D.D.C. Dec. 17, 2024)(citing *In re Sealed Case,* 971 F.3d 324, 326 (D.C. Cir. 2020).

John Doe Plaintiffs, based on danger demonstrated by Defendants' prior record of violent and serious crime, argue fear-based, unrealized, anticipatory or proleptic harm can reasonably be expected to recur.  Identification poses a risk of retaliatory physical or mental harm to named Plaintiffs, including death, torture, imprisonment, and persecution probably resulting.

To disclose their identity, John Doe Plaintiffs expect that the individual plaintiffs possess a substantial and potentially mortal risk that they will be subject to future targeting and attacks of the Barzani Criminal Enterprise in the immediate future and sufficiently likely to suffer harm in the future from an imminent injury as a result of acts of Defendants and their agents and representatives.

Based on their past and continuing actions, John Doe Plaintiffs are certain that the defendants will "engage in substantially similar activity in the future." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)); cf. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998).

The U.S. Supreme Court has held that past injuries are relevant "for their predictive value" and "the past is relevant only insofar as it predicts the future." *Murthy v. Missouri,* 219 L.Ed.2d at 617. *See O'Shea v. Littleton*, 414 U. S. 488, at 495-496 ("Past exposure to illegal conduct" can serve as evidence of threatened future injury…"). John Doe Plaintiffs have personally witnessed the murder, torture, and betrayal by defendants as is particularly set forth in the Second Amended Complaint.

For reasonable predictive purposes to show that Defendants will act in predictable ways, sufficient of these individual past injuries in fact are adequately documented and particularized

in the Second Amended Complaint, not conclusory allegations, and will be further expounded at trial. This Circuit Court has held: "It is well established that causation, or 'traceability,' examines whether it is substantially probable that the challenged acts of the defendant, not of some absent third party, will cause the particularized injury of the plaintiff." *Grocery Mfrs. Ass'n v. EPA,* 693 F.3d 169, 176 (D.C. Cir. 2012) (cleaned up).

The U.S. Supreme Court recognized past conduct is indicative of probable future behavior: "Consideration of a defendant's past conduct as indicative of his probable future behavior is an inevitable and not undesirable element of criminal sentencing: 'any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose.'" *Skipper v. South Carolina*, 476 U.S. 1, 5 (1986)(citing *Jurek* v. *Texas*, 428 U.S. 262, 275 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.). ")

To predict a future injury with certainty is, obviously, an impossibility; probability is substantially possible. Past and present acts by Defendants would cause a reasonable person to expect physical or financial harm will be "'certainly impending,' or there [must be] a 'substantial risk' that the harm will occur," *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 401, 415 n.5 (2013)), and will continue unless and until this Court grants the relief requested herein.

To establish imminence, a plaintiff must show both "(i) a *substantially* increased risk of harm and (ii) a *substantial* probability of harm with that increase taken into account." *Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.,* 489 F.3d at 1295; *accord Food & Water Watch, Inc. v. Vilsack,* 808 F.3d at 914. These substantial risks of harm and substantial probability are particularized extensively in the Second Amended Compaint.

7

**ARGUMENT**

**II.      John Doe Plaintiffs Are Entitled to Redress**

**A.  John Doe Plaintiffs are Deprived of Avenue to Seek Redress**

The U.S. Supreme Court held, ""[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011)(See  *Sure–Tan, Inc. v. NLRB,* 467 U.S. 883, 896–897, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984) ; see also *BE & K Constr. Co. v. NLRB,* 536 U.S. 516, 525, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002) ; *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983) ; *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 513, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).")

This right, the U.S. Supreme Court held, is "essential to freedom."  *Borough,* at 382, 394.

Presently, John Doe Plaintiffs are deprived of and lack an avenue to seek relief by "petition[ing] the Government" through this Court "for a redress of grievances." *Edwards v. South Carolina*, 372 U.S. 229, 235).

The U.S. Supreme Court held, "Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) (citing *Horne v. Flores,* 557 U.S. 433, ——, 129 S.Ct. 2579, 2591–2592, 174 L.Ed.2d 406 (2009).")

