UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KURDISTAN VICTIMS FUND, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> KURDISTAN REGIONAL GOVERNMENT, *et al.*, <br><br> *Defendants*. | Civil Action No. 24-278 (RDM) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Kurdistan Victims Fund, Maki Revend, Shakhwan Abdulrahman (individually and on behalf of the estate of Jihan Taha Abdulrahman), and "John Does 1-5000," bring this action against dozens of individual defendants, many of whom are foreign officials of the Kurdistan Regional Government, a semi-autonomous political subdivision of Iraq. *See* Dkt. 61 (SAC). The defendants include, for example, the Kurdistan Regional Government's sitting Prime Minister, Masrour Barzani, as well as its current official Representative to the United States and former President. *Id.* at 31–34, 160 (SAC ¶¶ 39–40, 51). The operative complaint is Plaintiffs' third iteration; with Plaintiffs' consent, the Court dismissed their prior complaint without prejudice for failure to comply with Federal Rule of Civil Procedure 8. Dkt. 59 at 36.

For the reasons explained below, the Court will dismiss Plaintiffs' second amended complaint pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6).

1.

Plaintiffs filed this action over a year ago. Dkt. 1 (Compl.). Their original complaint alleged, over the course of 332 pages, a broad conspiracy and campaign of violence perpetrated

by the Kurdistan Regional Government and its officers. Plaintiffs sought "Nine Billion Dollars" in damages. *See id.* In the ensuing months, Plaintiffs attempted to effect service, but were not successful with respect to many Defendants. In the meantime, several individual Defendants who had been served filed a motion for an extension of time to respond to the complaint and to set a deadline for service of other Defendants. Dkt. 11. In response, Plaintiffs filed an amended complaint, spanning 416 pages and nearly 1,000 paragraphs, asserting—among many other things—a new claim against the attorney who filed the motion for an extension; that new claim alleged that the attorney's statements in the motion constituted "defamation of character." Dkt. 20 at 85, 95 (Am. Compl. ¶¶ 181, 193). The amended complaint is difficult to parse, but aside from this claim of "libel and defamation," *id.* at 411, Plaintiffs generally alleged that Defendants are associated with "a coldly-efficient transnational criminal organization" called "the Barzani Continuing Criminal Enterprise," which is rooted in the Kurdistan Regional Government. *Id.* at 7, 9 (Am. Compl. ¶¶ 1, 5). Despite these sweeping allegations and the extraordinary length of the amended complaint, it did not reasonably describe what, exactly, this "criminal organization" did.

The following paragraph, describing the acts giving rise to Plaintiffs' claims, is illustrative:

> Defendants as individuals engaged in and do engage in unlawful means, each of whom had conduct, knowledge, and intent, and each of whom is aware of the criminal enterprise's contumacious conduct and has some participation in the operation of the enterprise itself, and with orchestrated intent to enrich themselves and further the object of the criminal enterprise, and are directly responsible for various related heinous criminal activities, having the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, knowingly violating basic human principles and international norms including, but not limited to, atrocity crimes; indiscriminate violence; arson; claims for murder; attempted murder; genocide; abduction; hostage taking and kidnapping; torture and other cruel, inhuman, or degrading treatment or

> punishment; collaboration with terrorist organizations; prolonged arbitrary detention; extrajudicial killing; enforced disappearance; cruel, inhuman, or degrading treatment; crimes against humanity; theft; drug trafficking; counterfeiting; defrauding the United States Government and others; financial crimes; identify theft and access device fraud, mail fraud, wire fraud; laundering of monetary instruments; engaging in transactions with the proceeds of specified unlawful activity; acts involving perjury, false statements and declarations; comprehensive computer data theft and destruction; obstruction of justice; bribery and facilitation payments; deprivation of income and employment; willful concealment of tax data; tax fraud and tax perjury; immigration fraud and immigration perjury; and in violation of the Torture Victim Protection Act of 1991, the Alien Tort Statute of 1789, and other laws and statutes of the United States and the law of nations and international treaties, agreements, and conventions more fully set forth herein; and conspiracy to commit all above criminal acts; and did fraudulently and through material misrepresentations gain control for personal enrichment over money that was property of the Defendant Iraqi Kurdistan Regional Government. Defendants' acts were all carried out with *mens rea* and *actus reus*.

Dkt. 20 at 7–8 (Am. Compl. ¶ 3).

