# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MAKI REVEND, | |
| SHAKHWAN ABDULRAHMAN, | |
| SHAKHWAN ABDULRAHMAN, AS | |
| REPRESENTATIVE OF JIHAN TAHA | Case No. 1:24-cv-00278 |
| ABDULRAHMAN, DECEASED | |
| | <u>CIVIL ACTION</u> |
| Plaintiffs | |
| | |
| v. | THIRD AMENDED COMPLAINT |
| | |
| | JURY TRIAL DEMANDED |
| MASROUR BARZANI, MASOUD | |
| BARZANI, WAYSI BARZANI, MUKSI | |
| BARZANI, MULLA "BABO" MUSTAFA | |
| BARZANI, JEYRA MOHAMAD KHALED, | |
| KATJY VRECAR BARZANI, AREEN | |
| MASROUR BARZANI, JONATHON R. | |
| MOORE, JOR R. REEDER, VALERIE | |
| CUPP, JULIE MAI SANFORD, LAURA | |
| GEHO HARRIS, RUBAR SANDI, TREEFA | |
| AZIZ, ARFAN SALEH OMAR | |
| SHERWANI, OMAR S. BARZANI, | |
| ENTIFADH KAMAL QANBAR, HAMAZ | |
| SALIM, HIKMET BAMERNI, HAYMAN | |
| QUASSI, AND DASKO SHIRWANI | |
| | |
| Defendants | |

## NATURE OF ACTION AND PRELIMINARY STATEMENT

1.     Three Plaintiffs institute this civil action for compensatory and punitive damages for injuries sustained from a pattern of unlawful activity through distinct but interconnected torts integral to a criminal conspiracy, a single, unified offense encompassing all acts taken in furtherance of the conspiratorial agreement, regardless of their individual nature or timing. The essence of a conspiracy is the mutual understanding or agreement to achieve an unlawful objective, which can be inferred from the defendants' conduct, overt acts, or circumstantial evidence, as established in key cases (*See United States v. Felix*, 503 U.S. 378, 390 (1992)).

2.     Plaintiffs bring this action against 22 individuals, including several defendants who are/were officials of Iraq's inferior Kurdistan Regional Government (KRG), arising from tortious acts, part of a single conspiratorial scheme, in violation of international and U.S. law they committed, often cloaked in the guise of fraudulent authority. Defendants are sued in their individual capacities, not as officials of any government. None of Defendants' tortious acts were authorized by law or legislation of any sovereign; hence no sovereign immunity applies.

3.     Defendants acted as members of the Barzani Criminal Enterprise (BCE), a group united by a common unlawful purpose and acting in concert through ongoing collaboration and overt acts (*Callanan v. United States*, 364 U.S. 587, 593–94 (1961); *United States v. Childress*, 58 F.3d 693, 707–08 (D.C. Cir. 1995)), with agents, representatives, and co-conspirators acting at command of Defendants Masrour Barzani, Masoud Barzani, and Waysi Barzani (*Pinkerton v. United States*, 328 U.S. 640, 647 (1946)), conspiring to engage in unlawful conduct.

4.     To aid and abet the conspiracy, Defendants provided "knowing substantial assistance" to the person or persons who committed the wrongful acts. *Halberstam v. Welch*, 705 F.2d 472 (D.C.Cir.1983). Even the smallest contribution by any defendant, such as facilitating a single fraudulent act or coercive action, constitutes participation in and binds these acts into a single

scheme, with each tort as an overt act (*Felix* at 390), rendering all Defendants jointly liable for the resulting harms under the Pinkerton doctrine (*Pinkerton* at 647). Each individual act forms an integral part of BCE's unified scheme. Supreme Court principle affirms the acts of one conspirator are attributable to all when done in furtherance of the conspiracy, (*Pinkerton*, at 647) (*Halberstam at* 477), each defendant, having agreed to or participated in the conspiracy, bears liability for these egregious violations without the necessity of alleging specific criminal acts.

5.    Plaintiffs need not trace illicit BCE proceeds to a specific source (*United States v. Bikundi*, 924 F.3d 610, 619 (D.C. Cir. 2019)).

6.    Defendants, acting in a culture of impunity and involving coordinated illegal activities across national borders with multiple individuals designed to perpetuate crimes, inflicted severe harm on Plaintiffs through loss of family, deprivation of civil rights, emotional trauma, physical and profound psychological distress, and systemic disruption. These conspiracies encompassing crimes including atrocity crimes, exploit global networks to fuel torts and policy manipulation, support sanctioned entities, evade law enforcement, leaving victims with substantial harm.

7.    The central drivers of the BCE, with its District of Columbia nexus, are power and money, propelling tortious acts against Plaintiffs and others. BCE executed these inherently base, vile, or depraved acts (*Matter of Danesh*, 19 I&N Dec. 669, 670 (BIA 1988)), with the acquisition, concealing, and laundering of illicit proceeds providing the financial means and operational capabilities to injure Plaintiffs (*Pinkerton* at 647; *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)). Pursuant to the court's limitations, the full scope of each defendant's acts and role is not exhaustively enumerated herein.

8.    Under D.C. Code § 22–1805a, the agreement for a conspiracy, including a transnational criminal conspiracy, need not be written. The agreement can be express or implied, meaning it may be inferred from the actions, conduct, or circumstances of the conspirators, such as

coordinated efforts to create shell companies or launder funds, as in the case of Defendant attorneys Jonathon Moore and Joe Reeder. This court, under 18 U.S.C. § 371, consistently holds that a conspiracy can be established through circumstantial evidence, like shared financial transactions or deceptive communications, without requiring a formal written contract.

9.      In the District of Columbia, a civil conspiracy is established when two or more parties agree to engage in unlawful conduct or lawful conduct by unlawful means, with the intent to cause harm, and commit an overt act that proximately causes injury to the plaintiff. The BCE conspiratorial unified scheme meets these criteria, involves a deliberate and reprehensible scheme by multiple Defendants, and others, across jurisdictions who deliberately and knowingly conspired to perpetrate wrongful overt acts and execute tangible steps in furtherance of their illicit enterprise, including crimes against humanity and acts of moral turpitude, violating hundreds of federal statutes and international laws, treaties, conventions, and agreements. This enterprise executed these inherently base, vile, or depraved acts (*Matter of Danesh*, 19 I&N Dec. 669, 670 (BIA 1988); accord *Jordan v. De George*, 341 U.S. 223, 227), through significant steps to advance the unlawful agreement, inflicting harm to Plaintiffs and others, and demanding urgent judicial scrutiny and redress in this court. Defendants' gross misrepresentations to government entities and use of laundered funds to influence U.S. policy, facilitated by Defendant Treefa Aziz, align with defrauding the District or its agencies, satisfying the statute's criteria.

