IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Kurdistan Victims Fund, *et al.*,  )<br>  )<br>        Plaintiffs,  )<br>v.  )<br>  )<br>  )<br>  )<br>Kurdistan Regional Government, *et al.*,  )<br>  )<br>        Defendants.  ) | No. 24-cv-278-RDM |

**DEFENDANT JOE R. REEDER'S OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL OPPOSITION**

Defendant Joe R. Reeder respectfully opposes plaintiffs' motion for leave to file a supplemental opposition to Reeder's motion for sanctions (ECF 101). More than seventeen months after plaintiffs impleaded their opposing counsel and four months after the Court ordered plaintiffs to show cause, plaintiffs now contend that a newly published news article supports their claims. But the article they cite—which does not so much as mention Reeder—is irrelevant to Reeder's sanctions motion, nor does it provide any factual support for the outlandish allegations in plaintiffs' first, second, and third amended complaints. On the contrary, plaintiffs' belated submission only underscores that they had no good-faith basis to accuse their opposing counsel of the serious criminal conduct they continue to allege.

*First*, the news article plaintiffs cite has no connection to their claims. As plaintiffs characterize their allegations, they accuse Reeder and other defendants of "grave" crimes, "including extrajudicial murder, money laundering, tax evasion, deprivation of constitutional rights, and trading with the enemy." Mot., ECF 101, at 4.[1] These "are very serious charges against

---

[1] Consistent with the Court's standing order, all page citations to docket entries (including briefs) are to the page number of the PDF rather than any internal pagination within the document.

an individual that should only be made after a thorough investigation and with a good faith basis." June 18 Conf. Tr., ECF 90, at 7:15–17. But the article, by its own terms, does not allege *any* illegal conduct, by anyone. After describing business transactions involving members of the Kurdish prime minister's family, the article observes that "[i]t is not illegal or uncommon to acquire real estate for personal use through companies or offshore structures." Mot., Ex. A, ECF 101-1, at 5; *see also* Show-Cause Response, ECF 94, at 20 (conceding that such arrangements may amount to "mere estate planning"). There is no allegation that the assets at issue were wrongfully obtained. The transactions that it describes are common, and the sole point of interest is that they allegedly involve a prominent family. Nothing in the article hints at any connection to "extrajudicial murder," "money laundering," or the other serious criminal conduct plaintiffs have alleged. Nor does it suggest why, even if some Kurdistan Regional Government officials allegedly *may* have had "possible conflicts of interests," Mot., Ex. A, at 6, that would amount to "a tort, which is actionable by [plaintiffs]," much less give rise to a cause of action against opposing counsel. June 18 Conf. Tr. 11:1–7.

*Second*, plaintiffs' assertion that the article "corroborat[es]" their claims against Reeder, Mot. 10, only confirms that plaintiffs continue to rely on a theory of bare guilt by association that other courts have found sanctionable. *See Del Canto v. ITT Sheraton Corp.*, 865 F. Supp. 934, 938 (D.D.C. 1994), *aff'd sub nom. Del Canto v. Richardson*, 70 F.3d 637 (D.C. Cir. 1995); *see also* Mot. for Sanctions, ECF 96-1, at 23–24. The article does not mention Reeder at all; it neither suggests Reeder engaged in wrongdoing nor supplies any connection between his attorney advocacy and plaintiffs' purported injuries. As this Court has repeatedly warned, Rule 11 requires that claims rest on "concrete factual allegations that tie specific Defendants to specific violations of U.S. law that has caused specific, cognizable harm to those Plaintiffs," and plaintiffs "may not

name any individual or entity as a Defendant absent a good faith basis." Mem. Op. & Order, ECF 83, at 10; *see, e.g.*, Minute Order (June 18, 2025) (warning that plaintiffs may face sanctions if they "fail to connect Mr. Reeder's alleged conduct to Plaintiffs' injuries"); June 18 Conf. Tr. 11:1–7 (warning that plaintiffs may face sanctions unless "there is a good faith basis to allege that Mr. Reeder did the things that he allegedly did"). Yet, as plaintiffs have done throughout the past seventeen months of litigation, they continue to accuse Reeder of serious crimes based on nothing more than his status as an attorney for other defendants in this case. A news article devoid of any "specific acts" Reeder allegedly undertook cannot supply a good-faith basis for plaintiffs' claims against him. Mem. Op. & Order 4 (quoting Oct. 2 Conf. Tr., ECF 59, at 37:6).

*Third*, even if the article suggested wrongdoing by Reeder (it does not), it would be irrelevant to Reeder's sanctions motion because it was "published after the filing" of plaintiffs' claims against him. Mot. 5. "Rule 11 plainly 'requires that an attorney conduct a reasonable inquiry into the factual and legal basis for a claim *before filing*.'" *Williams v. Verizon Washington, D.C. Inc.*, 322 F.R.D. 145, 148 (D.D.C. 2017) (citation omitted and emphasis added); *see also Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 43–44 (D.C. Cir. 1990) (affirming sanctions for failure to corroborate plaintiff's claims "before filing suit"). Plaintiffs' submissions make clear that they had zero factual basis for their claims against Reeder—added shortly after he filed a motion for other defendants in this case—when they lodged any of their amended complaints. *See* Mot. for Sanctions at 24–25, 30. A newly published article describing concededly lawful business activities by other defendants does not change that.

\* \* \*

For the foregoing reasons, the Court should reject plaintiffs' supplemental submission as irrelevant to Reeder's pending sanctions motion. Rather than identify any good-faith basis for

3

their claims, plaintiffs continue to blame their opposing counsel—with no factual or legal support—for their generalized, political grievances with "basically everything [the Kurdistan Regional Government] is doing." Oct. 2 Conf. Tr. 13:12–15. Though plaintiffs claim that Reeder's sanction motion "divert[s] judicial attention from [their] grave claims," Mot. 4, sanctions are warranted because plaintiffs' lawsuit—and particularly their claims against Reeder—are a political "diver[sion]" asserted for improper purposes without factual or legal basis. While funding for this political activity remains a mystery, since Reeder's sanction motion was fully briefed, plaintiffs have sent out at least *another 230 letters* (bringing the total to over 1000) trumpeting the supposedly "massive incriminatory and revealing contents of these lawsuits" to government officials and media members.[2] The letters specifically claim that "these very serious allegations are against … complicit Washington DC representatives," an apparent reference to Reeder. This is "an abuse of the system" and "needs to stop." June 18 Conf. Tr. 11:8–9.

Dated: October 23, 2025              Respectfully submitted,

              /s/ John Elwood
              John P. Elwood (D.D.C. Bar No. 452726)
              Daniel Yablon (D.D.C. Bar No. 90022490)
              ARNOLD & PORTER KAYE SCHOLER, LLP
              601 Massachusetts Ave, NW
              Washington, DC 20001-3743
              Telephone: (202) 942-5000
              John.Elwood@arnoldporter.com

              *Counsel for Defendant Joe R. Reeder*

---

[2] A list of these additional letters and several representative samples are attached as Exhibit A.

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2025, the foregoing opposition was served via ECF to all counsel of record.

*/s/ John Elwood*
John P. Elwood

*Counsel for Defendant Joe R. Reeder*