**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Kurdistan Victims Fund, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 1:24-cv-00278-RDM |
| ) | Judge Randolph Moss |
| Kurdistan Regional Government, *et al*,) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS MASROUR BARZANI, MASOUD BARZANI, WAYSI
BARZANI, MUSTAFA BARZANI, AND AREEN BARZANI'S
MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................ 1

    I.    There Is No Cause of Action for "Civil Conspiracy" (Count I). ............... 2

    II.    There Is No Private Cause of Action for Tax Evasion (Count IV) or Money Laundering (Count V). ....................................................... 3

    III.    Plaintiffs Have Not Pled the Prerequisites for a Claim Under the Antiterrorism Act (Count VI). .......................................................... 4

    IV.    Plaintiffs Have Not Pled the Prerequisites for a Claim Under the Alien Tort Statute (Count VIII). ......................................................... 7

    V.    Plaintiffs Have Not Pled the Prerequisites for a Claim Under the Torture Victim Protection Act (Count IX). ....................................... 8

    VI.    Plaintiffs Have Not Sued a State Actor for Their Claims Under 42 U.S.C. § 1983 (Counts X & XI). ......................................................... 9

    VII.    Plaintiffs' Torture Claims Do Not Identify Defendants, but They Fail for Three Additional Reasons as Well (Count VII). ............. 11

    VIII.    The Court Should Dismiss with Prejudice. ......................................... 12

CONCLUSION................................................................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Barr,*
   952 F.2d 457 (D.C. Cir. 1991) ................................................................. 6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................. 2, 3, 8

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................. 2, 8

*Eike v. Allergan, Inc.,*
   850 F.3d 315 (7th Cir. 2017) ................................................................. 16

*Enahoro v. Abubakar,*
   408 F.3d 877 (7th Cir. 2005) ................................................................. 9

*Farah v. Gov't of Republic of Somaliland,*
   No. 23-cv-1205 (ACR), 2024 WL 3985165 (D.D.C. Aug. 29, 2024) .................. 7, 11

*Foman v. Davis,*
   371 U.S. 178 (1962) ................................................................. 13

*Hatcher v. Easyriders Licensing, Inc.,*
   66 Fed. App'x 736 (9th Cir. 2003) ................................................................. 11

*Hoai v. Vo,*
   935 F.2d 308 (D.C. Cir. 1991) ................................................................. 10

*Kiobel v. Royal Dutch Petroleum Co.,*
   569 U.S. 108 (2013) ................................................................. 7, 9

*Manhattan Comm. Access Corp. v. Halleck,*
   587 U.S. 802 (2019) ................................................................. 10

*Nader v. Democratic Nat. Comm.,*
   567 F.3d 692 (D.C. Cir. 2009) ................................................................. 2

*Nader v. McAuliffe,*
   593 F. Supp. 2d 95 (D.D.C. 2009) ................................................................. 10

*In re NJ Title Ins. Litig.,*
   683 F.3d 451 (3d Cir. 2012) ................................................................. 15

*Schrager v. Aldana,*
  542 F. App'x 101 (3d Cir. 2013) .................................................................................. 3

*United States ex rel Schumann v. Astrazeneca Pharms. L.P.,*
  769 F.3d 837 (3d Cir. 2014) ...................................................................................... 15

*Trump v. Clinton,*
  640 F. Supp. 3d 1321 (S.D. Fla. 2022) ...................................................................... 15

*Woodford v. Ngo,*
  548 U.S. 81 (2006) ....................................................................................................... 9

**Statutes**

18 U.S.C. §§ 792-794 .................................................................................................... 4

18 U.S.C. § 1956 ........................................................................................................... 3

18 U.S.C. § 2331(1)(A) ................................................................................................. 6

18 U.S.C. § 2331(1)(C) ................................................................................................. 6

18 U.S.C. § 2333(a) ...................................................................................................... 5

18 U.S.C. § 2333(d)(2) .................................................................................................. 5

26 U.S.C. § 7201 ........................................................................................................... 3

28 U.S.C. § 1350 ........................................................................................................... 7

28 U.S.C. § 1350, n. ...................................................................................................... 9

42 U.S.C. § 1983 ............................................................................................. 5, 9, 10, 11

TVPA § 2(b) ................................................................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1, 2