In the Second Amended Complaint, Plaintiffs have sufficiently particularized their concrete and actual injuries, fairly traceable to the challenged actions, and redressable by a favorable ruling.  In particular, attacks by Defendants and their agents and represenatatives

constituted murder, attempted murder, conspiracy to murder, kidnapping, arson. conspiracy to murder in a foreign country, killing and attempted killing of U.S. employees performing official duties, hostage taking, killing U.S. nationals abroad, use of weapons of mass destruction, commission of acts of terrorism transcending national boundaries, bombing places of public use, encorced disappearances, assassination, and extrajudicial execution.

Acts of murder or attempted murder by Defendants and their agents and representatives are particularized in the Second Amended Complaint in at least ¶6  p. 6, ¶9 p. 7, ¶12 p. 9, ¶13 p. 9, ¶19 p. 24, ¶22 p. 25, ¶23 p. 26, ¶24 p. 26, ¶30 p. 29, ¶202 p. 77, ¶211 p. 80, ¶225 p. 85, ¶251 p. 91, ¶252 p. 92, ¶271 p. 99, ¶307 p. 112, ¶308 p. 112, ¶311 p. 113, ¶368 p. 128, ¶384 p. 134, ¶412 p. 143, ¶420 p. 146, ¶439 p. 152, ¶442 p. 152, ¶445 p. 153, ¶446 (photo) p. 153, ¶448 p. 154, ¶449 p. 155, ¶450 p. 155, ¶453 p. 156, ¶454 p, 156, ¶455 p. 156, ¶458 p. 158, ¶460 p. 158, ¶461 p. 159, ¶463 p. 159, ¶464 p. 160, ¶465 p. 160, ¶471 p. 162, ¶472 p. 162, ¶478 p. 165, ¶481 p. 166, ¶482 p. 168, ¶483 p. 169, ¶484 p. 169, ¶486 p. 169, ¶489 p. 170, ¶491 p. 171, ¶492 p. 171, ¶493 p. 172, ¶495 p. 172, ¶502 p. 174, ¶504 p. 175, ¶518 p. 179, ¶521 p. 179, ¶523 p. 180, ¶524 (photo) p. 180-182, ¶527 p. 183, ¶541 p. 189, ¶551 p. 194-198, ¶565 p. 203, ¶566 p. 203, ¶574 p. 207, ¶593 p. 215, ¶646 p. 231, ¶460 p. 158, ¶463  p. 159, ¶664 p. 316, ¶715 p. 330, ¶717 p. 331, ¶726 p. 334, ¶748 p. 341, ¶751 p. 342, ¶754 p. 343, ¶755 p. 343, and ¶785 p. 348.

**B.  The Reasonable Danger of Retribution Requires Shielding John Doe Plaintiffs' Identity**

Claims for relief made by Plaintiffs are exceptionally grave.  The U.S. Supreme Court declared, "We think courts should require any claim based on the present-day law of nations to rest on a norm of international character accepted by the civilized world and defined with a

specificity comparable to the features of the 18th-century paradigms we have recognized." (See *Sosa v. Alvarez-Machain*, 542 U.S. 692, 124 S. Ct. 2739, 159 L. Ed. 2d 718 (2004)).

Defendants Masoud Barzani, Masrour Barzani, and Waysi Barzani, their coconspirator agents, representatives, servants, collaborators, and co-conspirators, have, in their unbridled pursuit of power and their expansive illicit transnational tortious criminal enterprise, and unfailingly hiding behind the cloak of the authority and misapplied protections of their authoritarian government offices, and lacking legal reasonableness, and exceeding the outer limits of lawful authority of any sovereign, consistently, knowingly, and willfully failed to comport with and did act in contravention and abuse of "a norm of international character accepted by the civilized world" *Id*. and the law of nations.