Then, nine months after initiating this action, Plaintiffs moved for an order authorizing alternative service, including a request to be relieved of the mandatory procedures for serving foreign nations under the Foreign Sovereign Immunities Act (the Kurdistan Regional Government was a Defendant named in the amended complaint), and a request for the Court to order one of the individual Defendants to accept service on behalf of her co-Defendants. Dkt. 50 at 1–2, 24–27. The Court held oral argument on Plaintiffs' motion, and after hearing from the parties, the Court concluded, with Plaintiffs' consent, that the amended complaint should be dismissed without prejudice pursuant to Rule 8. As the Court explained at the hearing, Plaintiffs' prior complaint was not only prolix and incoherent, but it failed to "connect[] each individual defendant in the case to some act[]." Dkt. 59 at 35–36. Without such allegations, the Court was unable to determine whether it had jurisdiction, let alone whether Plaintiffs had stated a claim consistent with Rule 12 or satisfied their obligations under Rule 11. *Id.* at 24.

The Court, however, provided Plaintiffs with another opportunity "to file an amended more streamlined and focused complaint." *Id.* at 36. The Court cautioned Plaintiffs to "be as careful as you can with respect to identifying specific acts [and] specific defendants that you are able to connect." *Id.* at 37. Plaintiffs requested (and received) over three months to revise their complaint. *Id.* at 36–37. The result of that effort is not encouraging.

**2.**

Plaintiffs filed the second amended complaint on January 9, 2024. Dkt. 61 (SAC). The second amended complaint is almost as long as its predecessor—spanning 396 pages and nearly 1,000 paragraphs—and it is equally opaque and unmoored. To make matters worse, Plaintiffs concurrently filed a motion to proceed pseudonymously for the "1-5000" John Doe Plaintiffs but failed to provide the Court, even in a sealed filing, with any idea who these individuals are and whether they have retained counsel in this matter to represent them in this litigation. The Court denied that motion, explaining that, given the strong constitutional interest in open court proceedings, a party must make an appropriate showing to proceed pseudonymously, and Plaintiffs had failed to provide the Court with sufficient information to determine whether any of these "1-5000" unnamed Plaintiffs met the governing standard. Min. Order (Jan. 9, 2025). The Court noted that "[i]f Plaintiffs, instead, seek to bring a class action, they must follow the required procedures for doing so" under Rule 23. *Id.* Notwithstanding these deficiencies, the Court permitted Plaintiffs to file a renewed motion, but only on the condition that it be "accompanied by a list of the names and addresses of plaintiffs who wish to proceed under a pseudonym, filed under seal." *Id.*

Two months passed. Plaintiffs still had not renewed their motion, nor was there any evidence that Plaintiffs were making efforts to effect service or otherwise to prosecute this case.

The Court's review of Plaintiffs' second amended complaint, moreover, revealed that Plaintiffs had failed to take to heart the Court's prior direction that their second amended complaint needed to include specific factual allegations tying specific defendants to specific wrongs committed against specific plaintiffs. The Court, accordingly, ordered Plaintiffs to show cause "why the Court should not dismiss the second amended complaint for failure to comply with Rule 8 and Rule 12(b)(6) or for failure to identify the 5000 John Doe plaintiffs," and the Court also allowed those Defendants who had been served to file a statement addressing these (or any other) problems with Plaintiff's second amended complaint. Min. Order (Feb. 27, 2025).

Several Defendants filed a response, observing that the second amended complaint's "diffuse, hopelessly generalized allegations of wrongdoing" violate Rules 8 and 12. Dkt. 68 at 5. Those Defendants further noted that Plaintiffs had not cured the complaint's anonymity-related deficiencies, nor had Plaintiffs served all Defendants, even though the case was already fourteen months old. *Id.* at 6. In response, Plaintiffs insisted, with no apparent sense of irony, that their 396-page, 921-paragraph second amended complaint represents a "clear and concise" version of their earlier pleadings, but they also stated that the "Second Amended Complaint remains inescapably complex and *sine qua non*." Dkt. 69 at 4, 11–12 (capitalization altered). Plaintiffs concurrently renewed their motion to effect service by publication, Dkt. 70, and instead of renewing their motion for "John Does 1-5000" to proceed pseudonymously, Plaintiffs filed a motion for "joinder" under Rule 20, Dkt. 71. According to that motion, John Doe Plaintiffs seek to "join" Kurdistan Victims Fund, an organizational Plaintiff. Dkt. 71 at 21. Plaintiffs reason that this procedure will allow them to "preserve[] John Doe Plaintiffs' anonymity." *Id.* at 22 (capitalization altered).