10.      Transnational conspiracies fall under federal jurisdiction, such as 18 U.S.C. § 371, which covers conspiracies to commit offenses against or defraud the U.S. This federal statute similarly requires an agreement, intent, and an overt act, and is frequently used in D.C. for cases involving international money laundering or policy manipulation, as seen in this court in the forfeiture actions against North Korean front companies. *See United States v. $1,071,251.44 of Funds Associated with Mingzheng International Trading, Ltd., United States v. $6,999,925 of Funds*

*Associated with Velmur Management Pte Ltd.,* and *United States v. $4,083,935 of Funds Associated with Dandong Chengtai Trading Co. Ltd.*

11.    In the context of common law conspiracy, the Supreme Court has described a criminal enterprise as a group of individuals acting together with a shared criminal purpose, engaging in concerted illegal activities over time. The Court emphasized that a conspiracy involves an agreement to commit unlawful acts, a mutual understanding among participants, and overt acts to further the conspiracy's objectives. The Court noted such groups exhibit continuity and coordination, distinguishing them from one-off criminal acts. *See Callanan* at 94 (describing conspiracy as a "partnership in crime with ongoing collaboration"). The BCE is characterized by ongoing collaboration and shared intent, not isolated criminal acts. (*See Childress* at 707–08).

12.    To fund torts and eliminate opposition, Defendants agreed, in part, to: (a) Execute torture, extrajudicial murders and attempted murders in Iraq and Germany, harming Plaintiffs' families and survivors; (b) Launder funds through U.S. banks to conceal illicit proceeds and fund crimes; (c) Produce and distribute counterfeit U.S. pharmaceuticals, cigarettes, and whiskey to fund crimes; (d) Violate U.S. sanctions with Iranian entities to divert resources; (e) Defraud the U.S. government through sham corporations and fraudulent contracts to misappropriate funds; (f) Sell U.S. national defense intelligence and provide U.S.-supplied materiel to America's adversaries to finance the conspiracy; (g) Commit immigration fraud to advance BCE conspiracy; (h) Commit thousands of human rights violations (including assassination attempts against Plaintiff Maki Revend and his wife and the extrajudicial murder of Plaintiff Abdulrahman's sister Jihan Taha Abdulrahman); and (i) Breach of international law (UNCAC, ICCPR, U.S.-Iraq Agreements).

13.    Plaintiffs seek compensatory damages, punitive damages, costs, and disgorgement of all ill-gotten gains for death, financial losses, mental anguish, and human and civil rights harms.

## JURISDICTION AND VENUE

14.     The federal question jurisdiction is emphasized due to the U.S. security implications. As BCE's acts involve international law violations (e.g., torture and human rights abuses), the Alien Tort Statute (28 U.S.C. § 1350) is invoked. Diversity jurisdiction (28 U.S.C. § 1332) also applies as the parties are from different states/countries and the amount in controversy exceeds $75,000.

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), as the Defendants' actions posed a threat to the national security and economic security of the U.S., implicating federal interests; 18 U.S.C. § 1956 (money laundering); 18 U.S.C. § 2320 (trademark counterfeiting); 50 U.S.C. § 1705 (sanctions); 26 U.S.C. § 7201 (tax evasion); 18 U.S.C. § 1546 (immigration fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 793 (espionage); and 22 U.S.C. § 2778 (arms exports). Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because the acts and omissions took place in the District of Columbia, and Defendants' funds were held in a U.S. bank. Conspirators did not obtain required licenses from the Office of Foreign Asset Controls ("OFAC") in Washington, D.C., for conducting transactions with said funds, and orchestrated money laundering, tax evasion, counterfeiting, fraudulent contracts, and money transfers through D.C. banks, federal agencies (OFAC, Defense, Treasury, PTO, FDA, etc.), and U.S. security interests, as established in *United States v. Abduljabbar*, Case No. 1:21-cr-00068 (D.D.C. 2022) (Iraqi fraud), *United States v. Almasi*, Case No. 1:17-cr-00034 (D.D.C. 2017) (D.C. banks), and *United States v. Manafort* (D.C. 2018) (sham corporations), actions targeting U.S. interests, U.S. travel, tortious acts in the U.S., their tortious acts (engaging in corruption, misappropriating U.S.-funded resources, sabotaging U.S.-backed projects) having substantial effects in the U.S., satisfying the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984). Defendants Moore and Reeder are D.C. bar members.

16.     Venue is proper under 28 U.S.C. § 1391, as a substantial part of the events, including financial transactions, OFAC violations, IRS filings and evasion, counterfeiting, fraud of U.S. Government contracts, materiel transfers affecting U.S. security, and attorney misconduct, occurred in this District, per *Almasi, Manafort,* and *United States v. Hanna*, Case No. 2:07-cr-20429 (E.D. Mich. 2008) (Iraq sanctions). The conspiracy's effects were orchestrated through D.C.-based systems. *Wye Oak Technology, Inc. v. Republic of Iraq* (D.D.C. 2019).

## **PARTIES**

17.     **Plaintiff Maki Revend** is a survivor of multiple attempted assassinations and computer crimes orchestrated in Germany by agents of and directed by Defendant Masrour Barzani, suffering physical injuries, trauma, and emotional distress from Defendants' actions.

18.     **Plaintiff Shakhwan Abdulrahman**, individually, is a resident of the U.S., and was the victim of a physical attack and rights deprivation by defendants Hamza Salim, Hikmet Bamerni, Hayman Quassi, and Dasko Shirwani, acting under direct command of Masrour Barzani, while exercising constitutional free speech rights on a Washington, D.C. public sidewalk.

19.     **Plaintiff Shakhwan Abdulrahman on behalf of the estate of Jihan Taha Abdulrahman,** is the legal and personal representative of his deceased sister, Jihan Taha Abdulrahman, kidnapped, tortured, and brutally murdered by agents of and commanded by Defendants Masrour Barzani, Masoud Barzani, Waysi Barzani, and Mulla "Babo" Barzani. Plaintiff Shakhwan Abdulrahman has standing pursuant to the Crime Victims Protection Act: "In the case of a crime victim who is … deceased, … the representatives of the crime victim's estate, family members … may assume the crime victim's rights…" 18 U.S.C. § 3771(6)(e).

**All Defendants are co-conspirators in the Barzani Criminal Enterprise, knowingly acting as part of and in furtherance of a transnational conspiracy:**

20.    **Defendant Masrour Barzani** is Prime Minister of Iraq's KRG, U.S. green card holder, murderer of dissidents, code name "BBKing", and head of BCE directing a transnational network of serial violent and financial crimes to preserve his political power and amass illicit wealth. Barzani's frequent U.S. travel, enabled by a fraudulently obtained green card granting him freedom of movement within the U.S., facilitates his coordination of money laundering, human and civil rights violations, and speech suppression, including a documented pattern and practice of coercion targeting dissenters, like Plaintiffs Revend and Abdulrahman, and murder like Jihan Taha Abdulrahman, and concealing true beneficial ownership of sham U.S. property holdings (including one Virginia property hosting Masrour Barzani's unlawful foreign intelligence operation). His leadership is marked by accusations of orchestrating enforced disappearances, assassination attempts, counterfeiting, oil smuggling, trading with adversaries of the U.S., and fraudulent U.S. government contracts, executed through co-conspirators acting at his command.

21.    **Defendant Masoud Barzani** is the former President of the KRG, patriarch of the Barzani family, murderer of dissidents, and key orchestrator of BCE, directing a transnational network of violent and financial crimes, money laundering, human rights violations, and suppression of dissent, to maintain political control and amass wealth, funded by a criminal operation involving counterfeiting, drug trafficking, oil smuggling, and fraudulent U.S. contracts.