Jerusalem Post (Mar. 26, 2026), reporting over 450 Iran-backed militia
  attacks on Kurdistan, https://www.jpost.com/middleeast/iran-
  news/article-891316 ................................................................................................... 4

5A Wright & Miller, Federal Practice and Procedure, 1357 (2d ed. 1990) ............... 6

After two years, thousands of pages of complaints, and three motions for alternative service, Plaintiffs purport to have cleared the minimal threshold to initiate litigation. Behind the curtain lies a jumble of claims for which Plaintiffs lack standing, have not satisfied jurisdictional prerequisites, fail to connect specific defendants to cognizable claims, and cannot allege facts that would elevate any of the claims from fanciful to plausible. As the Third Amended Complaint reconfirms, this case has always been a political attack rather than a genuine legal dispute. It does not state a single claim against Prime Minister Masrour Barzani, former President Masoud Barzani, Waysi Barzani, Mustafa Barzani[1], or Areen Barzani ("Movants"). Instead, it weaves a convoluted narrative involving everything from car accidents in Iraq to attempted arson in Germany, without a hint as to how any one or more Movants, or any other defendant, imposed a cognizable harm on a single plaintiff. As such, the Court should dismiss the Third Amended Complaint with prejudice.

## ARGUMENT

Relying on group pleading and conclusory allegations, Plaintiffs' Third Amended Complaint ("TAC"), ECF 85, names Movants[2] in various counts. None of them states a viable claim, many for reasons the Court has already articulated in its order dismissing the claims against the Prime Minister's legal counsel in this case.  ECF 110. The Court should similarly dismiss each of the claims against Movants under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

---

[1] Plaintiffs improperly refer to a "Mulla Mustafa 'Babo' Barzani." The correct name is Mustafa Barzani.

[2] Not every Movant is named in every count, but for brevity and because there are no Movant-specific arguments, this motion refers simply to "Movants."

Dismissal under Rule 12(b)(6) is appropriate when a complaint fails to plausibly allege a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Courts accept as true the factual allegations in the complaint, but they do not accept as true legal conclusions or a "legal conclusion couched as a factual allegation." *Id.* Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Not one claim against Movants rises to the level of plausibility.

## I.   There Is No Cause of Action for "Civil Conspiracy" (Count I).

The first claim against Movants, (and a laundry list of additional defendants) is one the Court has already dismissed. It purports to recover from the defendants for engaging in a "civil conspiracy," though the first sentence of the count speaks exclusively in terms of criminal activity. ECF 85 ¶ 68. The TAC leveled the same meritless assertions against Attorney Joe Reeder, *id.*; they fail for the same reasons when asserted against Movants. *See* ECF 110 at 8. Among those reasons is the rule that "under District of Columbia law, civil conspiracy is not an independent tort," but rather, depends on establishing the elements of an underlying action which the defendant conspired to commit. *Nader v. Democratic Nat. Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009). Nowhere does the TAC identify any such underlying action. As this Court has explained, the scattershot collection of alleged crimes in Paragraphs 68 and 69 and the reference to murder in a separate claim for relief do not "fill this void." ECF 110 at 8. The alleged murder, which at least theoretically might support a civil cause of action,

is asserted under the Alien Tort Statute, for which Plaintiffs have not satisfied the jurisdictional prerequisites. *See* Part IV *infra*. But even if the TAC pleaded that cause of action as a common-law tort, it does not include factual allegations to connect the Prime Minister (or any other Movant) to any of the bad acts included in the TAC, including a car accident in Iraq.  It is not enough to declare in conclusory fashion that the accident was actually a homicide and that the Movants were part of a conspiracy to commit it. *Iqbal*, 556 U.S. at 678 (rejecting a "naked assertion devoid of further factual enhancement"). And because none of Plaintiffs' substantive claims survives, the civil conspiracy "claim" fails, as well.

## II.   There Is No Private Cause of Action for Tax Evasion (Count IV) or Money Laundering (Count V).

The next two counts naming Movants involve criminal statutes. Those statutes do not provide a private right of action. *See, e.g., Schrager v. Aldana*, 542 F. App'x 101, 103 (3d Cir. 2013) (affirming district court holding that there is no private right of action under the criminal money laundering prohibition in 18 U.S.C. § 1957). The Court applied this rule when it dismissed the same tax-evasion and money-laundering claims asserted against Joe Reeder, explaining that Plaintiffs failed to state a claim under a criminal statute, 26 U.S.C. § 7201, that "lacks any private right of action."  ECF 110 at 9. The same was true of 18 U.S.C. § 1956. *Id.* For the same reason, both causes of action fail when asserted against Movants.