## C.  John Doe Plaintiffs are Similarly Situated as Kurdistan Victims Fund

"A person is similarly situated to the plaintiff if he or she possesses all the relevant characteristics the plaintiff possesses…"  "A person is similarly situated to the plaintiff if he or she possesses all the relevant characteristics the plaintiff possesses except for the characteristic about which the plaintiff alleges discrimination." *De La Fuente v. DNC Servs. Corp.,* 2019 WL 1778948, at *7 (D.D.C. Apr. 23, 2019) (quoting *Lucke v. Solsvig,* 912 F.3d 1084, 1087 (8th Cir. 2019)).  John Doe Plaintiffs and Kurdistan Victims Fund are "similarly situated in all material respects."  *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1224 (11th Cir. 2019)(en banc).

"[C]onsolidation is particularly appropriate when the actions are likely to involve substantially the same witnesses and arise from the same series of events or facts." *Hanson v. District of Columbia,* 257 F.R.D. 19, 21 (D.D.C.2009). " *Middlebrooks v. Godwin Corp.*, 279 F.R.D. 8, 12 (D.D.C. 2011).  Such is the situation in the instant case.

10

**D.  Defendants Denial of John Doe Plaintiffs Existence**

In their papers Defendants contend that the John Doe Plaintiffs do not exist, completely ignoring the facts pled in the Second Amended Complaint. Not only does the Complaint recite the facts of genocide, murder and torture, it specifically details the betrayal by Defendants Masoud Barzani, Masrour Barzani, and Waysi Barzani of the Yazidi people to ISIS after promising them protection. Defendants' denial of the existence of the John Doe Plaintiffs is reminiscent of Holocaust deniers who covered up genocide of the Jewish people prior to and during World War II, and those today who continue to deny that the Holocaust happened. Like Holocaust deniers, Defendants have no evidence to support their claim.

## THE LAW

## III.    PERMISSIBLE PROTECTIONS ARE WARRANTED

**A.  This Court Recognizes Unique Circumstances**

John Doe Plaintiffs cannot be expected to meet a typical standard for judgment as a matter of law.  As the D.C. Circuit acknowledged and explained in an analogous case:

> "[F]irsthand evidence of terrorist activities is difficult, if not impossible, to obtain. Victims of terrorist attacks, if not dead, are often incapacitated and unable to testify about their experiences. Perpetrators of terrorism typically lie beyond the reach of the courts and go to great lengths to avoid detection. Eyewitnesses in a state that sponsors terrorism are similarly difficult to locate and may be unwilling to testify for fear of retaliation." "Nor can the plaintiffs ordinarily subpoena members of al Qaeda, many of whom are dead or in hiding, to testify regarding the actions of the regime." *Alinejad v. The Islamic Republic of Iran*, 19-cv-3599 (GMH), 27 (D.D.C. Jul. 6, 2023 (citing *Owens v. Republic of Sudan*, 864 F.3d at 787 (D.C.Cir. 2017).

This court held, "The Court is sensitive to the evidentiary limitations that accompany 'cases of forced disappearance, like this one, where direct evidence of subsequent torture . . . will, by definition, almost always be unavailable.'"  *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044 (D.C. Cir. 2014); *see also Alinejad,* 2023 WL 4684929, at *13.  Such

cases permit more evidentiary creativity because defendants should not be able to "effectively immunize themselves by killing their victims, intimidating witnesses, and refusing to appear in court." *Han Kim,* 774 F.3d at 1048; *see also Fritz,* 320 F.Supp.3d at 82. "

The Circuit Court of the District of Columbia held, "It is hard to imagine a form of misconduct more extreme than the murder of a potential witness." *U.S. v. White*, 116 F.3d 903, 911 (D.C. Cir. 1997) *See United States v. Houlihan*, 92 F.3d 1271, 1279 (1st Cir. 1996) (murder); *United States v. Aguiar*, 975 F.2d 45, 47 (2d Cir. 1992) (threats); *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985) (murder); *Steele v. Taylor*, 684 F.2d 1193, 1202 (6th Cir. 1982) (defendant pimp used influence and control over prostitute to induce her to refuse to testify); *United States v. Thevis*, 665 F.2d 616, 630 (5th Cir. Unit B 1982) (murder); *United States v. Balano*, 618 F.2d 624, 628 (10th Cir. 1979) (threat); *United States v. Carlson*, 547 F.2d 1346, 1360 (8th Cir. 1976) (threat).