**3.**

Plaintiffs' second amended complaint fails to cure the deficiencies in their original and first amended complaints.[1] Plaintiffs have now filed three complaints over the course of sixteen months, none of which have complied with Rule 8. The most recent complaint is nearly devoid of allegations relating to any specific Defendant's specific conduct, and to the extent the complaint contains any such allegations, they are buried within hundreds of pages of irrelevant material and are, in any event, too conclusory to satisfy Rules 8 and 12(b)(6), *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The following example is representative:

> Defendants Masoud Barzani, Masrour Barzani, Waysi Barzani, and their agents and representatives, operating under their command, did knowingly and willfully, directly and indirectly, and with the intent to harass, intimidate, and place under surveillance with the intent to harass and intimidate one or more persons, conspire to use one or more interactive computer services and electronic communication systems of interstate commerce, and transmitted through interstate and foreign commerce in one or more communications containing one or more implicit and expressed threats to injure the person of another . . . .

Dkt. 61 at 236 (SAC ¶ 465).

The gravamen of Plaintiffs' complaint appears to be that a foreign government has engaged in a variety of unlawful and violent acts. This Court's jurisdiction does not extend to evaluating whether a foreign regime has—in general—complied with the dictates of human rights and decency, and, unfortunately, Plaintiffs have yet to set forth "a short and plain statement," Fed. R. Civ. P. 8(a), that focuses on the only question that is properly before this

---

[1] Plaintiffs' second amended complaint also reprises Plaintiffs' "defamation per se" claim against Defendant Joe R. Reeder for his litigation advocacy in this case—specifically, for statements Reeder made in a motion for an extension of time. Dkt. 61 at 101–03, 187–94, 375 (SAC ¶¶ 276–78, 534–49, 903). Because there is an "absolute" privilege for statements made in the course of judicial proceedings, *Messina v. Krakower*, 439 F.3d 755, 760 (D.C. Cir. 2006), the Court will dismiss this claim with prejudice.

6

Court: that is, whether any specific Defendant (who is subject to the jurisdiction of this Court and who is not immune from suit) committed any specific act in violation of U.S. law that caused a specific injury to an identified Plaintiff.  One of the purposes of Rule 8 is to ensure that defendants have "fair notice of the claims raised and their basis." *Jiggetts v. District of Columbia*, 319 F.R.D. 408, 414 (D.D.C. 2017).  The second amended complaint fails this critical test.

Perhaps the closest the second amended complaint comes are the allegations pertaining to the individual Plaintiffs.  At one point, Plaintiffs allege, for example, that "agents" of Defendants Masrour Barzani and Waysi Barzani tortured and executed Jihan Taha Abdulrahman (whose estate is allegedly represented by her brother, Plaintiff Shakhwan Abdulrahman) by "orchestrat[ing]" a car accident in Kurdistan.  *See*, *e.g.*, Dkt. 61 at 156–57 (SAC ¶¶ 453–56). Plaintiffs further allege that Plaintiff Shakhwan Abdulrahman attempted to protest his sister's alleged murder outside "the U.S. Chamber of Commerce" headquarters in the District of Columbia, but Defendant Masrour Barzani's "agents" "violently and aggressively attacked" Abdulrahman, in violation of "his First Amendment right."  *Id.* at 204–208 (SAC ¶¶ 567, 571, 575).  And, finally, Plaintiffs allege that Plaintiff Maki Revend, a resident of Germany and a "critic" of the Barzani government, "has on at least five distinct occasions . . . been the target of assassination attempts and aggravated assault with a deadly weapon by the Defendants' agents and representatives."  *Id.* at 179–180 (SAC ¶¶ 518–24).

The Court expresses no opinion as to whether these allegations would suffice to state a plausible claim for relief, were Plaintiffs to extract them from the morass of extensive, extraneous material included in the second amended complaint and were Plaintiffs to offer specifics about who allegedly did what.  Nor does the Court express a view on whether the

various immunities applicable to foreign officials and to acts of state would have any purchase here.  But the Court sees at least *some* potential that, if extracted from the extraneous material and properly explicated, these alleged events *might*—at least arguably—support a claim.  As currently pled, however, the Court cannot assess whether the named Plaintiffs might be able to craft a plausible claim involving these alleged events, nor should Defendants be put to the task of attempting to distill a plausible claim from the sprawling mass of allegations, when Plaintiffs have failed to do that work themselves.