22.    **Defendant Waysi Barzani**, brother of Masrour Barzani, directs KRG security apparatus. As leader of Peshmerga and KRG intelligence services special units, Waysi acts as an enforcer for Masrour Barzani, within BCE. One of the most ruthless Barzani siblings, he orchestrates violent acts, including the murder of a U.S. intelligence officer, as well as facilitating financial crimes such as counterfeiting and money laundering through networks tied to the enterprise's illicit operations, including oil smuggling and fraudulent U.S. contracts. Operating under Masrour's

mentorship, Waysi's role enhances the family's control over the region, including enforced disappearances and targeting dissenters like Revend and Shakhwan Abdulrahman.

23.    **Defendant Muksi Barzani** is brother to Masrour Barzani and security enforcer Waysi Barzani. Muksi is involved in BCE. Muksi owns a British Virgin Islands holding company that controls, among other properties, Sylvania Fair Lakes, LLC, a Washington, D.C.-based entity, which in turn owns real property in Mebane, North Carolina, indicating his participation in the family's transnational financial schemes orchestrated primarily in Washington, D.C.

24.    **Defendant Mulla "Babo" Mustafa Barzani**, operating under command and direction of his brother, Masrour Barzani, as the official head of the KRG Barzan region. Babo launders illicit proceeds through sham U.S. corporations controlling real estate holdings and commercial investments, such as Washington, D.C., and Virginia properties, to conceal true beneficial ownership, thereby advancing the enterprise's criminal money operation involving tax fraud, counterfeiting, and smuggling. Babo's financial maneuvering strengthens the Barzani family's transnational illicit network, marking him as a discreet but essential participant in the BCE.

25.    **Defendant Jeyra Mohamad Khaled** is a co-conspirator acting under the direction of Masrour Barzani, facilitating the BCE's illicit activities, through financial or administrative support, contributing to a transnational scheme of violent and financial crimes aimed at preserving Barzani family power and wealth. Her role intersects with the enterprise's criminal money operation, concealing true beneficial ownership of sham U.S. property holdings.

26.    **Defendant Katja Vrecar Barzani** is a co-conspirator acting under the direction of Masrour Barzani, facilitating BCE's illicit activities, through financial or administrative support, contributing to a transnational scheme of violent and financial crimes to preserve Barzani power and wealth. Her involvement is tied to the enterprise's criminal money operation, concealing true beneficial ownership of sham U.S. property holdings.

27.    **Defendant Areen Masrour Barzani**, son of Masrour Barzani. Under his father's direction, Areen leverages his familial ties and privileged position to facilitate BCE's illicit activities, through managing financial transactions or coordinating operations that advance BCE's transnational scheme of violent and financial crimes. He supports BCE's criminal money operation, including money laundering concealing true beneficial ownership of sham U.S. property holdings to advance the conspiracy's operation, counterfeiting, and fraudulent government contracts. After the firebombing of Plaintiff Revend's residence, Defendant Areen Barzani, while threatening Kuwaiti Rawan Bin Hussein, boasted of Defendants' activities to incendiary bomb Revend in an effort to intimidate, silence, and assassinate him.

28**.**    **Defendant Jonathon R. Moore,** a Washington, D.C. attorney, violated D.C. Rules of Professional Conduct and masterminded money laundering of illicit proceeds owned by the Barzani defendants from criminal acts including proceeds from unlawful sale of U.S. intelligence and materiel to adversaries of the U.S., by owning and managing several Ingomar enterprises and the Jonathon Moore Law Offices, (separate personalities of Defendant Moore and Ingomar entities and the law office do not exist), created layers covering illicit proceeds by misusing and depositing and co-mingling funds into and through lawyer's IOLTA account, and creating and directing foreign trusts and dozens of sham corporations, including multiple Golden Eagle entities, to mask Barzani ownership and dodge U.S. taxes, managing and directing banking transactions, wire transfers, financial records, multi-state real estate acquisitions, and false filings with U.S. agencies to secure Golden Eagle entities' U.S. Government-funded contracts, while colluding with Defendant Reeder and BCE leaders, with whom he met regularly internationally and in Washington, D.C. and Virginia to fuel the conspiracy's financial crimes. Defendant Moore and/or Ingomar Financial Services ("IFS") is registered agent and/or officer of no less than 83

legal entities in New York, Delaware, Washington, D.C., Indiana, Michigan, North Carolina, and Florida. Moore is an officer of at least 49 entities – 36 in Delaware, 6 in the District of Columbia, 3 in Florida, and one each in the remaining states. IFS is a registered agent/officer of 27 Delaware and 7 D.C. entities.

29.     **Defendant Joe Reeder,** a Washington, D.C. attorney, violated D.C. Rules of Professional Conduct and coordinated with Defendant Moore to devise sophisticated methods to conceal Masrour Barzani's true ownership of foreign trusts and sham U.S. corporations and real estate investments across multiple states and to evade U.S. taxes, advancing the conspiracy's scheme to hide illicit Barzani funds under a false veneer of legitimacy and harm Plaintiffs.

30.     **Defendant Valerie Cupp** is an individual residing in the U.S., as Defendant Jonathon Moore's key assistant, facilitated and executed money laundering by overseeing extensive banking activities, wire transfers, financial record-keeping, multi-state real estate acquisitions, establishing and managing sham U.S. corporations to mask Masrour, Mustafa, Katja, and Muksi Barzani's beneficial ownership and submitting fraudulent documents to the Small Business Administration and other agencies, falsely posing as a woman-owned business owner, fraudulently securing U.S. government contracts, transacting money movement and maintaining bank and title records, meeting in Switzerland with Iranians associated with Iran's sanctioned government, to brazenly fuel the conspiracy's financial crimes by securing federal contracts for Golden Eagle entities under a fraudulent guise, to advance the conspiracy's financial crimes. Valerie Cupp met in Europe with Ehsan Sakhaei, son-in-law of the Minister of Intelligence under Iran President Ayatollah Rouhani, associated with former assistants of Ayatollah Khomeini for the purpose of contracting business outside of OFAC detection and other sanctions imposed on Iran due to their threats to the U.S. and terrorist-activity, and which includes prohibited sanctions on petroleum, petrochemicals, gas, and other networks channeling revenue to Iran's military.

31.    **Defendant Julie Mai Sanford** is an individual residing in the U.S., an assistant to Defendant Jonathon Moore, and under his direction, facilitated money laundering by overseeing extensive banking activities, wire transfers, financial record-keeping, multi-state real estate acquisitions, establishing and managing sham U.S. corporations to conceal Barzani beneficial ownership and submitting deceptive documents to government agencies, advancing the conspiracy's financial crimes under the guise of fraudulent authority. Defendant Sanford is a registered agent or officer, including CEO, of no less than 22 active or inactive entities – 7 in the District of Columbia, 11 in Virginia, 2 in North Carolina, and 1 each in Florida and Texas. Her home address or use of the Moore law firm address connects her to each entity.

32.    **Defendant Laura Geho Harris** is an individual residing in the U.S., an assistant to Defendant Jonathon Moore, and under his direction, facilitated money laundering and bank and title transactions by establishing and managing sham U.S. corporations to conceal beneficial ownership and submitting deceptive documents to government agencies, advancing the conspiracy's financial crimes under the guise of fraudulent authority.