Any remaining doubt that Plaintiffs have no right to enforce the criminal law was put to rest in this Court's December 12th Opinion. Yet they persist in citing these statutes, which reflects their strategy from the outset of misusing the judicial process

3

to generate inaccurate press in the Kurdistan Region of Iraq ("Kurdistan") and elsewhere in order to harm the Prime Minister and his government. Their misuse of the judicial system includes the publication of a photograph of a dead American hiker, whom Plaintiffs baselessly asserted was a CIA agent killed by defendants. ECF 1 ¶ 274. It also makes the equally unfounded assertion that several Movants provided U.S. military materiel "to the advantage of Iran," in violation of the Espionage Act of 1917, 18 U.S.C. §§ 792-794, again without any factual support or a private right of action. ECF 85 ¶ 64. The absurdity of that allegation is evident from the fact that Kurdistan has been on the receiving end of a barrage of Iranian missile and drone strikes—due to the KRG's alliance with the United States and the over 2,500 U.S. troops now based in Kurdistan. *See, e.g.,* Jerusalem Post, (Mar. 26, 2026), *available at* https://www.jpost.com/middleeast/iran-news/article-891316 (reporting over 450 Iran-backed militia attacks on Kurdistan).  Plaintiffs' reliance on criminal statutes that they know they cannot enforce—and that the government has never even hinted might apply here—is a similar bad-faith litigation tactic, not a genuine attempt to assert a plausible claim for relief.

## III.    Plaintiffs Have Not Pled the Prerequisites for a Claim Under the Antiterrorism Act (Count VI).

Plaintiffs' choice of statutes in the TAC should likewise be seen as rhetoric, not substance. They invoke the Antiterrorism Act, for example, without alleging any facts to make that statute applicable. The purpose is almost certainly for propaganda in Kurdistan rather than legitimate pursuit of claims in this Court.

The Antiterrorism Act provides that "[a]ny national of the United States injured . . . by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States . . . ."  18 U.S.C. § 2333(a). Two unsatisfied prerequisites foreclose any claim in this case: (i) the plaintiff must be a U.S. national (or his estate), and (ii) the injury must result from "an act of international terrorism."  And, even if Plaintiffs could clear those bars, the TAC includes no facts plausibly linking any defendant to any bad acts.

Only Shakhwan Abdulrahman is alleged to be a U.S. national. ECF 85 ¶ 79. But he does not assert any claims under the Antiterrorism Act, only under 42 U.S.C. § 1983. *Id.* ¶¶ 79–80. Those claims are deficient on their own terms, *see* Part VI *infra*, but they also fail to allege an act of international terrorism. Under the statute, an "act of international terrorism," must be "committed, planned, or authorized by an organization that has been designated as a foreign terrorist organization" under the Immigration and Nationality Act.  18 U.S.C. § 2333(d)(2). The TAC does not allege that any designated terrorist organization was involved in Abdulrahman's conflict with the Prime Minister's security detail on a Washington, DC, sidewalk, ECF 85 ¶ 50, or with his sister's car accident in Iraq, *id.* ¶ 19. Nor does the TAC include any facts suggesting that such an organization was involved in money laundering in connection with his sidewalk confrontation or the death of his sister (who was not a U.S. national). The problems do not stop there. The alleged sidewalk conflict occurred exclusively within the United States, while the Antiterrorism Act applies only to acts that "occur primarily outside the territorial jurisdiction of the United States" or "transcend national

boundaries."  18 U.S.C. § 2331(1)(C). Moreover, money laundering is not among the "violent acts or acts dangerous to human life" that qualify as "international terrorism." 18 U.S.C. § 2331(1)(A).