The same legal reasoning and deduction, and the same principle which governs that situation, and empirical considerations, would warrant application to the relevant facts of the John Doe Plaintiffs. Justice Brandeis' insight that "the logic of words should yield to the logic of realities" is relevant. *Pampered Chef v. Alecanian*, 804 F.Supp. 2d 765. 807 n.30 (N.D. Ill. 2011) (citing *Di Santo v. Pennsylvania,* 273 U.S. 34, 43, 47 S.Ct. 267, 71 L.Ed. 524 (1927).

As the Circuit Court for the District of Columbia observed, "The line cannot be drawn by magic of word or formula." "It is always relevant to the issues … in a particular case. Hence, in the end, a kind of intuitive evaluation must be made…" *Christie v. Callahan*, 75 U.S.App.D.C. 133, 135, 136, 147, 124 F.2d 825, 827, 828 (D.C.Cir.)(1941).

"'Due process is flexible,'" as the U.S. Supreme Court and this court have often observed, "and it 'calls for such procedural protections as the particular situation demands.'"

*Jennings v. Rodriguez*, 583 U.S. 281, 314 (2018) (brackets omitted) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

**B.  FRCP Rule 20 Permits Consolidation of Existing Plaintiffs**

As proposed herein, joinder presents no prejudice, delay, expense, and no additional Plaintiffs.

This court held, "Attempts to join a party who satisfies the test for permissive joinder should generally not be denied in the absence of undue prejudice, expense, or delay." *Council on Am.–islamic Relations Action Network Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 323 (D.D.C. 2011)(citing *Chavez v. Illinois State Police,* 251 F.3d 612, 632 (7th Cir.2001).")

FRCP 20(a)(2) permits the joinder of defendants in a single case under certain conditions. Additionally, FRCP Rule 17 allows for the use of a representative party when the identity of all potential plaintiffs is not yet known.

Trial courts have discretion to allow the joinder of parties if:
(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20. "The two prongs of Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy ... in a manner that will secure the just, speedy, and inexpensive determination of the action." *Spaeth v. Michigan State University College of Law,* 845 F.Supp.2d 48, 53 (D.D.C. 2012) (quoting *Davidson v. Dist. of Columbia,* 736 F.Supp.2d 115, 119 (D.D.C. 2010)) (punctuation omitted).

Under subsection (A), the "terms 'transaction or occurrences' should be interpreted broadly to permit all reasonably related claims for relief by or against different parties to be

tried in a single proceeding." *In re Vitamins Antitrust Litig.,* No. MISC 99-197 (TFH), 2000 WL 1475705, at *18 (D.D.C. May 9, 2000) (quotations omitted), clarified on denial of reconsideration sub nom. *In re Vitams Antitrust Litig.,* No. MISC. 99-197 (TFH), 2000 WL 34230081 (D.D.C. July 28, 2000). A series of transactions or occurrences thus refers to those events that are "logically related." *See, e.g., Spaeth,* 845 F.Supp.2d at 53. The "logical relationship" test is a flexible one because "the impulse" of Rule 20(a) "is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Under the "logically related" standard, courts "consistently deny motions to sever where [the] plaintiffs allege that [the] defendants have engaged in a common scheme or pattern of behavior." *In re Vitamins Antitrust Litig.,* 2000 WL 1475705, at *17 (D.D.C. 2000) (citing *Brereton v. Communications Satellite Corp.,* 116 F.R.D. 162, 164 (D.D.C. 1987)).

## C.  This Court Liberally Construes Permissive Joinder

The requirements for permissive joinder are "liberally construed in the interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive determination of the action." *Lane v. Tschetter*, No. 05-1414, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007) (quoting *Jonas v. Conrath*, 149 F.R.D. 520, 523 (S.D. W.Va. 1993)); *see also Davidson v. District of Columbia*, 736 F. Supp. 2d 115, 119 (D.D.C. 2010).  "Thus, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; [and] joinder of claims, parties, and remedies is strongly encouraged.' *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)." *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 342 (D.D.C. 2011).