Not only does the operative complaint fail to comply with Rules 8 and 12(b)(6), but Plaintiffs proposal as to the "1-5000" John Doe Plaintiffs is untenable.  As an initial matter, Rule 20 is not a means to join multiple plaintiffs who are already joined as parties in the same lawsuit.  *See* Fed. R. Civ. P. 20(a) (permitting plaintiffs to "join *in one action*") (emphasis added).  More fundamentally, however, even if 1-5000 John Does were permitted to "join" Kurdistan Victims Fund, the Court concludes that Plaintiffs have not plausibly alleged that Kurdistan Victims Fund has standing to bring thousands of claims for damages on behalf of its putative members.  *See Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015) (plaintiffs must plead facts that, taken as true, "ma[ke] out a plausible claim to Article III standing").

As an organization, Kurdistan Victims Fund "can assert standing on its own behalf, on behalf of its members[,] or both."  *Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011).  Here, Kurdistan Victims Fund relies on the latter theory, known as "associational standing."  Dkt. 61 at 80–81 (SAC ¶¶ 212–15).  Under this theory, Kurdistan Victims Fund has standing "only if (1) at least one of its members would have standing to sue in his own right; (2) the interest it seeks to protect is germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the member to participate in the lawsuit."  *Ctr. for*

*Biological Diversity v. EPA*, 861 F.3d 174, 182 (D.C. Cir. 2017) (internal quotation marks and citation omitted).  Even assuming these first two requirements are met, Plaintiffs have not pleaded any facts indicating that their damages claims can be adjudicated absent the participation of individual members.  Plaintiffs seek $9 billion in compensatory and punitive damages for personal injuries, but such claims turn on individualized assessments of harm.  Because the relief Plaintiffs seek "can[not] be awarded without 'individualized proof,'" Kurdistan Victims Fund lacks associational standing.  *Air Transp. Ass'n of Am. v. Reno*, 80 F.3d 477, 484 (D.C. Cir. 1996); *see also Travelers United, Inc. v. Hyatt Hotels Corp.*, 2025 WL 27162, at *14 (D.D.C. Jan. 3, 2025) ("The need for this kind of 'detailed and individualized proof' from individual members of Travelers United bars the recognition of associational standing over the actual damages claims in this case.").[2]

* * *

In light of Plaintiffs' repeated failures to file a complaint that complies with the Federal Rules of Civil Procedure, and their repeated failure to comply with the Court's directions, the Court concludes that the second complaint should be dismissed.  *See Chennareddy v. Dodaro*, 697 F. App'x 704, 706 (D.C. Cir. 2017) (affirming Rule 8 dismissal with prejudice where complaint remained "disjointed, voluminous, and unspecific" following multiple amendments).  Notwithstanding the complaint's broader deficiencies, however, the Court will provide the three individual named Plaintiffs one final opportunity to replead their claims.  This third amended

---

[2] In addition to Plaintiffs' request for "Nine Billion Dollars," they also ask the Court to "[e]n[t]er a declaratory judgement holding the Defendants' conduct was in violation of the law of nations." Dkt. 61 at 380 (Prayer for Relief).  But Plaintiffs do not plausibly allege that such a declaration would redress any Kurdistan Victims Fund member's injuries, and so Kurdistan Victims Fund also lacks standing to pursue this form of relief.  *See Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 182 (D.C. Cir. 2017).

complaint (and fourth overall complaint) must not exceed 30 pages in length, and it must include concrete factual allegations that tie specific Defendants to specific violations of U.S. law that has caused specific, cognizable harm to those Plaintiffs. Plaintiffs are advised that they may not name any individual or entity as a Defendant absent a good faith basis, *see* Fed. R. Civ. P. 11(b), to believe that existing evidence or discovery will establish that the specific, named Defendant violated U.S. law, resulting in a concrete injury to one of the remaining, named Plaintiffs. Plaintiffs are cautioned that failure to comply with this directive may result in dismissal with prejudice and other appropriate action by the Court. The Court has provided similar directions to Plaintiffs' counsel in the past, without evident effect. Lest there be any doubt, the Court expects counsel to heed this direction for purposes of this fourth and final bite at the apple.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' second amended complaint, Dkt. 61, is **DISMISSED**, and Defendant Joe Reeder's motion to dismiss, Dkt. 65, is **GRANTED** in part and **DENIED** in part as moot. Plaintiffs' defamation claim against Reeder is **DISMISSED** with prejudice. The three individual named Plaintiffs may file a third amended complaint (subject to the directions set forth above) not to exceed 30 pages on or before June 6, 2025.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: May 9, 2025