33.    **Defendant Rubar Sandi,** a U.S. resident, plays a pivotal role in facilitating the illicit activities of Masrour Barzani. Operating under Masrour's direction, Sandi knowingly facilitated immigration fraud by submitting false representations for Masrour to U.S. immigration officials thereby securing a fraudulent U.S. green card, which enabled Masrour's frequent travel to and within the U.S. to direct the BCE's transnational scheme of violent acts and financial crimes, part of a documented pattern of coercion and human rights violations, and has orchestrated sham corporation real estate and banking transactions on behalf of Masrour Barzani. His actions integrate with efforts of co-conspirators like Jonathon Moore and Joe Reeder, positioning him as a critical enabler of the BCE's sophisticated network of criminal operations centered in the U.S.

34.     **Defendant Treefa Aziz**, a U.S. citizen, is a member of the Virginia Bar. As of August 1,

2023, she is the designated and employed DC representative of the KRG and Masoud Barzani and

Masrour Barzani, and other KRG officials, to further the BCE conspiracy by actively advocating

Barzani interests including material disinformation and deception before agencies and officials of

the United States Government, influencing U.S. national security policy and financial and military

assistance to the KRG. (*See United States v. Gaudin*, 515 U.S. 506 (1995).

35.     **Defendant Omar S. Barzani** supports illicit activities orchestrated by Masrour Barzani.

He directs the U.S.-chartered Barzani Charitable Fund, and engages in false representations to U.S.

tax and regulatory agencies, with complicity in the BCE transnational criminal scheme.

36.     **Defendant Entifadh Kamal Qanbar**, an Iraqi-born U.S. citizen. Under Masrour Barzani's

direction facilitating BCE's illicit activities, Qanbar engages in false representations to U.S. tax

and regulatory agencies, with complicity in the transnational criminal scheme. The IRS granted

501(c)(3) tax exempt status to the Kurdish Protection Action Committee based on false and not

mistakenly misleading documents prepared and submitted by Defendant Qanbar. Defendant

Qanbar engaged in perjury, false swearing, and willful concealment of material facts, which

submissions enable KPAC to advance BCE objectives and injure Plaintiffs.

37.     **Defendant Hamza Salim**, an agent under command of Masrour Barzani, violated Plaintiff

Abdulrahman's civil rights by physically interfering with his free speech on a public sidewalk in

Washington, D.C., as part of BCE's activities. On February 29, 2024, Salim assaulted

Abdulrahman during a lawful protest against Barzani's regime, causing physical injuries and

emotional distress, in a deliberate attempt to suppress and silence his First Amendment rights, and

to advance the conspiracy's speech suppression. This act aligns with BCE's documented pattern

of coercion, including enforced disappearances and violent intimidation of dissenters, and was

funded by BCE's criminal money operation, as facilitated by Defendants Moore, Reeder, and their

associates. Salim's interference underscores his role as a key enforcer in the BCE's transnational scheme to silence opposition and maintain illicit power.

38.    **Defendants Hikmet Bamerni, Hayman Quassi,** and **Defendant Hayman Quassi**, as agents under command of Masrour Barzani, physically interfered with Abdulrahman's freedom of speech on a D.C. public sidewalk during the same lawful protest, violating his First Amendment rights and causing physical and emotional harm, in a manner similar to Hamza Salim, to advance the BCE conspiracy's speech suppression.

39.    **Defendant Arfan Salih Omer Sherwani,** an unregistered foreign agent (*See* FARA, 22 U.S.C. §§ 611–621) under command of/for Masrour Barzani and Waysi Barzani for suspect spy technology on behalf of U.S. front corporations ASO, LLC and ASO1, LLC, and who physically interfered with Abdulrahman's freedom of speech on a D.C. public sidewalk during the same lawful protest, violating his First Amendment rights and causing physical and emotional harm, in a manner similar to Hamza Salim, to advance the BCE conspiracy's speech suppression.

## ALLEGATIONS OF FACT

40.    The BCE's unified scheme directly harmed Plaintiffs Maki Revend, Shakhwan Abdulrahman, and Shakhwan Abdulrahman's extrajudicially murdered sister Jihan Taha Abdulrahman through specific overt acts in furtherance of the conspiracy,

41.    All Defendants' acts enumerated herein are interlinked as integral components of the conspiracy's unified scheme, constituting a violent pattern and practice of coercion and intimidation, including enforced disappearances, targeting those who voice political opposition or dissent to Defendant Masrour Barzani's regime, as directed by Masrour Barzani and executed by his agents, representatives, and co-conspirators to advance its unlawful objectives through illicit proceeds and coordinated structure (*Pinkerton at* 647). BCE's atrocity crimes, terrorist acts, torture, murder, financial fraud, and human and civil rights violations and speech suppression

directly harmed Plaintiffs by causing loss of life of a family member, physical injuries, emotional distress, and economic losses, including through the physical accosting and assault of Plaintiff Abdulrahman to silence protected speech.

42.    Even the smallest contribution to BCE's support for terrorism, such as facilitating funding, constitutes participation in the conspiracy to harm Plaintiffs, and renders defendants liable under the ATA and Pinkerton doctrine (*Pinkerton* at *647*). *See Estate of Klieman v. Palestinian Auth*., 467 F. Supp. 2d 107 (D.D.C. 2006).

43.    Money laundering, masterminded by Defendants including Moore and Reeder, fuels the enterprise's unified scheme and vicious cycle of violence, fraud, and civil rights and speech suppression by laundering, concealing, and recycling illicit proceeds including fraud against the U.S. government through fictitious corporations hiding beneficial owners to disguise unlawful funding and funnel criminal proceeds, fraudulent contracts, and national security violations by selling U.S. defense intelligence and providing U.S.-supplied materiel to adversaries of the U.S., with the specific intent to enable and effect harm to Plaintiffs and other victims.

44.    The following facts detail each Plaintiff's victimization and Defendants' unified scheme.

**Plaintiff Maki Revend: Attempted assassination and cyber crimes**

45.    As part of a pattern and practice to use extrajudicial murder to silence dissidents, Defendant Masrour Barzani has directed and commanded attempted assassination of Plaintiff Revend and his wife. Each of several assassination attempts are documented by German police.

46.    Plaintiff Revend and wife have on at least five distinct occasions been the target of assassination attempts and aggravated assault with a deadly weapon by Defendant Masrour Barzani's agents and representatives, in furtherance of a criminal enterprise, including:

   a.    In September, 2017, German police advised Plaintiff Revend his life was in danger from the BCE, and that unsuccessful attempts on his life had been made.

b.      On May 14, 2018, Plaintiff Revend was physically attacked by eight people, confirmed by police to be members of KDP. Revend was able to protect himself from death by deploying eye-burning gas during the attack. A colleague was severely beaten and injured.

c.      On July 15, 2020, a third assassination attempt was made, as two masked agents of Defendants Masrour Barzani and Waysi Barzani dressed in the false counterfeit uniform of postal workers attempted an attack at his residence.

d.      On October 2, 2022, two male agents of Defendants Masrour Barzani and Waysi Barzani came to the residence of Plaintiff Revend in the middle of the night and deployed an incendiary bomb to assassinate Plaintiff Revend. Plaintiff Revend and his wife were sleeping inside the residence and their lives were gravely imperiled by smoke inhalation and fire.

e.      On September 21, 2023, two persons, identified by police as Russian assassination agents hired by Defendants Masrour Barzani and Waysi Barzani, attempted an assassination at the residence of Plaintiff Revend and his wife but were apprehended in the act by police officers.