At minimum, a claim under the Antiterrorism Act must allege a terrorist act by a designated terror organization occurring primarily outside the United States. The TAC satisfies none of these requirements. The closest it comes is satisfying the location requirement for Jihan Taha Abdulrahman's death in a car accident, but even that does not involve a U.S. national, an act of international terrorism, or a designated terrorist organization. And without a predicate violation of the statute, Plaintiffs' discussion of .. puts the cart ahead of the horse.  ECF 85 ¶ 76. The Court should dismiss because of these missing statutory prerequisites alone.

Further, the TAC does not include factual allegations to link any defendant, much less the Prime Minister, to bad acts, including Jihan Taha Abdulrahman's car accident. The TAC simply declares that Ms. Abdulrahman was "kidnapped, tortured, and brutally murdered by agents of and commanded by Defendants Masrour Barzani, Masoud Barzani, Waysi Barzani, and Mulla 'Babo' Barzani."  ECF 85 ¶ 19. It does not identify the "agents," include any factual allegations to support a principal-agent relationship with the named defendants, or point to any circumstantial evidence suggesting that Movants were even aware of Ms. Abdulrahman, let alone desired to kill her. The Court is not "required to speculate that factual propositions unmentioned, or evidentiary links unrevealed, are among the facts plaintiff intends to prove at trial." *ACLU v. Barr*, 952 F.2d 457, 472 (D.C. Cir. 1991) (citing 5A Wright & Miller, Federal

Practice and Procedure ¶ 1357, at 311 (2d ed. 1990)). The TAC does not provide Movants or the Court with any idea how Plaintiffs believe they were involved in Jihan Taha Abdulrahman's death. The lack of any factual allegations is a second reason to dismiss the claim.

## IV. Plaintiffs Have Not Pled the Prerequisites for a Claim Under the Alien Tort Statute (Count VIII).

Another statute Plaintiffs invoke without basis is the Alien Tort Statute. The statute's inapplicability is so conspicuous that the only reasonable inference is that Plaintiffs, again, are using it for political purposes.

Plaintiffs claim that Movants, acting as agents of an imaginary criminal conspiracy, "caused the death of Jihan Taha Abdulrahman by kidnapping, torture, and incineration, in violation of Alien Tort Statute, 28 U.S.C. § 1350." ECF 85 ¶ 77. But those alleged facts, even if true, would not support application of the Alien Tort Statute ("ATS"). The ATS does not apply to claims "seeking relief for violations of the law of nations occurring outside the United States." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013). In reaching that conclusion, the Supreme Court noted that the presumption against extraterritoriality "protect[s] against unintended clashes between our laws and those of other nations which could result in international discord." *Id.* at 115 (quotation omitted). The TAC alleges that Ms. Abdulrahman died in Iraq. ECF 85 ¶ 48. That fact forecloses a claim under the ATS, which Congress adopted to provide jurisdiction over "violations of the law of nations occur[ring] in the United States." *Kiobel*, 569 U.S. at 120; *accord, e.g.*, *Farah v. Gov't of Republic of Somaliland*, No. 23-cv-1205 (ACR), 2024 WL 3985165, at *8–*9 (D.D.C. Aug. 29, 2024) (dismissing an ATS

7

claim as impermissibly extraterritorial where plaintiff alleged that foreign government officials were responsible for torturing and killing an individual abroad).

More fundamentally, the TAC is devoid of any factual allegations that "nudge [Plaintiffs'] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. It instead declares Plaintiffs' conclusion that Ms. Abdulrahman "was restrained, locked in her car, and burned to death" by unnamed agents of the Prime Minister, his father, and brother. ECF 85 ¶ 48. It includes no factual allegations that might lend plausibility to this vicious accusation—no alleged threats from any defendant, no witness statements, nothing related to the scene of the accident that would suggest foul play by anyone, much less defendants named in this action. The claim that anyone acted wrongly in connection with Ms. Abdulrahman's death is nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," which does not state a claim. *Iqbal*, 556 U.S. at 678. The Court should dismiss for this additional reason, which applies whether Plaintiffs rely on the ATS or any other source of law for claims against the Movants.

## V. Plaintiffs Have Not Pled the Prerequisites for a Claim Under the Torture Victim Protection Act (Count IX).

Relying on the same threadbare allegations around Jihan Taha Abdulrahman's car accident, Plaintiffs invoke the Torture Victim Protection Act ("TVPA"). Once again, they cannot bring a claim under the cited statute.