14

**MOTION FOR JOINDER**

**IV.    Plaintiff Seeks Court's Leave for An Alternative to Preserve John Does'**

**Interests at Stake**

**A.  Similarly Situated Defendants Merit Similar Treatment**

The U.S. Supreme Court held, "*Griffith's* equality principle, that similarly situated litigants should be treated the same, applies equally well in the civil context as in the criminal." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 530 (1991)

"*Griffith* cannot be confined to the criminal law.  Its equality principle, that similarly situated litigants should be treated the same, carries comparable force in the civil context." See *United States* v. *Estate of Donnelly*, 397 U.S., at 296 (Harlan, J., concurring)." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 540 (1991).

**B.  Plaintiffs Seek Court's Authority to Join Multiple Similarly Situated Plaintiffs**

John Doe Plaintiffs and Plaintiff Kurdistan Victims Fund members are similarly situated.

This Court has broad discretion in deciding whether to consolidate actions that involve "common question[s] of law or fact." Fed. R. Civ. P. 42(a); *Clayton v. District of Columbia*, 36 F. Supp. 3d 91, 93 (D.D.C. 2014).

To ensure fairness to and reasonably ensure the safety of American and foreign John Doe plaintiffs, to whom Defendants pose an unreasonable and substantial risk of serious and immediate danger of irreparable harm and loss, and pursuant to FRCP 19, Plaintiffs seek the court's procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure; and to proceed collectively, addressing common issues of law and fact arising from the same tortious acts to Jihan Taha Abdulrahman, whose brother,

Shakhwan Abdulrahman, is her representative in this action.  Shakhwan Abdulrahman is a member of the Kurdistan Victims' Fund and is also a Plaintiff herein.

An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167  (citing  *Hunt* v. *Washington State Apple Advertising Comm'n,* 432 U. S. 333, 343 (1977).

The D.C. Circuit addressed the issue of standing in the context of an association's changing membership. The court held that the association must show that at least one member with standing remains part of the association throughout the litigation.  *See In re Navy Chaplaincy*, 697 F.3d 1171 (D.C. Cir. 2012). Shakhwan Abdulrahman is a member of the Kurdistan Victims Fund, and the facts of the torture and death of his sister are particularly set forth in the Second Amended Complaint.

The U.S. Supreme Court said it "is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *Anderson,* 460 U.S. at 787, 103 S.Ct. 1564 (quoting *NAACP v. Alabama,* 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)).

The U.S. Supreme Court established the principle that an association must demonstrate that at least one of its members has suffered or will suffer an injury-in-fact to have standing. If the membership changes, the association must ensure that it can still meet this requirement.  *See*

*Sierra Club v. Morton*, 405 U.S. 727 (1972).  Plaintiff Kurdistan Victims Fund represents and warrants to the court that at least one of its members has suffered injury-in-fact.

The U.S. Supreme Court reinforced the need for ongoing injury to maintain standing.  If the membership changes and the new members do not suffer the same injury, the association may lose standing.  See *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000).  Plaintiff Kurdistan Victims Fund represents and warrants to the court its members possess ongoing injury.

**C.  John Doe Plaintiffs Seek to Join as Part of Existing Plaintiff Kurdistan Victims Fund**

Here, John Doe Plaintiffs seek to join as part of existing Plaintiff Kurdistan Victims Fund because they assert equivalent rights to relief arising out the same series of transactions or occurrences, and under questions of law or fact common to all plaintiffs in this action.