47.      In knowing and willful violation of the Computer Fraud and Abuse Act, codified as 18 U.S.C. § 1030, by using U.S.-based and other technologies, with malice aforethought Defendants gained illicit and unauthorized access to Plaintiff Revend's computers with intent to overwrite files and erase data, to damage or defraud, to deploy destructive malware, and take other disruptive actions, and created hundreds of counterfeit video accounts on Facebook in the name of and impersonating Plaintiff Revend, specifically intended to threaten and intimidate Plaintiff Revend and his family by inflicting severe physical and mental pain and suffering.

**Plaintiff Shakhwan Abdulrahman on behalf of the estate of Jihan Taha Abdulrahman: Extrajudicial Murder**

48.      On or about October 26, 2023, quiet school teacher Jihan Taha Abdulrahman was brutally tortured and murdered by incineration in the Barzani-controlled town of Barzan by agents of

Defendant Mustafa "Babo" Barzani acting under the command and direction of Defendants Masrour Barzani and Waysi Barzani. She was restrained, locked in her car, and burned to death by the officials who investigated and publicized her death. She was a harmless, peaceful critic of the criminality, brutality, and human and civil rights deprivation of the BCE.

49.    Defendants' "conduct [was] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *See Ortberg v. Goldman Sachs Group*, 64 A.3d 158 (D.C. Cir. 2013); *accord Wood v. Neuman,* 979 A.2d 64, 77 (D.C. 2009).

**Plaintiff Shakhwan Abdulrahman: Deprivation of Rights**

50.    On or about February 29, 2024, Plaintiff Abdulrahman was peacefully and lawfully protesting his sister's murder, on a public sidewalk in Washington, D.C., at a location where Defendant Masrour Barzani was present. Defendants Arfan Salih Omer Sherwani, Hamza Salim. Hikmet Bamerni, Hayman Quassi, and Dasko Shirwani, and their coconspirators acting for and on behalf of Defendant Masrour Barzani, did conspire in a civil rights violation under 42 U.S.C. § 1985, and in an effort to destroy evidence of Defendants' unlawful conduct, physically attempted (without success) to illegally steal and confiscate or destroy Abdulrahman's cell phone that he had been using to lawfully and freely film and record the violent reaction of the Barzani group to his tiny peaceful demonstration. The Barzani bodyguards who attacked Abdulrahman tried to force the phone out of his hand but could not take it away. Then the attackers tried to break the phone in Abdulrahman's hand, which caused pain in his hands and back, which persists. As a direct and proximate cause of Defendants' actions, Abdulrahman continues to suffer crippling physical and emotional effects and medical costs of the attack.

51.    Masrour Barzani's agents tried to also kick Abdulrahman, but when police arrived, the attack was halted. They also boldly and powerfully kicked the photo of Abdulrahman's murdered

Kurdish sister, in an intentional act of disrespect and repression of a Constitutionally protected liberty. Abdulrahman was displaying a photo, a protected medium of free speech equivalent to displaying a political sign in one's front yard, which the Supreme Court has held is substantive speech. *See City of Ladue v. Gilleo,* 512 U.S. 43, 54-56, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994).

52.    These unlawful acts unjustly restrained Abdulrahman's free movement, invaded his privacy, interfered with his right to anonymity, degraded his personal dignity, denigrated his expressive activity, restrained his personal autonomy, injured his ability to speak to Defendant Masrour Barzani, and silenced his First Amendment right to engage in protected advocacy. This deliberate and forceful interference, involving physical restraint to suppress protected expression, constitutes a tortious act within the conspiracy's broader scheme of heinous offenses.

53.    **Money Laundering**: The Countering America's Adversaries Through Sanctions Act (CAATSA) (See 31 CFR § 561.310 and 311) precisely describes BCE's unlawful conspiracy and undertaking devised, orchestrated, executed, and participated in by Defendants Moore, Reeder, Sanford, Cupp, Harris, Sandi, and others for and in coordination with Defendants Masrour Barzani, Mulla "Babo" Mustafa Barzani, Waysi Barzani, Muksi Barzani, Jeyra Mohamad Khaled, Katja Vrecar Barzani, Areen Masrour Barzani, and others, aided and facilitated by co-conspirators and others, in and through law offices, accountants, title companies, and financial institutions in and near Washington, D.C., Erbil, Dubai, and elsewhere, in a years-long cover up to keep the truth from financial regulators, a course of conduct to launder millions of dollars of ill-gotten criminal proceeds, and wherein "at least one overt act took place in furtherance of the conspiracy," *See United States v. Hemphill*, 514 F.3d 1350, 1362 (D.C. Cir. 2008).

54.    Defendants Moore and Reeder, using their legal expertise from D.C. offices, violated D.C. Rules of Professional Conduct 1.2(d), 8.4(b), and 8.4(c), per *In re Addams*, 579 A.2d 190 (D.C. 1990), provided unlawful assistance, advised Defendants on establishing sham corporations, and

devised and implemented a fraudulent scheme to conceal and disguise their Barzani clients'
ownership and control of various entities and offshore structures, knowingly and willfully
organized and created in a "convoluted character associated with money laundering" "designed
to disguise ownership and evade transaction reporting requirements," See *United States v.
Adefehinti*, 510 F.3d 319, 324 (D.C. Cir. 2007), by removing their clients as beneficiaries of their
own trusts and installing specious nominee beneficiaries, and did not, as required by the I.R.S.,
report the income earned by their clients therefrom, fraudulently failing to report millions of
dollars of worldwide income that Defendant Masrour Barzani earned while a U.S. taxpayer, which
Moore and others concealed using offshore structures and sham corporations, that Defendants
Masrour Barzani, Waysi Barzani, Mulla "Babo" Mustafa Barzani, Muksi Barzani, Jeyra
Mohamad Khaled, Katja Vrecar Barzani, Areen Masrour Barzani, either beneficially owned or
controlled, drafting fraudulent contracts, and concealing illicit sources.

55.     From at least 2007 until present, in the District of Columbia, and elsewhere, Defendants
Masrour Barzani, Waysi Barzani, Mulla "Babo" Mustafa Barzani, Muksi Barzani, Jeyra
Mohamad Khaled, Katja Vrecar Barzani, Areen Masrour Barzani, and key facilitators Defendants
Moore, Reeder, Cupp, Sanford, Harris, Sandi, and others, received, possessed, concealed, stored,
and disposed of money, of the value of $5,000 and more, which had crossed a state and United
States boundary after being stolen, unlawfully converted, and taken, knowing the same to have
been stolen, unlawfully converted, and taken, to wit, BCE received proceeds of diversion of
sovereign resources, business fraud schemes, fraudulent use of U.S. government contracts, and
U.S. tax fraud, which were transferred from money transfer locations to bank accounts in
Washington, D.C. and elsewhere (18 U.S.C. § 2315 and 2.), in violation of 18 U.S.C. § 1956, as
in *United States v. Almasi* (D.D.C. 2017). These funds supported torts including extrajudicial
murder, attempted murder, counterfeiting, and fraud, harming Plaintiffs.

56.     "Under the U.S. money-laundering statute, financial transactions include the purchase, sale, loan, pledge, gift, transfer, delivery or other disposition of property between parties. See 18 U.S.C. § 1956(c)(3)." *In Matter of Extradition of Zhenly Ye Gon*, D.D.C. 2011. Washed criminally-derived proceeds included funds derived from criminal activities in violation of the Iranian Transactions and Sanctions Regulations ("ITSR") issued by the Secretary of the Treasury and its Office of Foreign Assets Control ("OFAC"), and the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701-1706, and which were conducted through accounts at U.S. financial institutions or directed by United States financial institutions.