TVPA Section 2(b) requires exhaustion of remedies in the local courts where the alleged tort occurred: "A court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the

conduct giving rise to the claim occurred." 28 U.S.C. § 1350, note; *Enahoro v. Abubakar*, 408 F.3d 877, 891 (7th Cir. 2005). Exhaustion requirements are not optional. Especially in the context of foreign judicial systems, exhaustion allows the other sovereign to "correct its own mistakes." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006); *see also Kiobel*, 569 U.S. at 117 (noting TVPA exhaustion requirement, which is a policy decision that "carries with it significant foreign policy implications"). The TAC claims that Ms. Abdulrahman died in Iraq, ECF 85 ¶ 48, but it does not allege any attempt to pursue claims in the Iraqi courts. Congress did not open the door to American courts in these circumstances. The Court should therefore dismiss.

Even if Plaintiffs had satisfied the exhaustion requirement, they have not alleged any factual detail that would make plausible their claims based on Ms. Abdulrahman's death. They offer nothing to connect Ms. Abdulrahman's death to any defendant and do not include any factual allegations which, taken as true, would support a conclusion that her death was the result of torture rather than a car accident. Accordingly, the TVPA claim must also be dismissed as implausibly alleged.

## VI.    Plaintiffs Have Not Sued a State Actor for Their Claims Under 42 U.S.C. § 1983 (Counts X & XI).

The final two claims asserted against Movants invoke 42 U.S.C. § 1983. The problem, as the Court noted in dismissing Plaintiffs' Section 1983 claim against the Prime Minister's counsel in this action, is that Plaintiffs have not sued anyone acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983; ECF 110 at 10. Without a

9

defendant acting under color of law, there is no claim under Section 1983. *Nader v. McAuliffe*, 593 F. Supp. 2d 95, 101 (D.D.C. 2009).

First, Plaintiff Abdulrahman alleges that individuals purportedly "directed by Masrour Barzani" violated his rights under the First and Fourth Amendments. ECF 85 ¶ 79. Both of those Amendments restrict government actors, not private individuals. *See, e.g., Manhattan Comm. Access Corp. v. Halleck*, 587 U.S. 802, 808–09 (2019). Consistent with that limitation, Section 1983 requires a state actor. The TAC is devoid of any allegation that any defendant acted under color of state law. "Private parties . . . may be deemed to have acted under color of law in two circumstances: when they conspire with state officials, and when they willfully engage in joint activity with a state or its agents." *Hoai v. Vo*, 935 F.2d 308, 313 (D.C. Cir. 1991). The threadbare factual allegations in the TAC do not so much as hint at either of those circumstances. Absent plausible allegations that the defendants who allegedly assaulted Shakhwan Abdulrahman on a D.C. sidewalk were state actors or working in coordination with a U.S. State, Territory, or the District of Columbia, Plaintiffs cannot state a claim for relief under Section 1983.

Plaintiffs' second Section 1983 claim, based on money laundering, fails for the same reason. Their naked assertion that Prime Minister Barzani, among others, "act[ed] under color of state law," ECF 85 ¶ 80, does not suffice, as the Court already held, because defendants "are not linked to any U.S. state, territory, or the District of Columbia in the complaint in a manner that might support a plausible inference that they are appropriate defendants under Section 1983." ECF 110 at 10. In fact, the Court

10

identified Prime Minister Barzani among the defendants for whom a link to state action was missing. *Id.* Plaintiffs' Section 1983 claims therefore fail as a matter of law.

## VII.   Plaintiffs' Torture Claims Do Not Identify Defendants, but They Fail for Three Additional Reasons as Well (Count VII).

Plaintiffs' seventh cause of action, t asserted under the TVPA *and* the ATS, does not identify any defendants against whom it is asserted. That deficiency alone dooms Plaintiffs' purported torture claim. *See, e.g., Hatcher v. Easyriders Licensing, Inc.*, 66 Fed. App'x 736, 739 (9th Cir. 2003) (affirming dismissal with prejudice of amended complaint that did not "identify which claims were against which Defendants"). Even if Plaintiffs intended to accuse any particular person of torture, the TAC fails to state a claim for at least three additional reasons.