In this District, moving pursuant to F.R.C.P. 20 is the appropriate method for joinder. In *Breen v. Chao,* No. CV 05-0654 (PLF), 2018 WL 1509077 (D.D.C. Mar. 27, 2018), several prospective plaintiffs sought to join an existing complaint, nearly two years after that defendant had answered, by filing a motion under F.R.C.P. 20.2  The court observed that it "has discretion in determining whether to permit the prospective plaintiffs to join this case, so long as it does so 'on just terms' and in accordance with Rule 20 governing permissive joinder." *Id*. at *9. Accordingly, this Court has discretion to determine whether John Doe Plaintiffs can join the complaint "on just terms," which should include assessing any "potential for prejudice to any party or undue delay." *Id.*

In support of this joinder and inclusion of John Doe Plaintiffs, the Board of Trustees of the Kurdistan Victims Fund, a non-profit civil society association organization, has by

Resolution of said Board approved the inclusion and accepts all John Doe Plaintiffs as members of the association.  A copy of said Resolution is attached as Exhibit C and made a part hereof.

**D.  Defendants are Not Prejudiced by the Joinder of John Doe Plaintiffs into Plaintiff Kurdistan Victims Fund**

No Defendant is prejudiced as no Plaintiff is making substantive changes to the Second Amended Complaint.  In particular, no Plaintiff is seeking to add any new facts or claims. Discovery has not yet begun in this matter, and no schedule has been set and Plaintiff Kurdistan Victims Fund expects to participate in the litigation on the schedule set in the Court's forthcoming case management order.

**E.  John Doe Plaintiffs' Motion For Joinder Is Timely, Will Not Cause Delay, and Serves the Interests of Justice**

Joining John Doe Plaintiffs as incorporated as part of Plaintiff Kurdistan Victim Fund is timely, promotes judicial efficiency, and will not cause any delay. *Cf. id*. at *1 (granting joinder notwithstanding passage of nearly two years from the time defendant answered the complaint). As this court concluded in *Breen*, "permitting the prospective plaintiffs to join the case and resolve their disputes on the merits would serve the interests of justice." *Id*. at *11. The same is true here.

**F.  John Doe Plaintiffs as Part of Plaintiff Kurdistan Victims Fund Preserves John Doe Plaintiffs' Anonymity and Reasonable Safety**

Preventing unreasonable exposure to endangerment of life and the safety and security of John Doe Plaintiffs, indeed of all Plaintiffs, from potential security violations and retaliatory threats and violent acts of Defendants (or anyone) is paramount.

18

No requirement of law mandates that Kurdistan Victims Fund disclose its members. The Supreme Court held that "compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Buckley v. Valeo,* 424 U.S. 1, 64, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (citing, inter alia, *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)). The Supreme Court held the State of Alabama could not require disclosure of the local membership list of the National Association for the Advancement of Colored People (NAACP), because the organization "made an uncontroverted showing" – as Plaintiffs have done in the instant case – that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *NAACP,* 357 U.S. at 462, 78 S.Ct. 1163.

## CONCLUSION

Plaintiffs' Motion for Joinder should be granted as it would serve the interests of justice. Defendants' will suffer no prejudice and joinder of John Doe Plaintiffs into Plaintiff Kurdistan Victim Fund will cause no delay in this litigation and no burden to the Court.

For all the reasons stated above, Plaintiffs respectfully request this Court exercise its sound discretion and grant Plaintiffs' motion to incorporate John Doe Plaintiffs within association Plaintiff Kurdistan Victims Fund to provide the injured and suffering John Doe Plaintiffs the right to be heard by a competent, independent and impartial tribunal and ensure a just legal process.

Respectfully submitted,

James R. Tate
Counsel for Plaintiffs

**Counsel for Plaintiffs Kurdistan Victims Fund, et. al.**
**TATE BYWATER**
By:      /s/ James R. Tate
         Tate Bywater
         James R. Tate, *pro hac vice*
         (VA Bar Number 06241)
         2740 Chain Bridge Road
         Vienna, VA 22181
         Tel: 703-938-5100
         Email: jtate@tatebywater.com

         /s/ Benjamin Ader
         Tate Bywater
         Paul Mickelsen (D.C. Bar Number 500750)
         Benjamin Ader (D.C. Bar Number 1616990)
         2740 Chain Bridge Road
         Vienna, VA 22181
         Tel: 703-938-5100
         Email: pmickelsen@tatebywater.com
         Email: bader@tatebywater.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 27, 2025, I served a true and accurate copy of the foregoing via ECF.

/s/ James R. Tate