57.     None of defendants were unwitting or passive intermediaries, knowing the transactions were designed in a purposeful course of conduct to conceal proceeds from various unlawful schemes, each possesses skills or expertise in placing, moving, and laundering funds, and each is a complicit actor who was and is knowingly involved, or is deliberately negligent, in the laundering process in an effort to conceal and disguise the nature, source, ownership and control of the funds and elude U.S. law. Defendants Reeder, Moore, and Aziz are educated and knowledgeable in the law; failure to make a reasonable inquiry under these circumstances is "willful blindness", and any attorney-client privilege and the work product doctrine do not extend to criminal activity, "in furtherance of future illegal conduct, the so-called 'crime-fraud' exception". A portion of the corrupt proceeds also was used to pay the attorneys, administrative staff, accountants, and financial managers, including Defendants Moore, Reeder, Cupp, Sanford, Harris, Sandi, and others, who created sophisticated financial mechanisms designed to conceal and disguise the corrupt proceeds, and launder the funds for the benefit of Defendants Masrour Barzani, Masoud Barzani, Waysi Barzani, Muksi Barzani, Mulla 'Babo' Mustafa Barzani, Jeyra Mohamad Khaled, Katja Vrecar Barzani, and Areen Masrour Barzani, and themselves.

58.     Laundered proceeds were used to commit atrocities, manipulate U.S. policy, and harm plaintiffs. The pattern of misrepresentation (18 U.S.C. § 1001), falsifying records, and claiming bogus immunity shields their actions, delays justice, and compounds plaintiffs' suffering.

59.     **Counterfeiting**: From 2007 to the present, Defendants Masrour Barzani and Waysi Barzani directed BCE counterfeiting, piracy, and smuggling operations in its partnering with U.S.-designated anti-American terrorist organizations. The products BCE counterfeits include primarily U.S. registered and trademarked whiskey, tobacco, and pharmaceutical brands, in violation of the Lanham Act 15 U.S.C. § 1114, thereby channeling substantial criminal earnings to the BCE and collaborating terrorist groups, all continually, knowingly, and intentionally violating numerous international treaties and conventions to which Iraq is a signatory nation.

60.     **Sanctions Violations**: All Defendants and BCE transacted with Iranian sanctioned entities, violating OFAC regulations (31 C.F.R. Part 501) and IEEPA (50 U.S.C. § 1705), as in *United States v. Hanna* (2008), diverting funds to harm Plaintiffs.

61.     **Tax Violations**: Defendants Masrour Barzani, Waysi Barzani, Muksi Barzani, Mulla 'Babo' Mustafa Barzani, Jeyra Mohamad Khaled, Katja Vrecar Barzani, Areen Masrour Barzani, Jonathon R. Moore, Joe R. Reeder, Valerie Cupp, Julie Mai Sanford, Laura Geho Harris, and Rubar Sandi evaded or facilitated evasion of taxes on millions in illicit proceeds.

62.     **Immigration Fraud**: Defendants Masrour Barzani and Rubar Sandi submitted false immigration applications to USCIS in 2003, defrauding U.S. immigration systems and facilitating the BCE in its ability to harm Plaintiffs, violating 18 U.S.C. § 1546. *See United States v. Al-Ani,* Case No. 1:19-cr-00237 (D.D.C. 2019); and Defendants have utilized the false Masrour Barzani green card ever since to further operations and objectives of the BCE.

63.     **Sham Corporations and Fraudulent Contracts**: Defendants Moore, Reeder, Cupp, Sanford, Harris, and Sandi created sham corporations in the U.S.A. to conceal millions in illicit

proceeds, including from sales of national defense intelligence and materiel sales to Iran, and helped secure fraudulent U.S. government contracts worth millions through the S.B.A. and Department of Defense, knowingly misrepresenting ownership to deceive, violating 18 U.S.C. § 1343. *See Wye Oak v. Republic of Iraq* (D.D.C. 2019) and *Manafort* (D.C. 2018).

64.     **Espionage and Materiel Transfers**: Defendants Masrour Barzani, Masoud Barzani, and Waysi Barzani, and their BCE agents, sold or otherwise delivered, transmitted, communicated, or conveyed U.S. national defense information and U.S. military materiel to America's adversaries with the intent or reason to believe that the information may be used to the injury of the USA and Plaintiffs or to the advantage of Iran, in violation of the Espionage Act of 1917.

## PRAYER FOR RELIEF

65.     Plaintiffs have suffered severe injury in fact caused by knowing and intentional acts of Defendants as part of and in furtherance of a transnational conspiracy to perpetrate human and civil rights abuses and other torts, and on behalf of a corrupt conspiracy, deliberately facilitated by the transfer of laundered funds and provision of unlawful assistance by attorneys and others.

66.     The allegations and preponderance of the evidence state a claim of violation of clearly established law. See *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). All Plaintiffs' claims arise under and violate U.S. and D.C. statutes, common law, and international law as defined in agreements, treaties, declarations, conventions, and resolutions. It is a reasonable inference that individual defendants obtained a direct benefit from the commission of violations of federal and international law by BCE bolstering the allegation that defendants acted with purpose and knowledge. See *10-80652-CIV-MARRA* (D.C. Action, Does 1-976).

67.     As a result of Defendants' unlawful conduct facilitated by the conspiracy, Plaintiffs suffered the extrajudicial killing of their decedent, financial harm, and extreme emotional anguish, directly caused by Defendants. <u>For each Claim for Relief</u>, Plaintiffs incorporate each of the

foregoing paragraphs, and seek compensatory and punitive damages, costs, disgorgement, and such other relief as the Court deems just.

**FIRST CLAIM FOR RELIEF: Civil Conspiracy (Against All Defendants)**

68.    All Defendants knowingly entered into an international transnational criminal conspiracy to, in part, commit murder, attempted murder, torture, extrajudicial killing, money laundering, counterfeiting, sanctions violations, tax violations, immigration fraud, fraud via sham corporations and fraudulent contracts, misrepresentation, and espionage and materiel transfers to enemies, with the specific intent to harm Plaintiffs, per *Halberstam*. Defendants Moore, Reeder, Cupp, Sanford, Harris, and Sandi orchestrated money laundering, enhancing liability.

69.    Overt acts include the October, 2023 murder in Iraq, attempted assassinations of Plaintiff Revend in Germany, D.C. wire transfers of millions of dollars from 2007 to present, tax evasion on tens of millions from 2007 to present, visa fraud from 2003 to present, fraudulent contracts with S.B.A. and Department of Defense, counterfeiting of several millions in U.S. pharmaceuticals, cigarettes, and whiskey, sale to terrorists of U.S. national defense intelligence, provision of U.S.-supplied materiel worth millions to terrorists, and attorney misconduct in D.C.