First, as shown above, the TVPA requires plaintiffs to exhaust judicial remedies in the jurisdiction where the alleged wrongful acts occurred. In the case of Maki Revend, that would require exhaustion of judicial remedies in Germany; for the estate of Jihan Taha Abdulrahman, the TVPA requires exhaustion in Iraq. The TAC does not allege that Plaintiffs have satisfied this requirement in either jurisdiction.

Second, the ATS lacks extraterritorial application, as discussed above. That means that events in Germany and Iraq cannot support any cause of action under the ATS. Hence, for this additional reason, the ATS component of Plaintiffs' seventh cause of action must be dismissed. *See Farah*, 2024 WL 3985165, at *8–*9.

Third, the factual allegations necessary to elevate the torture allegations from conspiracy theory to a plausible claim for relief are completely missing. As is true for all of Plaintiffs' desultory allegations, Plaintiffs do not point to any specific facts that link

11

any specific defendants to any specific claim. Like Jihan Abdulrahman's car accident discussed above, Maki Revend's allegations are conclusory at best. He declares that someone acting on defendants' behalf attempted to access his computer for nefarious purposes, ECF 85 ¶ 47, and that Prime Minister Barzani "directed" five attempted attacks aimed at Revend, *id.* ¶ 46. The latter allegations include dates but lack any factual connection to any defendant in this case. Plaintiffs fail to fill the legal void by sprinkling in hearsay statements allegedly attributable to German police. *Id.* ¶ 46(a) ("police advised Plaintiff Revend his life was in danger from the BCE"), ¶ 46(e) ("two persons, identified by police as Russian assassination agents hired by Defendants Masrour Barzani and Waysi Barzani"). Unsurprisingly, the TAC does not identify any police officers who believe that Movants or other defendants were behind the alleged attacks. Nor does it include direct quotes or sworn affidavits that might make plausible any claim that whatever harm unnamed third parties tried to inflict on Mr. Revend was the work of a defendant in this case. Without that connection, labeling Plaintiffs' theories "implausible," while sufficient to warrant dismissal, is charitable. Ultimately, the TAC, like its predecessors, is a mangled collage of conclusions unconnected to any antecedent facts, plausible or otherwise.

## VIII.  The Court Should Dismiss with Prejudice.

Plaintiffs have made four attempts to plead viable claims, and they have failed at each turn. Dismissing the TAC with prejudice is just and warranted.

Reasons to deny leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). These considerations all apply to Plaintiffs. The history of Plaintiffs' politically motivated case is replete with bad faith, repeated failures to cure, harmful press coverage, over a thousand letters maligning defendants, and claims that are unsalvageable because they have no connection to reality.

The history of Plaintiffs' meandering claims merits emphasis. From the outset, the Court went out of its way to advise Plaintiffs of the woeful deficiencies in their earlier complaints. During the hearing on October 2, 2024, the Court advised Plaintiffs that the then-forthcoming Second Amended Complaint needed to "identify[] specific acts" taken by "specific defendants." ECF 59 at 37:5–10. The Court repeated that guidance in its order dismissing the Second Amended Complaint, explaining the troubling pattern of unsupported allegations: "Plaintiffs' second amended complaint fails to cure the deficiencies in their original and first amended complaints" because it was "nearly devoid of allegations relating to any specific Defendant's specific conduct." ECF 83 at 6. But no facts exist to support Plaintiffs' fiction, hence their Third Amended Complaint is equally devoid of specific factual allegations tying specific defendants to alleged misdeeds.

Nowhere is the prejudicial, bad-faith habit of asserting claims with no connection to specific defendants more apparent than in the evolving list of named parties. Plaintiffs began this litigation on behalf of 5,000 John Doe plaintiffs and a purported charity. The former almost certainly never existed, and the latter was created for this case. Tellingly, after the Court dismissed the anonymous "plaintiffs" and the

13

manufactured charity with prejudice, ECF 83, the core of the allegations was left undisturbed. Normally, dismissing 5,001 plaintiffs would require some adjustment to the substantive claims. Not here. That confirms that Plaintiffs' goal is to advance a wide-ranging narrative under which they can blame Prime Minister Barzani and his relatives for everything bad that ever happened in Kurdistan. Details like who was injured and by whom are irrelevant to that goal. The result has been the legal equivalent of a shell game, with no effort ever invested in connecting plaintiffs, defendants, and injuries. Plaintiffs' refusal to pin down their theories with the anchor of factual allegations is not an accident; it is the byproduct of the fact that Plaintiffs neither framed nor prosecuted this action in good faith. [3]