**SECOND CLAIM FOR RELIEF**
**– Aiding and Abetting a Transnational Criminal Conspiracy**

70.    Plaintiffs assert a claim for aiding and abetting a transnational criminal conspiracy against Defendants Moore, Reeder, Cupp, Sanford, Harris, and Sandi for knowingly and substantially assisting a scheme to launder illicit proceeds in violation of 18 U.S.C. § 1956, which were subsequently used to cause Plaintiffs' harm. From 2007 to present, Defendants Moore, Reeder, Cupp, Sanford, Harris, and Sandi, intentionally facilitated the conspiracy by unlawful assistance, establishing shell companies, falsifying financial documents, and advising co-conspirators to structure transactions to conceal the illicit nature of funds totaling millions, knowing such funds

were derived from illegal activities, including violations of U.S. sanctions under the IEEPA. Defendants' actions directly enabled the conspirators to transfer laundered proceeds to entities that used said funds to perpetrate harm against Plaintiffs, causing damages in an amount to be determined. Defendants' conduct was a proximate cause of Plaintiffs' injuries, as it was foreseeable that facilitating the laundering of illicit funds would harm third parties, including Plaintiffs, who were targeted by the conspirators' actions.

## THIRD CLAIM FOR RELIEF – Aiding and Abetting Torts

71.    Plaintiffs assert a claim for aiding and abetting torts against Defendants Moore, Reeder, Cupp, Sanford, Harris, and Sandi, for knowingly and substantially assisting Co-Tortfeasors Masrour Barzani, Waysi Barzani, Muksi Barzani, Mulla 'Babo" Mustafa Barzani, Jeyra Mohamad Khaled, Katja Vrecar Barzani, Areen Masrour Barzani, Treefa Aziz, Hamaz Salim, Hikmet Bamerni, Hayman Quassi, and Dasko Shirwani in committing harm to Plaintiffs. Defendants Moore and Reeder, licensed attorneys, intentionally provided substantial unlawful assistance by drafting fraudulent financial documents and creating shell entities to conceal misappropriated funds, knowing that such actions would facilitate BCE's scheme to harm Plaintiffs. Defendants' actions were a proximate cause of Plaintiffs' injuries, as it was foreseeable that the assisted tortious conduct would harm Plaintiffs. Defendants Moore, Reeder, and Aziz's conduct violates ethical obligations under Model Rule 1.2(d).

## FOURTH CLAIM FOR RELIEF –Aiding and Abetting Tax Evasion

72.    Plaintiffs assert a claim against Defendants Masrour Barzani, Masoud Barzani, Waysi Barzani, Muksi Barzani, Mulla 'Babo' Mustafa Barzani, Jeyra Mohamad Khaled, Katja Vrecar Barzani, Areen Masrour Barzani, Jonathon R. Moore, Joe R. Reeder, Valerie Cupp, Julie Mai Sanford, Laura Geho Harris, and Rubar Sandi, for aiding and abetting the willful evasion of taxes on income earned outside the U.S. From 2007 to present, Defendants knowingly facilitated a

scheme to evade taxes by establishing offshore trusts, falsifying financial records, falsifying tax records (including Defendants Omar S. Barzani and Entifadh Kamal Qanbar), and concealing foreign bank accounts, in violation of 26 U.S.C. § 7201, with the intent to deprive the U.S. of lawful tax revenue on income derived from foreign business transactions. Defendants' actions, which enabled the concealment of millions in taxable income, proximately facilitated harm to Plaintiffs, as it was foreseeable that such tax evasion would support further illicit activities.

## FIFTH CLAIM FOR RELIEF – Money Laundering

73.    Plaintiffs assert a claim against Defendants Masrour Barzani, Masoud Barzani, Waysi Barzani, Muksi Barzani, Mulla 'Babo" Mustafa Barzani, Jeyra Mohamad Khaled, Katja Vrecar Barzani, Areen Masrour Barzani, Jonathon R. Moore, Joe R. Reeder, Valerie Cupp, Julie Mai Sanford, Laura Geho Harris, and Rubar Sandi for engaging in money laundering in violation of 18 U.S.C. § 1956. From 2007 to present, Defendants knowingly conducted and facilitated financial transactions involving millions in illicit proceeds derived from unlawful activity through establishing shell companies, falsifying financial records, and transferring funds through offshore accounts, with the intent to conceal the nature, source, or ownership of the proceeds. Defendants' actions, undertaken as part of a transnational conspiracy, enabled funding of extrajudicial killing, torture, and other human and civil rights abuses, which harmed Plaintiffs.

## SIXTH CLAIM FOR RELIEF – Anti-Terrorism Act– 18 USC 2333

74.    All four factors weigh strongly in favor of awarding significant punitive damages. Wherefore, Plaintiffs Maki Revend, Shakhwan Abdulrahman, and Shakhwan Abdulrahman as representative of his tortured and murdered sister, Jihan Taha Abdulrahman, merit judgment against Defendants in an amount sufficient to compensate them for injuries perpetrated and injuries and threatened future injury, directly traceable to the actions of the Defendants Masrour Barzani, Masoud Barzani, Waysi Barzani, Muksi Barzani, and Mulla 'Babo" Mustafa Barzani,

and it is absolutely clear the wrongful behavior could reasonably be expected to recur, by Defendants and for significant losses and damages suffered from their unified scheme, conspiracy, and course of conduct, and the fruits of their multitudinous crimes, in which each of the Defendants participated directly or indirectly, and willfully, directly and indirectly, intentionally, knowingly, and repeatedly in violation of and ignoring the law of nations and international treaties and conventions governing *malum in se* offenses, which dictate civilized and lawful behavior, of the sovereign Republic of Iraq, KRG, and the United States; and by reason of the acts, transactions, and omissions alleged herein; and solatium damages; and for treble damages as provided by law, sufficient to "yield the desired deterrent effect," *See Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d at 88 (D.C. 2010)), along with costs of suit.

75.     Courts may "presume that those in direct lineal relationships with victims of terrorism suffer compensable mental anguish" … as sufficient for entitlement to solatium damages. *See Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 403 (D.D.C. 2015).

**SEVENTH CLAIM FOR RELIEF – Torture**

76.     The tortious acts described herein constitute torture of Maki Revend and Jihan Taha Abdulrahman as defined by the Torture Victim Protection Act ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 note). Additionally, these acts constitute "tort[s] ... committed in violation of the law of nations or a treaty of the United States" under the Alien Tort Statute, 28 U.S.C. § 1350, in that they were in violation of customary international law prohibiting torture as reflected, expressed, defined, and codified in multilateral treaties and other international instruments, international and domestic judicial decisions and other authorities. TVPA confers civil liability for damages upon "[a]n individual who, under actual or apparent authority, or color of law, of any foreign nation ... subjects an individual to extrajudicial killing...."

28 U.S.C. § 1350 (note) sec. 2(a). TVPA contemplates claims based on secondary, or indirect, theories of liability. *Doe v. Drummond Co, Inc.*, 782 F.3d 576 (11th Cir. 2015).

<strong>EIGHTH CLAIM FOR RELIEF – Wrongful Death</strong>

77.     Plaintiff Shakhwan Abdulrahman on behalf of the estate of Jihan Taha Abdulrahman, the legal and personal representative of his deceased sister, asserts a claim for wrongful death against Defendants Masrour Barzani, Masoud Barzani, Waysi Barzani, Muksi Barzani, and Mulla 'Babo" Mustafa Barzani for the intentional extrajudicial killing of Jihan Taha Abdulrahman on or about October 26, 2023. Defendants, acting as agents of BCE, willfully, maliciously, and without justification caused the death of Jihan Taha Abdulrahman by kidnapping, torture, and incineration, in violation of Alien Tort Statute, 28 U.S.C. § 1350.