Yet another aspect of this case is the sanctions awarded thus far, and the pursuit of frivolous claims against opposing counsel, which Plaintiffs prioritized over service of process[4] and compliance with Rule 8's pleading standards. While the claims against opposing counsel are now largely behind us, Plaintiffs' bad faith has hardly been limited to Joe Reeder. Plaintiffs consistently have ignored the Court's admonitions to plead facts supporting their slanderous allegations against all defendants. Instead, under the guise of former lead plaintiff, the "Kurdistan Victims Fund," they persist in touting this frivolous lawsuit for political ends, including in a massive letter-writing campaign (at

---

[3] The pleadings' cavalier approach to the identities of the Plaintiffs extends to the current group as well. In prior pleadings, Plaintiff Shakhwan Abdulrahman claimed to be the "legal and personal" representative of the decedent. *See e.g.*, ECF 85, p. 6. In his May 21, 2026, Court of Appeals filings, he identifies himself as the deceased's "next friend." Whatever his status, he nowhere states the basis of his proclaimed authority to sue on his sister's behalf, casting doubt as to whether he even has standing to do so.
[4] Movants – three of whom are private citizens and two of whom require English language interpretation – do not concede that Plaintiffs' purported service of process complied either with due process requirements or the Federal Rules.

least 1,059 known letters through April of 2026 to public officials, think tanks, and others. Citing the unfounded allegations of this lawsuit, they also delivered a letter to former Secretary Blinken, urging termination of U.S. support for the Kurdistan Regional Government. ECF. 11-2. As the Court previously explained, "it really does feel much more like a political diatribe than federal court litigation…[a]nd the fact that there are copies of [these letters] being sent out to politicians might confirm that is what is going on here." ECF 90 at 9:3–7. Other federal courts similarly have recognized the harm caused by the misuse of the judicial system to advance political ends. *See, e.g., Trump v. Clinton*, 640 F. Supp. 3d 1321, 1335 (S.D. Fla. 2022) ("The rule of law is undermined by…efforts to advance a political narrative through lawsuits without factual basis or cognizable legal theory"). That is precisely what has occurred here. This gross misuse of the judicial process for political purposes is the height of bad faith and provides another reason why Plaintiffs' TAC warrants dismissal with prejudice.

Iraqi Kurdistan borders Iran, and KRG leadership, including the Prime Minister, face existential threats and do not deserve Plaintiffs' political attacks in the United States that are masquerading as a Federal Court lawsuit. Permitting any further litigation would be grossly unfair to Movants and contrary to the public interest of having U.S. courts adjudicate real, not political, disputes. *See, e.g., United States ex rel. Schumann v. Astrazeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) (affirming dismissal with prejudice because plaintiff "had many opportunities . . . and five iterations of the complaint to plead facts" establishing subject matter jurisdiction); *In re NJ Title Ins. Litig.*, 683 F.3d 451, 462 (3d Cir. 2012) (affirming dismissal with

prejudice for lack of subject matter jurisdiction where amendment would be futile); *Eike v. Allergan, Inc.*, 850 F.3d 315, 318 (7th Cir. 2017) (remanding "with directions to dismiss the suit with prejudice" based on absence of injury-in-fact).

### CONCLUSION

Since they initiated this litigation in January of 2024, Plaintiffs have offered nothing more than factually unsupported conspiracy theories, most recently reflected in their TAC. That document, more political screed than legal pleading, warrants dismissal with prejudice.

Dated:   May 26, 2026                          Respectfully submitted,

*/s/ Joe R. Reeder*
Joe R. Reeder (DC Bar No. 279786)
Dominic E. Draye (DC Bar No. 1008820)
Richard Edlin (NY Bar No. 2051696;
admitted *pro hac vice*)
Greenberg Traurig, LLP
2101 L Street, NW
Suite 1000
Washington, DC 20037
Tel. (202) 331-3100
Fax (202) 331-3101
drayed@gtlaw.com
reederj@gtlaw.com

*Attorneys for Movants*

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 26, 2026, I served a true and accurate copy of the foregoing to be served via ECF.

/s/ *Joe R. Reeder*
Joe R. Reeder