<strong>NINTH CLAIM FOR RELIEF<br>– Extrajudicial Killing Under the Torture Victim Protection Act</strong>

78.     Plaintiff Shakhwan Abdulrahman on behalf of the estate of Jihan Taha Abdulrahman, the legal and personal representative of his deceased sister, asserts a claim under the Torture Victim Protection Act, 28 U.S.C. § 1350 note, against Defendants Masrour Barzani, Masoud Barzani, Waysi Barzani, Muksi Barzani, and Mulla 'Babo" Mustafa Barzani, for the extrajudicial killing of Jihan Taha Abdulrahman on or about October 26, 2023. Defendants, acting under actual or apparent authority of Defendants Masrour Barzani and Waysi Barzani, without judicial process, deliberately caused the death of Jihan Taha Abdulrahman through targeted assassination, constituting extrajudicial killings as defined by the TVPA. These willful and malicious acts were carried out as part of a corrupt BCE's efforts to suppress dissent.

<strong>TENTH CLAIM FOR RELIEF<br>– Deprivation Of Constitutional Rights Of American Citizen</strong>

79.     Plaintiff Shakhwan Abdulrahman asserts a claim for violation of his civil rights under 42 U.S.C. § 1983 against Defendants Masrour Barzani, Hamaz Salim, Hikmet Bamerni, Hayman

Quassi, and Dasko Shirwani, for unlawfully suppressing Plaintiff's First Amendment right to free speech and subjecting him to excessive force in violation of the Fourth Amendment. On February 29, 2024, while Plaintiff was peacefully expressing his views on a public sidewalk, Defendants, acting as agents of and directed by Masrour Barzani, physically assaulted Plaintiff and silenced his speech through intimidation and force, causing physical injuries and emotional distress. These actions were a proximate cause of Plaintiff's damages.

### ELEVENTH CLAIM FOR RELIEF –
### Aiding and Abetting Civil Rights Violations Through Money Laundering

80.    Plaintiff Shakhwan Abdulrahman asserts a claim under 42 U.S.C. § 1983 against Defendants Masrour Barzani, Hamaz Salim, Hikmet Bamerni, Hayman Quassi, and Dasko Shirwani, and Masoud Barzani, Waysi Barzani, Muksi Barzani, Mulla 'Babo" Mustafa Barzani, Jeyra Mohamad Khaled, Katja Vrecar Barzani, Areen Masrour Barzani, Jonathon R. Moore, Joe R. Reeder, Valerie Cupp, Julie Mai Sanford, Laura Geho Harris, Rubar Sandi, and Treefa Aziz for aiding and abetting violations of Plaintiffs' First Amendment right to free speech and Fourth Amendment right against excessive force. On February 29, 2024, while peacefully expressing his views on a public sidewalk, Defendants Masrour Barzani, Hamaz Salim, Hikmet Barmerni, Hayman Quassi, and Dasko Shirwani, acting under color of state law, physically assaulted and silenced Plaintiff through intimidation and force, causing physical injuries and emotional distress. Defendants Masoud Barzani, Waysi Barzani, Muksi Barzani, Mulla 'Babo" Mustafa Barzani, Jeyra Mohamad Khaled, Katja Vrecar Barzani, Areen Masrour Barzani, Jonathon R. Moore, Joe R. Reeder, Valerie Cupp, Julie Mai Sanford, Laura Geho Harris, Rubar Sandi, and Treefa Aziz, though not directly involved in the physical acts, knowingly provided substantial assistance by misrepresentation and laundering illicit funds totaling millions which were used to finance the operations of Hamaz Salim, Hikmet Bamerni, Hayman Quassi, and Dasko Shirwani, directly

enabling the civil rights violations. Defendants' actions were a proximate cause of Plaintiff's damages as it was foreseeable laundered funds would support such violations.

**WHEREFORE,** Plaintiffs demands judgement against all Defendants for damages, punitive damages, court costs, disgorgement, and such other relief as the Court deems just and proper.

Plaintiffs request the Court: (A.) Enter judgment against Defendants finding them jointly and severally liable and award treble any compensatory damages in the amount, including solatium, determined by the court under the Torture Victims Protection Act of 1991, 28 U.S.C. § 1350; (B.) Enter judgment against Defendants in the amount determined by the court, finding Defendants jointly and severally liable under the Anti-Terrorism Act, 18 U.S.C. § 2333; (C.) Compensatory damages: $6.35 million–$13.21 million per murdered victim and $2.9 million–$8.5 million for Plaintiff Shakhwan Abdulrahman, consistent with D.C. wrongful death, survival actions, and tort damages (D.C. Code §§ 16-2701, 12-101), and punitive damages, as awarded in international conspiracy cases (e.g., *Estate of Klieman v. Palestinian Authority*, Case No. 1:04-cv-01173 (D.D.C. 2007); *United States v. Manafort,* Case No. 1:17-cr-00201 (D.C. 2018)). (D.) Compensatory damages: $5 million for Plaintiff Maki Revend. (E.) Punitive damages: $5 million – $10 million per targeted victim and $2 million – $4 million for Plaintiff Revend. (F.) Attorney fees and costs. (G.) Injunction against further criminal and retributive activities, holding the Defendants' conduct was in violation of the law of nations. (H.) Restitution of $25 - $50 million in misappropriated funds. (I.) Order disgorgement of all ill-gotten gains obtained by Defendants Attorney Moore and Reeder's fees through their tortious and unlawful acts, including but not limited to diverted U.S.-funded resources, illicit profits from corruption, and other benefits derived from fraud, conversion, and tortious interference, all property and real property assets relating to Defendant Moore which include 1 Wood Road Wilmington, DE 19806 (owned by The

One Wood Road Revocable Trust), 134 Three Mile Harbor Road, East Hampton, NY 11937,

Moore & Bruce Profit Sharing Plan, Ingomar Fiduciary Services, Inc. assets fraudulent

conveyance to Ingomar Fiduciary Services, Inc. from Moore & Bruce according to Department

of Labor 5500 filings, all funds held in IOLTA and money markets of Law Offices of Jonathon

Moore, PLLC IOLTA, Law Offices of Jonathon Moore, PLLC operating account Jonathon

Moore, Ingomar Fiduciary Services, all accounts under Law Offices of Jonathon Moore as

signatory for Golden Eagle Global, Inc. and subsidiaries, and money held and received from

Barzani-controlled Ster Group, to be awarded to Plaintiffs as restitution for harms caused by

Defendants through the unified conspiracy scheme.

## JURY DEMAND

In accordance with FRCP 38(b), Plaintiffs demand a trial by jury on all issues so triable.

Dated: June 4, 2025

              *Counsel for Maki Revend, et al..*

              TATE BYWATER PLC

              _/s/ James R. Tate_____
              Tate Bywater
              James R. Tate, *pro hac vice*
              2740 Chain Bridge Road
              Vienna, VA 22181
              Tel: 703-938-5100
              Email: jtate@tatebywater.com

              _/s/ Paul Mickelsen_____

              Tate Bywater
              Paul Mickelsen (D.C. Bar Number 500750)
              Benjamin Ader (D.C. Bar Number 1616990)
              2740 Chain Bridge Road
              Vienna, VA 22181
              Tel: 703-938-5100
              Email: pmickelsen@tatebywater.co

## **Certificate of Service**

I HEREBY CERTIFY that on June 4, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve a copy to counsel of record for Defendants who have filed an appearance.

  /s/ James R. Tate
James R. Tate